UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| JANE C. FORRESTER WINNE, on behalf of herself and all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-1; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3; U.S. BANK NATIONAL ASSOCIATION; TRANSWORLD SYSTEMS, INC.; ABRAHAMSEN RATCHFORD, P.C.; VCG SECURITIES, LLC; PNC BANK, N.A.; CHARTER ONE BANK, N.A.; and TURNSTILE CAPITAL MANAGEMENT,<br><br>Defendants | Case No.: 1:16-cv-00229-JDL |

## AFFIDAVIT OF CYNTHIA A. DILL

I, Cynthia A. Dill, attorney for Plaintiff, hereby swear the following statements are based on personal knowledge acquired during the course of my investigation of this case, information or belief, and, so far as upon information and belief, I believe the statements to be true.

1. On or about July, 2010 Jane C. Forrester Winne was served with a Summons and Complaint of Foreclosure on her home in Orono by "Bank of America, N.A., as Successor by Merger to Lasalle Bank, N.A., as Trustee for Certificate Holders of Bear Stearns Asset Backed Securities I LLC Asset Backed Certificates, Series 2005-HE3."

2. U.S. Bank, N.A. ("US Bank") ultimately was the entity suing Winne when the case went to trial.



3. The foreclosure case went to trial in January, 2014 in the Penobscot County Superior Court.

4. At the foreclosure trial, US Bank could not produce the underlying note, could not substantiate the various and complicated assignment of the instruments, could not explain Winne's payment history and could not otherwise meet its burden of proof with respect to the amount owed. Judgement was entered against US Bank and in favor of Winne.

5. Later in 2014 Winne reported that she began receiving multiple calls from entities she did not recognize with varying phone numbers from around the country who did not identify themselves, sought personal information and aggressively threatened her about "very serious legal matters" that would result if she did not provide the personal and confidential information they sought.

6. On or about August 18, 2015 Winne was served with a Summons and Complaint filed by National Collegiate Student Loan Trust ("NCSLT") 2005-1 alleging breach of contract and unjust enrichment purportedly in connection with an attached "Loan Request/Credit Agreement" dated October 8, 2004, a copy of which was attached to the First Amended Class and Collective Action Complaint ("First Amended Complaint") and incorporated by reference herein.

7. The Charter One Loan Request indicates the "loan amount requested" to be $25,000.

8. The alleged Lender was Charter One.

9. The lawsuit sought $41,609.26 as of June 25, 2015, plus interest.

10. The law firm bringing the lawsuit was Abrahamsen Ratchford, P.C. ("Abrahamsen").

2

11. On or about September 1, 2015 Winne was served with a second Summons and Complaint, this time filed by Abrahamsen on behalf of NCSLT 2005-3, alleging breach of contract and unjust enrichment purportedly in connection with a separate "Loan Request and Agreement" dated September 2, 2005, a copy of which was attached to the First Amended Complaint and incorporated herein by reference.

12. The PNC Loan Request states the "loan amount requested" was $20,000.

13. This lawsuit sought $38,505.38 as of June 25, 2015, plus interest.

14. The law firm bringing the lawsuit was Abrahamsen.

15. The alleged Lender was PNC Bank, N.A. ("PNC").

16. Winne, through counsel, answered the two lawsuits denying all material allegations, and further, responded to interrogatories and requests for admissions stating, in sum, she knew nothing about these alleged private loans, had never received any loan proceeds therefrom, had never made any payments thereon, refused to pay them presently, and until 2015 when she was served, knew absolutely nothing about them.

17. I represented Winne in the foreclosure litigation with US Bank and the litigation brought on the alleged NCSLT debt by Abrahamsen.

18. In the lawsuit discovery, Winne was asked to admit that she "requested repayment forbearance and/or deferment" on the private loans that were subject to the lawsuit and that she was "approved for repayment forbearance and/or deferment" on the loans, which she denied and qualified, stating she had requested all of her loans – that she believed to be public loans backed by the U.S. Department of Education – to be discharged on account of her disability and to the best of her knowledge they were.

19. Under oath in response to interrogatories, Winne stated:

3

"I don't recall ever applying for or receiving a private loan and was discharged of all federal student loans. I further believe this lawsuit is a fraudulent attempt to take advantage of a disabled senior citizen."

20. Under oath in response to interrogatories, Winne stated:

"I do not believe that this claim is valid. Not only was I unaware of the nature of this claim, in my subsequent research, I learned that the banks responsible for this shift of federal protections for student loan to privatization were reimbursed by the federal government, and that they were resold for pennies on the dollar to "investors" and bundled. The entire claim the "National Collegiate Student Loan" entity purports to have as claimant and owner is fraudulent. It is the result of current effort to "refresh" these bundles as counter party risks and are an attempt to revive time barred fraudulently floated loans for the purpose of liquification by parties that have no ownership."

