# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| JANE C. FORRESTER WINNE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) 1:16-cv-00229-JDL |
| NATIONAL COLLEGIATE | ) |
| STUDENT LOAN TRUST 2005-1, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

The Plaintiff, Jane C. Forrester Winne, has filed a class action complaint seeking damages and injunctive relief, brought, she asserts, on behalf of "vulnerable Maine students who are being unlawfully pursued on alleged private student loan debts they do not owe, were fraudulently procured, or both." ECF No. 3 at 2. Her individual claims arise out of attempts by various parties to collect student debts she allegedly owes. Three of the defendants—Citizens Bank, N.A. ("Citizens"),[1] U.S. Bank National Association ("US Bank"), and PNC Bank, N.A. ("PNC")—filed motions to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. ECF No. 23; ECF No. 27; ECF No. 43. US Bank also seeks dismissal under Rule 12(b)(2), asserting lack of personal jurisdiction. ECF No. 27 at 1. Oral argument on the motions was held before me on November 17, 2016.

---

[1] Citizens was erroneously named as "Charter One Bank, N.A." in the complaint; Charter One was acquired by Citizens at some point after the loan at issue in this case was first applied for.

# I. BACKGROUND

Winne's claims focus on two private student loans that were allegedly made to her in 2004 and 2005 by Charter One Bank (now Citizens) and PNC, respectively. Winne denies ever receiving the proceeds from these loans, and asserts that she has never made any payments on either loan. Winne alleges that Charter One sold its loan to National Collegiate Student Loan Trust 2005-1 ("NCSLT 2005-1"), and PNC sold its loan to National Collegiate Student Loan Trust 2005-3 ("NCSLT 2005-3"). The two loans allegedly then became the subject of collection efforts by various entities connected with the NCSLTs, beginning in 2014. In 2015, Winne was sued on both loans by defendant Abrahamsen Ratchford, P.C., a law firm representing the NCSLTs. The lawsuits were eventually dismissed with prejudice. Winne alleges that collection efforts on the loans have nonetheless continued, carried out by defendants Transworld Systems, Inc. ("Transworld") and Turnstile Capital Management, LLC ("Turnstile"), both acting on behalf of the NCSLTs.

Citizens is a defendant in this suit because it acquired Charter One, the bank that allegedly made the 2004 loan to Winne. Winne has asserted claims against Citizens under the Truth in Lending Act ("TILA"), 15 U.S.C.A. § 1601 *et seq.* (2016), and the Maine Unfair Trade Practices Act ("MUTPA"), 5 M.R.S.A. § 205-A *et seq.* (2016). Winne alleges that Citizens/Charter One failed to provide her with the disclosures required by TILA at the time she allegedly signed the loan agreement.

Winne's allegations against PNC, as the original lender of the 2005 loan, are identical to her allegations against Citizens. She asserts claims under TILA and

MUTPA, claiming that PNC failed to provide the required disclosures at the time she allegedly signed the loan agreement for the 2005 loan.

US Bank is a defendant in this suit by virtue of its position as Indenture Trustee and Successor Special Servicer to the NCSLTs. Winne alleges that US Bank is responsible for overseeing debt collection efforts for the loans owned by the NCSLTs. Specifically, Winne alleges that US Bank hired Transworld and Turnstile, the entities that have been contacting Winne regarding the loans, to act as sub-servicers, and to collect debts on its behalf and on behalf of the NCSLTs. ECF No. 3 at 14, ¶ 99. Winne asserts claims against US Bank under MUTPA, as well as the federal Fair Debt Collection Practices Act, 15 U.S.C.A. § 1692 *et seq.* (2016) and the Maine Fair Debt Collection Practices Act, 32 M.R.S.A. § 11001 *et seq.* (2016).

## II. DISCUSSION

The claims against Citizens and PNC are identical, and the arguments raised in their respective motions to dismiss are substantially the same. *See* ECF No. 3; ECF No. 23; ECF No. 43. For that reason, I address their motions together. The claims against US Bank are distinct, and will be addressed separately.