21. During the course of the litigation, Abrahamsen produced a "Note Disclosure Statement" purportedly relating to the private student loan made by Charter One ("Charter One Disclosure"), a copy of which was attached to the First Amended Complaint and incorporated by reference herein.

22. During the course of the litigation, Abrahamsen produced a "Note Disclosure Statement" purportedly relating to the private student loan made by PNC ("PNC Disclosure"), a copy of which was attached to the First Amended Complaint and incorporated by reference herein.

23. Both the alleged Charter One Loan Request and PNC Loan Request identify Winne as the "Borrower" and Chris Winne as the "Cosigner."

24. Both the alleged Charter One Loan Request and PNC Loan Request state, among other things, "The proceeds of this loan will be used only for my educational expenses at the school. The Cosigner, if any, will not receive any of the loan proceeds."

25. Both the alleged Charter One Disclosure and PNC Disclosure identify Jane Winne and Chris Winne as "Borrowers."

4

26.   Both the alleged Charter One Disclosure and PNC Disclosure state that $20,000 was paid to Chris Winne and nothing was paid to Jane Winne.

27.   Both the alleged Charter One Loan Request and PNC Loan Request state "This is a Consumer Transaction."

28.   Both the alleged Charter One Loan Request and the PNC Loan Request state they are guaranteed by The Education Resources Institute, Inc. ("TERI").

29.   According to the alleged Charter One Disclosure, payments under the so-called loan were due on the 15th day of each month beginning in December, 2006.

30.   According to the alleged PNC Disclosure, payments under the so-called loan were due on the 17th day of each month beginning in December, 2007.

31.   Winne and Chris Winne dissolved their marriage in February, 2007.

32.   On December 8, 2015 both lawsuits brought by Abrahamsen on behalf of NCSLT 2005-1 and NCSLT 2005-3 against Winne were dismissed with prejudice.

33.   Thereafter Winne was nevertheless contacted by Transworld Systems, Inc. ("TWS") and, upon information and belief, other Defendants about the same alleged indebtedness to National Collegiate Student Loan Trusts 2005-1 and 2005-3.

34.   The Defendants communicate with Winne for the purposes of attempting to collect alleged debts when they know or should know Winne is represented by counsel.

35.   TWS sent Winne a notice dated February 9, 2016 stating that NCSLTs 2005-1 and 2005-3 have placed Winne's alleged "defaulted loans" with their agency for collection and that the current balance was $82,724.21.

36. Recently Winne received a notice in the mail from Turnstile Capital Management ("Turnstile") that states it is being provided on behalf of "The National Collegiate Student Loan Trusts and its affiliate GATE Holdings, Inc."

37. The notice from Turnstile suggests it is being given pursuant to "federal law" in order to comply with "federal standards."

38. An "affiliate" of the NCSLT is defined in the notice to be "VCG Special Opportunities Master Funds Limited."

39. The notice informs Winne that NCSLT and its affiliates intend to use and share "personal information" that can include Winne's social security number, income, account balances, payment history, transaction history and credit scores for its "everyday business purpose," its affiliates "everyday business purpose" and for nonaffiliates "to market to" Winne, unless she completes a form that includes her "account number," name and address and sends it to GSS Data Services, Inc. in San Diego, CA.

40. Winne's credit reports show that on March 1, 2010 and October 1, 2010 the loans allegedly owed to NCSLT were paid off by the guarantor.

41. The guarantor identified on the loan documents provided by the Defendants is TERI.

42. TERI filed a petition in Massachusetts on April 7, 2008 pursuant to Chapter 11 of the United States Code in the U.S. Bankruptcy Court for the District of Massachusetts, Case No. 08-12540.

43. I have reviewed many of the documents filed in the TERI bankruptcy case.

44. On June 23, 2008 TERI was authorized and directed by Order of the Bankruptcy Court[1] to purchase defaulted loans from the NCSLTs using money in its pledged accounts held by US Bank pursuant to the guaranty agreements, among other things.

45. Based on my review of the related documents and bankruptcy pleadings, when TERI "purchased" NCSLT loans pursuant to its guaranty agreements, title to the loans transferred from the NCSLT to TERI.

46. TERI's Chapter 11 Plan of Reorganization was confirmed effectively on November 19, 2010 (the "Plan").

47. The NCSLT, US Bank and other Defendants voted, on information and belief, to confirm the Plan and are bound thereby.

48. "Postpetition Purchased Loans" are defined in the Plan as loans purchased by TERI after April 7, 2008 (the petition date) pursuant to the Trusts Order using funds in the pledged accounts.