**A.     Citizens' and PNC's Motions to Dismiss**

Citizens and PNC both move to dismiss the claims against them under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013) (internal quotation omitted). The

3

court should accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *Id.* at 52-53. Determining the plausibility of a claim is a context-specific task that requires the court "to draw on its judicial experience and common sense." *Id.* at 53 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Winne initially asserted claims against Citizens and PNC under both TILA and the MUTPA, claiming that the banks failed to provide her with the required disclosures at the time she signed the loan agreements for the alleged private loans. In her reply brief, however, Winne acknowledged that financial institutions doing business in Maine such as Citizens and PNC are exempt from liability under MUTPA. ECF No. 57 at 11; *see also Shapiro v. Haenn*, 190 F. Supp. 2d 64, 69 (D. Me. 2002). Accordingly, Winne's MUTPA claims against Citizens and PNC will be dismissed.

Turning to Winne's TILA claims, the banks argue that the claims are barred by the statute of limitations, and are also substantively meritless. ECF No. 23 at 5-12; ECF No. 43 at 5-15. Actions involving private education loans under TILA are subject to a one-year statute of limitations. 15 U.S.C.A. § 1640(e) (2016). At the time of the alleged violations, TILA provided that the limitations period ran "from the date of the occurrence of the violation."[2] 15 U.S.C.A. § 1640(e) (2005). Winne concedes that this version of the one-year statute of limitations is applicable to the instant case. ECF No. 57 at 6. The parties also informed the court at oral argument that Winne is relying solely on her argument that the statute of limitations should be equitably

---

[2] Congress amended TILA in 2008, and changed the statute of limitations so that it now begins running from the date that the first regular payment of principal is due under the loan agreement. *See* 15 U.S.C.A. § 1640(e) (2016).

tolled, and she is not pressing the additional arguments raised in her briefs that the limitations period either has not yet begun to run, or has not yet expired.

Under federal law, a statute of limitations may be equitably tolled to prevent unjust results or to maintain the integrity of a statute. *Salois v. Dime Sav. Bank of New York, FSB*, 128 F.3d 20, 25 (1st Cir. 1997). Tolling is only appropriate "when the circumstances that cause a plaintiff to miss a filing deadline are out of his hands." *Id.* (internal quotation omitted). The plaintiff must show due diligence in attempting to discover the cause of action before the limitations period ran out. *See Gonzalez v. United States*, 284 F.3d 281, 291 (1st Cir. 2002). Winne contends that equitable tolling is appropriate in this case due to the alleged "fraudulent activity" of the defendants. ECF No. 32 at 4; ECF No. 57 at 8. She asserts that she could not have discovered this alleged fraudulent activity, which presumably includes the alleged underlying TILA violation, until she was sued on the loans in 2015. ECF No. 32 at 4; ECF No. 57 at 8-9.

To the extent Winne claims that the statute of limitations should be equitably tolled under the doctrine of fraudulent concealment, she must demonstrate that she has exercised "reasonable diligence in discovering that she has been the victim of fraud." *Philibotte v. Nisource Corp. Serv. Co.*, 793 F.3d 159, 164 (1st Cir. 2015) (quoting *Salois*, 128 F.3d at 26) (alterations omitted). As multiple courts have pointed out, the alleged fraud must also consist of conduct beyond the nondisclosure itself that underlies the TILA claim; otherwise the statute of limitations would be tolled in

5

every suit and would be a nullity. *See Cardiello v. The Money Store, Inc.*, 2001 WL 604007, at *5 (S.D.N.Y. June 1, 2001) (collecting cases).

Winne has not pled any fraudulent conduct by either Citizens or PNC that served to conceal the alleged TILA violation within the one-year statute of limitations period, beyond the alleged TILA violation itself. There are no specific allegations in the complaint that Citizens or PNC took any steps to prevent Winne from discovering the alleged TILA violation within the statutory period. *See* ECF No. 3. Nor has she pled due diligence on her part to discover the violation. Winne argues instead that her due diligence is illustrated by her response to the state court lawsuit and her action in bringing the instant suit. ECF No. 57 at 9. But to satisfy the equitable tolling standard, she must demonstrate due diligence during the statutory period, i.e. within one year of the occurrence of the violation. *See Gonzales*, 284 F.3d at 291. She has failed to do so here. The loan agreement that Winne signed with each bank informed her that she would receive additional documentation if her loan application were approved. ECF No. 3-1 at 2; ECF No. 3-2 at 3. She has failed to plead any basis for concluding that she exercised due diligence in trying to discover that the required TILA disclosures were not made, or for concluding that Citizens or PNC fraudulently concealed their failure to make disclosures from her within the one-year statutory period. Accordingly, her TILA claims, as pleaded, are barred by the statute of limitations, and will be dismissed for failing to state a claim on which relief could be granted.