49. The TERI bankruptcy case was closed on March 8, 2016; however, the Plan Trustee sought and obtained authority by the Bankruptcy Court to continue liquidating defaulted NCSLT loans.

50. Because Winne's alleged NCSLT loans were paid off by TERI on or about March 1, 2010 and October 1, 2010, they are Postpetition Purchased Loans.

51. According to the Plan, the NCSLTs appear to have no claims in any Postpetition Purchased Loans or to any recoveries on such loans.

52. All Postpetition Purchased Loans and postpetition recoveries on such loans, according to the Plan, were transferred by TERI to a "Plan Trust."

---

[1] The "Trusts Order," Case 08-12540, Doc 361 filed 06/23/08 (U.S. Bankruptcy Court, D- MA).

53. All of the private student loans owned by NCSLT as a result of the securitization process that went in to default postpetition and paid by TERI under its guaranty pursuant to the Trusts Order became Plan Trust Assets, according to the Plan, and subject to a Plan Trust Agreement.

54. NCSLT and Defendants, on information and belief, are directly or indirectly Beneficiaries of the Plan Trust.

55. The Plan Trust states it was established for the limited purpose of liquidating the Plan Trust Assets to pay allowable unsecured claims.

56. The Plan Trust Agreement states, among other things, "the Beneficiaries shall not hold legal title to the Plan Trust Assets," and, the "Plan Trustee shall be authorized to prosecute and all Causes of Action **in the name of the Debtor**…for the benefit of the Beneficiaries." (emphasis added)

57. Between November 19, 2010 and October 31, 2015, $40,250,114.11 has been paid by the Plan Trustee to the NCSLT towards allowed general unsecured creditor claims, according to Document 1294-5, page 3, filed on November 18, 2015 in the TERI bankruptcy case, a true copy of which is attached to the Plaintiff's Motion as Exhibit B.

58. First Marblehead Corporation and its affiliates ("First Marblehead") and TERI shared data bases about NCSLT loans pursuant to a contract, the subject of which became a dispute during the TERI bankruptcy that was eventually appealed to the U.S. District Court for the District of Massachusetts[2].

---

[2] See, First Marblehead Corporation, et als. v. The Education Resources Institute, Inc., Civil Action 11-10241, Memorandum and Order dated December 8, 2011 (USDC – District MA).

59.     Prior to 2012, First Marblehead was the Special Servicer for the NCSLT loans. When First Marblehead resigned, US Bank succeeded First Marblehead as Special Servicer, according to a petition filed by US Bank on March 25, 2016[3].

60.     In the Plan Trustee's Motion for Entry of Final Decree and Order Extending Term of Plan Trust filed on November 18, 2015, he states, among other things:

> On the Effective Date, a trust was established (the "Plan Trust") pursuant to that certain *Plan Trust Agreement of The Education Resources Institute, Inc.* (the "Plan Trust Agreement") for the benefit of the Debtors' general unsecured creditors. At that time, Stephen S. Gray became Plan Trustee. The Plan Trust was established with various assets, including a significant portfolio of defaulted student loans (the "TERI-Owned Loans") which the Plan Trustee has continued to administer and collect in accordance with the Plan Trust Agreement.

61.     In the Plan Trustee's Motion for Entry of Final Decree and Order Extending Term of Plan Trust filed on November 18, 2015, he states, among other things:

> Since the Effective Date, the Plan Trustee has made eight (8) interim distributions to holders of Allowed General Unsecured Claims, aggregating a 21.5% to-date recovery. The Plan Trustee anticipates that he will continue to administer the Plan Trust Assets, and make regular distributions to such creditors until such time as the TERI-Owned Loans are fully collected or sold. To best monetize those assets, the Plan Trustee seeks to extend the term of the Plan Trust for an additional three (3) years to accomplish such collection or sale.

DATED at Portland, Maine, this 1st day of November, 2016.

_____
Cynthia A. Dill

Personally appeared the above-named Cynthia A. Dill and swore that the statements contained herein are based on personal knowledge, and information or belief, and, so far as upon information and belief, she believes them to be true.

Dated: November 1, 2016

_____
Notary Public

LEANNA R. SPOFFORD
Notary Public, Maine
My Commission Expires August 22, 2020

---

[3] *In the Matter of the National Collegiate Student Loan Trusts, et als.*, (USDC – District of Delaware, Case 1:16-cv-00341-SLR Document 1-1 Filed 03/25/16).

9