**B.  US Bank's Motion to Dismiss**

US Bank seeks dismissal on two grounds: lack of personal jurisdiction under Rule 12(b)(2); and failure to state a claim under Rule 12(b)(6).  ECF No. 27 at 1.

**1. Personal Jurisdiction**

The plaintiff has the burden of establishing the court's personal jurisdiction over a defendant.  *Boit v. Gar-Tec Prods., Inc.,* 967 F.2d 671, 674-75 (1st Cir. 1992). When a defendant files a motion to dismiss for want of personal jurisdiction pursuant to Rule 12(b)(2), "a district court may choose from among several methods for determining whether the plaintiff has met its burden." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.,* 825 F.3d 28, 34 (1st Cir. 2016) (quoting *Adelson v. Hananel,* 510 F.3d 43, 48 (1st Cir. 2007)) (internal quotation marks omitted).  The "most conventional" of these methods is the prima facie method, which "permits the district court to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Foster-Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 145 (1st Cir. 1995) (quoting *Boit,* 967 F.2d at 675) (internal quotation marks omitted).

To satisfy the prima facie standard, the plaintiff must show that the requirements of both the forum's long arm statute and the due process clause of the Constitution are satisfied.  *Boit*, 967 F.2d at 675.  The Maine long-arm statute extends "to the fullest extent permitted by the due process clause" and therefore the constitutional inquiry controls.  *Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir. 2005) (quoting 14 M.R.S.A. § 704-A(1)).

Since the Supreme Court's opinion in *Int'l Shoe Co. v. State of Washington,* 326 U.S. 310 (1945), courts have divided the personal jurisdiction analysis into two parts: "general" and "specific" personal jurisdiction. *Donatelli v. Nat'l Hockey League,* 893 F.2d 459, 462-63 (1st Cir. 1990). General jurisdiction exists when the defendant has engaged in "continuous and systematic activity" in the forum. *Harlow*, 432 F.3d at 64. Specific jurisdiction exists when "the cause of action . . . arises directly out of, or is related to, the defendant's forum-based contacts." *Id.* at 60-61. For both categories of personal jurisdiction, the defendant must have sufficient "minimum contacts" with the forum; those contacts must be purposeful; and the exercise of jurisdiction must be reasonable under the circumstances. *Id.* at 57.

**a. General Personal Jurisdiction**

A court may exercise general personal jurisdiction over a foreign corporation "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Daimler AG v. Bauman,* 134 S. Ct. 746, 751 (2014) (quotation omitted). "[I]f such contacts do not exist in sufficient abundance, the general jurisdiction inquiry ends." *In re New Motor Vehicles Canadian Export,* 307 F. Supp. 2d 145, 150 (D. Me. 2004) (citing *Donatelli,* 893 F.2d at 465). Under *Daimler*, a corporation is primarily at home in its place of incorporation or its principal place of business. 134 S. Ct. at 760-61.

US Bank is a federally chartered national banking association that has its main office in Cincinnati, Ohio, and its principal place of business in Minneapolis,

8

Minnesota.³ ECF No. 28 at 1. Winne argues that US Bank's position as Special Servicer to the NCSLTs and its relationship with Turnstile and Transworld, who conduct debt collection efforts in Maine, represent sufficiently continuous and systematic contacts to render US Bank essentially at home in Maine. ECF No. 30 at 4. This argument falls short of the constitutional standard set by *Daimler*, however, which requires more than a showing of substantial and continuous contacts. *See* 134 S. Ct. at 760-61 (holding general personal jurisdiction not appropriate in "every State in which a corporation engages in a substantial, continuous, and systematic course of business.") (internal quotation omitted). Therefore, the exercise of general personal jurisdiction over US Bank in this case is not appropriate.

**b. Specific Personal Jurisdiction**

Specific jurisdiction allows a court to hear a particular case as long as "that case relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). To determine whether specific jurisdiction exists in a given case, the court first must determine whether the claim at issue in the litigation "directly relates to or arises out of the defendant's contacts with the forum[,]" and "whether those contacts constitute purposeful availment of the benefits and

---

³ Plaintiff asserted in her initial response to US Bank's motion to dismiss that US Bank's federal charter is presumed to contain a "sue-and-be-sued" clause that bestows personal jurisdiction in any federal court. ECF No. 30 at 5 (citing *Fed. Home Loan Bank of Boston v. Moody's Corp.*, 821 F.3d 102, 109 (1st Cir. 2016)). However, the court in *Moody's* was discussing subject matter jurisdiction, not personal jurisdiction. *See* 821 F.3d at 108-11. A plaintiff must separately establish personal jurisdiction against a federally-chartered entity. *See Pirelli Armstrong Tire Corp. v. Raines*, 534 F.3d 779, 787-88 (D.C. Cir. 2008).

9

protections afforded by the forum's laws." *United States v. Swiss Am. Bank,* 274 F.3d 610, 620-21 (1st Cir. 2001) (quoting *Phillips Exeter*, 196 F.3d at 288). If these two requirements are met, the court must then determine whether the exercise of specific jurisdiction would be reasonable "in light of a variety of pertinent factors that touch upon the fundamental fairness of an exercise of jurisdiction." *Id.* at 621.

US Bank argues that Winne has not alleged any specific activities that US Bank conducted in Maine giving rise to her claims, and has not alleged that US Bank had sufficient contacts with Maine to constitute purposeful availment. ECF No. 27 at 7-8. Winne responds that US Bank, as Special Servicer to the NCSLTs, undertook debt collection activities in Maine through its contractual relationship with Turnstile and Transworld.[4] ECF No. 30 at 6. Accordingly, the issue of specific personal jurisdiction turns on the debt collection activities US Bank undertook in Maine through Turnstile and Transworld.

The relationship US Bank has with Turnstile and Transworld lies at the heart of this discussion. Winne alleges that Turnstile and Transworld were working on behalf of US Bank, in its role as Special Servicer to the NCSLTs, when they undertook the collection efforts that underlie the claims in her complaint. *Id.* These collection efforts took place in Maine and constituted a purposeful availment of the benefits and protections of Maine's laws. *See Swiss Am. Bank*, 274 F.3d at 624 (noting that purposeful availment prong is satisfied "when the defendant purposefully and

---

[4] Winne also asserts that various foreclosure actions brought by US Bank against Maine residents constitute purposeful availment and militate in favor of finding specific personal jurisdiction. *See* ECF No. 30 at 6. These foreclosure actions are unrelated to the claims underlying the instant suit, however, and therefore do not factor into this analysis. *See Swiss Am. Bank*, 274 F.3d at 620-21.

voluntarily directs his activities toward the forum"). If Turnstile's and Transworld's collection efforts are imputed to US Bank for jurisdictional purposes, then the exercise of specific personal jurisdiction over US Bank would be proper.

A defendant's contacts with a particular forum may be imputed to another defendant for purposes of establishing specific personal jurisdiction where a sufficient relationship exists between the two defendants. In *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 55 (1st Cir. 2002), the First Circuit recognized that "[w]hether or not an agent is initially authorized to act on behalf of a principal, the agent's actions may be attributed to the principal, for purposes of jurisdiction, if the principal later ratifies the agent's conduct." *See also Jet Wine & Spirits, Inc. v. Bacardi & Co.*, 298 F.3d 1, 10 (1st Cir. 2002) (attributing contacts of subsidiary to parent corporation where plaintiff supported allegation of agency relationship with disputed record evidence); *Ameral v. Intrepid Travel Party, Ltd.*, 128 F. Supp. 3d 382, 388 (D. Mass. 2015) (attributing contacts in light of apparent agency relationship); *New England College v. Drew University*, 2009 WL 3525596, at *4 (D.N.H. Oct. 23, 2009) (attributing contacts in light of evidence that one defendant "authorized or at least ratified" second defendant's actions). The relationship at issue need not fit precisely within the confines of a specific agency doctrine; the inquiry instead focuses on whether there is a sufficient relationship to permit the exercise of jurisdiction under the due process clause, "not whether a partnership, joint venture, or other particular agency relationship between the two defendants exists." *Daynard*, 290 F.3d at 56-57.

Winne alleges in her complaint that US Bank hired Turnstile and Transworld to act as sub-servicers to the NCSLTs, and to collect debts. ECF No. 3 at 14, ¶ 99. She argues that US Bank contracted with Turnstile and Transworld, as its agents, to conduct debt collection activity in Maine. ECF No. 30 at 6. US Bank, citing to an agreement in place between it and Transworld ("the NCO Agreement")[5], contends that Turnstile and Transworld are independent contractors rather than agents, and that their activities therefore cannot be attributed to US Bank. ECF No. 40 at 4-5, 8.

US Bank's argument fails to account for *Daynard*'s recognition that the specific nature of the relationship is not controlling, and the inquiry should instead focus on the fairness of the exercise of jurisdiction under the due process clause. *See* 290 F.3d at 56-57. Moreover, the characterization of the relationship as one between independent contractors in the NCO Agreement, although relevant, does not dictate the outcome of the constitutional analysis. As the Restatement (Third) of Agency points out, the term "independent contractor" is often used to describe parties that are in fact in an agency relationship. *See* Restatement (Third) of Agency § 1.01 cmt. c (Am. Law Inst. 2006). The Restatement further notes that the characterization of a relationship in an agreement between the parties is not controlling. *Id.* at § 1.02.

---

[5] The agreement between US Bank and Transworld was originally signed in 2009, when US Bank became Back-Up Special Servicer to the NCSLTs. Transworld (formerly known as NCO Financial Systems) agreed to perform certain debt collection activities in the event that US Bank succeeded the original Special Servicer, an event which in fact occurred in 2012. The NCO Agreement therefore governed the relationship between Transworld and US Bank after US Bank became successor Special Servicer in 2012. *See* ECF No. 40-2 at 3, § 2.1.

Whether there exists a relationship sufficient to attribute one defendant's contacts to another defendant for jurisdictional purposes is a fact-intensive inquiry. *See Daynard*, 290 F.3d at 57-59 (reviewing facts alleged in support of agency-like relationship). At this stage in the proceedings I must accept the Plaintiff's factual allegations as true and draw all reasonable inferences in her favor. *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998). Winne offers evidence that US Bank is responsible for debt collection in Maine on behalf of the NCSLTs, *see* ECF No. 30 at 3-4, and alleges that it hired Turnstile and Transworld to carry out that responsibility, ECF No. 3 at 14, ¶ 99. Furthermore, a review of the NCO Agreement between US Bank and Transworld demonstrates a sufficient factual basis on which to infer that an agency relationship existed. *See* ECF No. 40-2. That agreement establishes the sub-servicer relationship between Transworld and US Bank in its capacity as successor Special Servicer to the NCSLTs. *Id.* at 1. As US Bank has emphasized, the NCO Agreement characterizes the relationship between the two entities as an independent contractor relationship. *Id.* at 24 ("The parties agree that in carrying out their responsibilities pursuant to this Agreement they are in the position of independent contractors."). However, the terms of the agreement demonstrate a level of active management and control by US Bank over Transworld's debt collection activities that could support a finding that Transworld in fact acts as US Bank's agent. The agreement provides that:

- Transworld must obtain US Bank's approval before negotiating and revising a borrower's payment schedule, *id.* at 4;

13

- US Bank has the right to restrict or limit the means used by Transworld to collect debts, *id.*;

- US Bank retains the right to approve attorneys used by Transworld in its collection efforts, *id.* at 5;

- Transworld staff will be assigned exclusively to US Bank's accounts and perform as directed by US Bank, *id.* at 8;

- US Bank retains authority to manage and supervise Transworld personnel assigned to its accounts, *id.*;

- US Bank has authority to remove Transworld employees from its accounts, *id.*; and

- Transworld must obtain approval from US Bank to hire any subservicer to assist in the collection of debts, *id.* at 10.

Viewed in the light most favorable to Winne's assertion of jurisdiction, it is reasonable to infer from this information that a sufficient, agency-like relationship existed between the entities to attribute Transworld's collection activities in Maine to US Bank for jurisdictional purposes. *See Hollingsworth v. Perry*, 133 S. Ct. 2652, 2666 (2013) (noting that principal's right to control the agent's actions is an essential element of agency relationship); *see also* Restatement (Third) of Agency § 1.01. I reach the same conclusion with regard to US Bank's relationship with Turnstile based on the pleadings and information in the record. *See* ECF No. 3 at 14, ¶ 99; ECF No. 40 at 4-5.

Accordingly, the instant suit arises out of US Bank's contacts with the forum, attributed to it through its relationship with Turnstile and Transworld, that constitute purposeful availment. I thus turn to the third part of the specific personal

jurisdiction inquiry, and decide whether the exercise of jurisdiction is reasonable under what have been termed the "gestalt factors." *See Jet Wine*, 298 F.3d at 11. These include:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Id.*

The burden on US Bank, if required to appear and defend itself in Maine, is not significant, though its main office and principal place of business are in Ohio and Minnesota, respectively. As Winne points out, US Bank regularly litigates foreclosure actions and other cases in Maine courts. ECF No. 30 at 6-7. Maine has an interest in adjudicating this dispute, as it concerns collection efforts undertaken against a Maine citizen on student loans allegedly issued in Maine. Winne also has an interest in obtaining convenient and effective relief that would be served by hearing this case in Maine. She is a resident of Maine and is disabled, and litigating in a distant forum would likely pose a significant hardship. *See* ECF No. 3 at 5-6, ¶¶ 27, 33.

Efficiency considerations also militate in favor of hearing the case in Maine: US Bank is one of multiple defendants in this suit, and judicial economy would be served by adjudicating all of Winne's claims, which arise out of the same debt collection efforts, in a single action. Furthermore, Maine's interest as a sovereign in

15

vindicating the rights contained in the MFDCPA and the MUTPA also counsel in favor of the constitutionality of the exercise of jurisdiction in this case.

For the foregoing reasons, the gestalt factors weigh in favor of the exercise of personal jurisdiction over US Bank. Winne has satisfied her burden under the prima facie standard to establish specific personal jurisdiction over US Bank.

### 2. Failure to State a Claim

US Bank also seeks dismissal based on its argument that Winne failed to sufficiently allege that US Bank is a "debt collector" under the federal Fair Debt Collection Practices Act ("FDCPA") and the Maine Fair Debt Collection Practices Act ("MFDCPA"), and also failed to allege any specific conduct undertaken by US Bank that would constitute a violation of the FDCPA or the MFDCPA. ECF No. 27 at 8-11. US Bank further argues that Winne's MUTPA claim must likewise be dismissed because it is based on the same alleged conduct that underlies the FDCPA and MFDCPA claims. *Id.* at 14. Winne asserts that US Bank qualifies as a "debt collector" by virtue of its position as Special Servicer to the NCLSTs, and she argues that US Bank's contractual responsibility to oversee debt collection efforts subjects it to liability under the FDCPA, MFDCPA, and MUTPA. ECF No. 30 at 7-9.

Courts in this circuit have previously treated defendants as vicariously liable under the FDCPA for the debt collection efforts of an apparent or authorized agent, provided that the principal party meets the definition of a "debt collector" under the Act. *See Oberther v. Midland Credit Mgmt., Inc.*, 45 F. Supp. 3d 125, 130 (D. Mass. 2014); *see also Alger v. Ganick, O'Brien & Sarin*, 35 F. Supp. 2d 148, 153 (D. Mass.

1999). The question presented here is therefore twofold: (1) Has Winne sufficiently alleged that US Bank qualifies as a "debt collector" under the Act, and (2) is the relationship alleged between US Bank, Turnstile, and Transworld sufficient to support vicarious liability?

### i. Qualification as "Debt Collector"

The FDCPA defines a "debt collector" as one "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.A. § 1692a(6) (2016). The definition in the MFDCPA contains identical language. *See* 32 M.R.S.A. § 11002(6) (2016). Winne alleges that US Bank, as Special Servicer, is responsible for collecting debts that are asserted to be owed to the NCSLTs, ECF No. 30 at 7, and that it hired Turnstile and Transworld to carry out the debt collection activities, ECF No. 3 at 14, ¶ 99. US Bank responds by pointing out that the Special Servicing Agreement,[6] on which Winne relies, prohibits "direct collection" activities by the Back-Up Special Servicer in the provision that US Bank asserts applies to it. ECF No. 40 at 3.

As an initial matter, because the definitions in the FDCPA and MFDCPA include both direct and indirect debt collection activities, the language of the Special Servicing Agreement does not foreclose US Bank's qualifying as a debt collector. In addition, in reviewing a motion to dismiss, I must accept the plaintiff's factual allegations as true, and draw all reasonable inferences in her favor. *Rodríguez-Reyes*,

---

[6] US Bank's contractual relationship with the NCSLTs is governed by the Special Servicing Agreement. Under the Agreement, US Bank was initially the Back-Up Special Servicer to the NCSLTs. In 2012, the original Special Servicer resigned, and US Bank became the successor Special Servicer to the NCSLTs. *See* ECF No. 40 at 3.

711 F.3d at 52-53. I am neither engaged in factfinding, nor tasked with choosing among alternative interpretations of the Special Servicing Agreement at this stage. *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 766 n.11 (1984); *see also Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 45-46 (1st Cir. 2013) (noting that choosing "among plausible interpretations of the evidence" is not appropriate at motion-to-dismiss stage). Winne alleges that US Bank is Special Servicer to the NCSLTs, and that it hired Turnstile and Transworld to collect debts. ECF No. 3 at 14, ¶ 99. A plausible inference that may be drawn from these allegations is that US Bank is responsible for coordinating or overseeing debt collection activities on behalf of the NCSLTs. *See* ECF No. 30 at 7-9. Winne's complaint therefore adequately alleges that US Bank is a "debt collector" within the meaning of the FDCPA and MFDCPA.

**ii. Vicarious Liability**

As with the jurisdictional question, the resolution of the vicarious liability question depends on the nature of the relationship between US Bank, Turnstile, and Transworld. Winne has specifically alleged various actions by Turnstile and Transworld that would constitute violations of the FDCPA and MFDCPA. *See, e.g.,* ECF No. 3 at 12-13, ¶¶ 84, 90-91. US Bank may be held vicariously liable for those actions if Turnstile and Transworld are apparent or authorized agents of US Bank. *See Oberther*, 45 F. Supp. 3d at 130; *see also Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 404 (3d Cir. 2000).

While Winne does not specifically allege an agency relationship in her complaint, she does allege that US Bank "hired [Turnstile and Transworld] to act as sub-servicers and collect debts." ECF No. 3 at 14, ¶ 99. The pleading standard set by Rule 8 "does not require 'detailed factual allegations[.]'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In a similar case, the District of Massachusetts invoked this "liberal standard" to find that the complaint adequately alleged a basis for vicarious liability, and therefore denied the defendant's motion to dismiss. *See Oberther*, 45 F. Supp. 3d at 130-31. In that case, the plaintiff alleged that one defendant was the parent company of the second, and attempted to collect debts "through" the second company. *Id.* at 130. From this, the court "plausibly infer[red]" that the second company was the authorized agent of the first, and that it attempted to collect debts on the first's behalf. *Id.* at 130-31. Winne's allegations regarding US Bank are similar, and likewise sufficient to infer a plausible basis for vicarious liability. Winne has therefore stated a plausible claim for relief against US Bank under the FDCPA, MFDCPA, and, by extension, the MUTPA.

## III. CONCLUSION

For the foregoing reasons, Citizen's Motion to Dismiss (ECF No. 23) is **GRANTED**; PNC's Motion to Dismiss (ECF No. 43) is **GRANTED**; and US Bank's Motion to Dismiss (ECF No. 27) is **DENIED**.

**SO ORDERED.**

Dated this 11th day of January, 2017,

/s/ JON D. LEVY
**U.S. DISTRICT JUDGE**