# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| SARAH N. COFFEY;<br>VICKIE L. MCMULLEN;<br>KARIN A. HILLS; and<br>JANE C. FORRESTER WINNE, on behalf of<br>herself and all others similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE STUDENT<br>LOAN TRUSTS 2001-CP1, 2002-CP1, 2003-<br>1, 2004-1, 2004-2, 2005-1, 2005-2, 2005-3,<br>2006-1, 2006-2, 2006-3, 2006-4, 2007-1,<br>2007-2, 2007-3, 2007-4 and the NATIONAL<br>COLLEGIATE MASTER STUDENT LOAN<br>TRUST;<br>WILMINGTON TRUST COMPANY;<br>THE FIRST MARBLEHEAD<br>CORPORATION;<br>U.S. BANK NATIONAL ASSOCIATION;<br>TRANSWORLD SYSTEMS, INC.;<br>ABRAHAMSEN RATCHFORD, P.C.;<br>VCG SECURITIES, LLC; and<br>TURNSTILE CAPITAL MANAGEMENT,<br>LLC,<br><br>                Defendants. | Civil Action No. 1:16-cv-00229-JDL |

## DEFENDANT THE FIRST MARBLEHEAD CORPORATION'S
## MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ..................................................................................................................3

STANDARD OF REVIEW ....................................................................................................5

     A.    Rule 12(b)(2) Standard. ..............................................................................5

     B.    Rule 12(b)(1) Standard. ..............................................................................5

     C.    Rule 12(b)(6) Standard. ..............................................................................6

ARGUMENT ......................................................................................................................6

I.     The Court Lacks Personal Jurisdiction Over First Marblehead. ...........................6

     A.    Plaintiffs Have Failed to Allege Facts That Establish General Personal Jurisdiction Over First Marblehead. .........................................7

     B.    Plaintiffs Have Failed to Allege Facts That Establish Specific Personal Jurisdiction Over First Marblehead. .........................................8

          1.    First Marblehead Has No Contacts With Maine That Related to Plaintiffs' Claims. ..............................................................8

               (a)    Allegations Regarding First Marblehead's Subsidiaries Do Not Establish Contacts With Maine. ..................................9

               (b)    U.S. Bank's Contacts Cannot Be Imputed to First Marblehead. ...........................................................10

          2.    First Marblehead Has Not Purposely Availed Itself of the Benefits and Protections of Maine's Laws. ..............................10

II.     Plaintiffs Lack Standing as to First Marblehead. ...............................................11

III.     Plaintiffs' Group-Pled Claims Under the FDCPA and MFDCPA Fail as a Matter of Law as to First Marblehead. ...................................................................12

     A.    Plaintiffs' FDCPA and MFDCPA Claims Are Barred by a One-Year Statute of Limitations. ...........................................................12

     B.    First Marblehead Is Not a "Debt Collector" as Defined by the FDCPA and MFDCPA. ....................................................................13

IV.     Plaintiffs' Claim Under the Maine Unfair Trade Practices Act Fails as a Matter of Law. ...............................................................................................17

CONCLUSION ..................................................................................................................18

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*,
  267 F.3d 30 (1st Cir. 2001) ...................................................................................4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................6, 14, 17

*B.J. Tidwell Indus., Inc. v. Zawacki*,
  645 F. Supp. 2d 7 (D. Me. 2009) ......................................................................5, 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................................6

*BlueTarp Fin., Inc. v. Melloul Blamey Const. S.C., Ltd.*,
  846 F. Supp. 2d 307 (D. Me. 2012) ....................................................................7

*Boit v. Gar–Tec Prods., Inc.*,
  967 F.2d 671 (1st Cir.1992) .................................................................................5

*Centro Medico del Turabo, Inc. v. Feliciano de Melecio*,
  406 F.3d 1 (1st Cir. 2005) ...................................................................................6

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014) ......................................................................................6, 8

*De Castro v. Sanifill, Inc.*,
  198 F.3d 282 (1st Cir. 1999) ...............................................................................7

*Donatelli v. NHL*,
  893 F.2d 459 (1st Cir. 1990) ...............................................................................9

*E.E.O.C. v. Waffle House, Inc.*,
  534 U.S. 279 (2002) ...........................................................................................3

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
  570 F. Supp. 2d 851 (E.D. La. 2008) ................................................................11

*Glenwood Farms, Inc. v. O'Connor*,
  666 F. Supp. 2d 154 (D. Me. 2009) ..................................................................10

*Harlow v. Children's Hosp.*,
  432 F.3d 50 (1st. Cir. 2005) ................................................................................6

ii

*Harry v. Am. Brokers Conduit*,
   No. CV 16-10895-FDS, 2017 WL 129997 (D. Mass. Jan. 12, 2017)......................................13

*Henderson v. Bank of New York Mellon Corp.*,
   146 F. Supp. 3d 438 (D. Mass. 2015) .................................................................................12

*Katz v. Pershing, LLC*,
   672 F.3d 64 (1st Cir. 2012) .............................................................................................11

*Kuehl v. FDIC*,
   8 F.3d 905 (1st Cir. 1993) ...............................................................................................15

*Lister v. Bank of America, N.A.*,
   790 F.3d 20 (1st Cir. 2015) ..............................................................................................15

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .......................................................................................................11

*In re Martel*,
   539 B.R. 192 (Bankr. D. Me. 2015) ....................................................................................14

*Media3 Techs., LLC v. CableSouth Media III, LLC*,
   17 F. Supp.3d 107 (D. Mass. 2014) ...................................................................................10

*Negron-Torres v. Verizon Commc'ns, Inc.*,
   478 F.3d 19 (1st Cir. 2007).............................................................................................7, 9

*Papi v. Town of Gorham*,
   No. 2:16-CV-00560-JDL, 2017 WL 1411479 (D. Me. Apr. 20, 2017)......................................4

*Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*,
   196 F.3d 284 (1st Cir. 1999) ............................................................................................10

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
   632 F.3d 762 (1st Cir. 2011) ............................................................................................11

*Sanchez v. Pereira-Castillo*,
   590 F.3d 31 (1st Cir. 2009) ...............................................................................................6

*Snell v. Bob Fisher Enters., Inc.*,
   115 F. Supp. 2d 17 (D. Me. 2000) ......................................................................................4

*Tungate v. MacLean-Stevens Studios, Inc.*,
   714 A.2d 792 (ME 1998) .................................................................................................17

*United States v. Swiss Am. Bank*,
   274 F.3d 610 (1st Cir. 2001) ..............................................................................................7

*Valentin v. Hosp. Bella Vista*,
    254 F.3d 358 (1st Cir. 2001) ................................................................5

**Statutes**

5 M.R.S.A. § 207 ..............................................................................2, 17

32 M.R.S.A. § 11001, *et seq.* ................................................................2

32 M.R.S.A. § 11002(6) ........................................................................14

32 M.R.S.A. § 11054(4) ........................................................................12

15 U.S.C. § 1692, *et seq.* ........................................................................1

15 U.S.C. § 1692a(6) .......................................................................13, 14

15 U.S.C. § 1692k(d) ............................................................................12

**Other Authorities**

U.S. Const. art. III, § 2, cl. 1 ................................................................11

## MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), Defendant The First Marblehead Corporation ("First Marblehead"),[1] hereby respectfully moves to dismiss Counts I, II, and III of the Second Amended Complaint (ECF No. 112) ("SAC") with prejudice as to First Marblehead.

## PRELIMINARY STATEMENT

Plaintiffs assert claims on behalf of a purported class stemming from debt collection activity and lawsuits starting in late 2014 to collect on Plaintiffs' defaulted student loans.  None of their allegations establish personal jurisdiction or standing against First Marblehead nor do they state a claim.  The SAC should be dismissed with prejudice as to First Marblehead.

This is Plaintiffs' third bite at the apple.  The Court allowed Plaintiffs leave to file the SAC on the condition that they cure their prior "failure to identify which defendants are alleged to have committed alleged acts or omissions w[hich] make[s] it unreasonably difficult for each defendant to formulate an answer or otherwise respond."  Order on Plaintiff's Motion for Leave to Amend the Complaint for the Second Time (ECF No. 110), at 14.  Despite the Court's explicit instruction, of the 25 paragraphs that reference First Marblehead, 19 lump First Marblehead together with other Defendants and none identifies a single action First Marblehead took to pursue Plaintiffs' delinquent debt.  Rather than cure the deficiencies of prior iterations of their complaint, Plaintiffs seem to have compounded them.

The SAC purports to assert three claims against First Marblehead: (1) violation of the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*.; (2) violation

---

[1] On or about May 4, 2017, Defendant officially changed its name from "The First Marblehead Corporation" to "Cognition Financial Corporation."  Defendant has filed a motion to amend its name to "The First Marblehead Corporation n/k/a Cognition Financial Corporation."  ECF No. 166.

of the Maine Fair Debt Collection Practices Act ("MFDCPA"), 32 M.R.S.A. § 11001, *et seq.*; and (3) violation of the Maine Unfair Trade Practices Act ("MUTPA"), 5 M.R.S.A. § 207.  All claims should be dismissed as to First Marblehead.

First, First Marblehead has no contacts with the state of Maine.  The SAC does not allege any facts that would allow other Defendants' contacts to be imputed to First Marblehead. Accordingly, the Court lacks personal jurisdiction over First Marblehead.

Second, there are no specific allegations that establish a direct causal connection between the debt collection activity Plaintiffs complain of and any of First Marblehead's conduct.  Nor are there any allegations that would allow First Marblehead to be vicariously liable for other Defendants.  Accordingly, Plaintiffs lack standing and have not alleged a case or controversy as to First Marblehead.

Third, the allegations against First Marblehead fail to state a claim.  With respect to the FDCPA and MFDCPA claims, Plaintiffs have failed to plead First Marblehead is a debt collector.  The only specific allegation that connects First Marblehead to the trusts is that First Marblehead has "maintained rights to a data base [sic] containing material information about the Plaintiffs."  Additionally, while the SAC does not allege facts sufficient to hold First Marblehead liable for the conduct of its subsidiaries, even if it did, First Marblehead's subsidiaries ceased acting on behalf of the trusts that own Plaintiffs' loans in 2012, as Plaintiffs acknowledge in the SAC at ¶¶ 54-55, 121, 177.  Thus, the conduct of First Marblehead's subsidiaries is not connected to Plaintiffs' alleged injuries (which allegedly occurred no earlier than 2014); and, even if it were, Plaintiffs' claims would be barred by the FDCPA and MFDCPA's one-year statute of limitations.  Accordingly, those claims must be dismissed.

The allegations against First Marblehead also fail to state a claim under MUTPA.  That First Marblehead has rights to a database does not constitute an unfair practice that caused Plaintiffs substantial injury.  Similar to the FDCPA and MFDCPA claims, the SAC does not allege facts sufficient to hold First Marblehead liable for the conduct of its subsidiaries, and, even if it did, First Marblehead's subsidiaries ceased acting on behalf of the trusts in 2012.  Thus, the conduct of First Marblehead's subsidiaries is not connected to Plaintiffs' alleged injuries, which occurred no earlier than 2014.  For all these reasons, the Court should dismiss Plaintiffs' claims against First Marblehead in their entirety with prejudice.[2]

## BACKGROUND

First Marblehead is a Delaware corporation with its principal place of business in Massachusetts.  SAC ¶ 32.  The SAC names The First Marblehead Corporation as a defendant and defines "First Marblehead" as The First Marblehead Corporation.  *Id.*  The SAC alleges that First Marblehead has several subsidiaries including First Marblehead Education Resources, Inc. ("FMER") and First Marblehead Data Services, Inc. ("FMDS"), neither of which are named defendants.  *Id.* ¶ 33.  At the time Plaintiffs' student loans were assigned to National Collegiate Student Loan Trusts 2005-1, 2005-3, 2006-3, and 2007-1 (the "Trusts"), FMDS was the Administrator for each of the Trusts.  SAC ¶ 33; Declaration of Raymond Morel ("Morel Decl.") ¶¶ 5-9, attached hereto as Ex. 1, Morel Decl. Ex. A at 5; Ex. B at 6; Ex. C at 5; Ex. D at 5 (Trust prospectuses filed with the SEC naming FMDS as Administrator).[3]  Beginning on

---

[2] It appears that Plaintiffs' fraud and breach of contract claims are not directed against First Marblehead.  First Marblehead is not named in the fraud count, SAC ¶¶ 294-304, and Plaintiffs do not allege they entered into a contract with First Marblehead.  *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty").

[3] First Marblehead's motion seeks dismissal based on Rule 12(b)(1) and 12(b)(2) because the court lacks personal jurisdiction and Plaintiffs lack standing.  The Court may consider declarations under those arguments without converting a motion to dismiss to one for summary

March 1, 2009, FMER was appointed Special Servicer to the Trusts. SAC ¶¶ 33, 37, 205; Morel Decl. ¶ 12. On March 2, 2012, First Marblehead sold to Route 66 Ventures, Inc., d/b/a Goal Structured Solutions, Inc. ("Goal"), all of its outstanding capital stock in its subsidiary, FMDS. Morel Decl. ¶ 10; *id.* Ex. E. at 5.[4] Following the sale of FMDS, First Marblehead and its affiliates ceased providing trust administration services. *Id.* On April 13, 2012, FMER resigned as Special Servicer and U.S. Bank, N.A. ("U.S. Bank") assumed the role of Special Servicer on June 21, 2012. SAC ¶¶ 37, 205; Morel Decl. ¶ 13.

Plaintiffs allege that, beginning in late 2014,[5] nearly two years after all First Marblehead subsidiaries ceased acting on behalf of the Trusts, they were contacted by various Defendants and third-parties regarding their loans. *See, e.g.*, SAC ¶¶ 56, 68, 97, 104, 145, 182. They allege these Defendants and third-parties were acting on behalf of the Trusts, to collect debts related to their student loans. *See, e.g.*, SAC ¶¶ 56, 68, 97, 126, 143, 145 179, 182-83.

Plaintiffs filed the original complaint on May 2, 2016, ECF No. 1, and a first amended complaint on May 25, 2016, ECF No. 3, neither of which named First Marblehead. Plaintiffs sought leave to file the SAC on October 26, 2016. ECF No. 64. The Court granted that motion

---

judgment. *Snell v. Bob Fisher Enters., Inc.*, 115 F. Supp. 2d 17, 20 (D. Me. 2000); *Papi v. Town of Gorham*, No. 2:16-CV-00560-JDL, 2017 WL 1411479, at *1 (D. Me. Apr. 20, 2017). Accordingly, the Court may consider the Morel Declaration and all of its exhibits for purposes of First Marblehead's personal jurisdiction and standing arguments. Exhibits A-E of the Morel Declaration are public records that were filed with the Securities and Exchange Commission. Accordingly, the exhibits may be considered in connection with the Rule 12(b)(6) arguments. *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33–34 (1st Cir. 2001) (when analyzing a defendant's motion to dismiss under Rule 12(b)(6), a court can consider documents of undisputed authenticity such as public records without converting the motion into one for summary judgment).

[4] Defendant Turnstile Capital Management, LLC ("Turnstile") is a subsidiary of Goal. Corporate Disclosure Statement by Turnstile Capital (ECF No. 42), at ¶ 2.

[5] Plaintiffs allege that Plaintiff Hill was first contacted in 2015. SAC ¶ 177.

in part and denied it in part on January 11, 2017.  ECF No. 110.  The Court allowed Plaintiffs to file the SAC on the condition that they revise their proposed SAC to delete the generic group-plead "Defendants" and instead identify which specific Defendant did what.  *See* ECF No. 110 at 14.  Despite the Court's order, many instances of group-pleading remain, including instances the Court specifically identified in its order.  *See*, ECF No. 110 at 13, quoting Plaintiffs' Proposed Second Amended Complaint (ECF No. 64-1), at 15.[6]

## STANDARD OF REVIEW

### A.  Rule 12(b)(2) Standard.

Plaintiffs bear the burden of establishing facts sufficient for the court's exercise of personal jurisdiction over a defendant.  *B.J. Tidwell Indus., Inc. v. Zawacki,* 645 F. Supp. 2d 7, 10 (D. Me. 2009).  Plaintiffs must satisfy "both the forum's long arm statute and the due process clause of the Constitution."  *Boit v. Gar–Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir.1992).  Plaintiffs "may not rely on unsupported allegations in their pleadings, but must instead make affirmative proof" to make a *prima facie* showing.  *B.J. Tidwell Indus., Inc.*, 645 F.Supp. 2d at 10 (quotations omitted).

### B.  Rule 12(b)(1) Standard.

Challenges to subject matter jurisdiction for lack of standing can be brought as "sufficiency challenges" or "factual challenges."  *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363-64 (1st Cir. 2001).  In a factual challenge, the "plaintiff's jurisdictional averments are entitled to no presumptive weight" and the court may consider "extrinsic evidence".  *Id.*

---

[6] *See also* SAC ¶ 272 (lumping "Debt Collector Defendants" together without specifying which Defendant did what).

### C.      Rule 12(b)(6) Standard.

To survive a motion to dismiss, Plaintiffs must allege facts sufficient to establish a plausible basis for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Most significant to the instant action, each defendant's role in the challenged conduct must be sufficiently alleged to make it a plausible defendant. *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 48 (1st Cir. 2009) ("In response to a motion to dismiss, we must determine whether, *as to each defendant*, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted." (emphasis in original)); *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 5 (1st Cir. 2005) (the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").

## ARGUMENT

### I.      The Court Lacks Personal Jurisdiction Over First Marblehead.

Plaintiffs have not alleged facts allowing this court to exercise personal jurisdiction over First Marblehead. A district court may exercise jurisdiction over a defendant through general or specific jurisdiction. *Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st. Cir. 2005). General personal jurisdiction over a foreign corporation exists "only when the corporation's affiliations with the State in which the suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (internal quotation omitted). Unless exceptional circumstances exist, a corporation is only at home in its place of incorporation or its principal place of business. *Id.* at 760-61.

To exercise specific personal jurisdiction, a court first must determine whether the claim at issue "directly relates to or arises out of the defendant's contacts with the forum" and "whether

those contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws." *United States v. Swiss Am. Bank*, 274 F.3d 610, 620-21 (1st Cir. 2001) (quoting *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999)). "In the relatedness inquiry, 'causation is central.'" *Negron-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19, 25 (1st Cir. 2007) (quoting *Harlow*, 432 F.3d at 62). The purposeful availment requirement looks at "whether the defendant's connection to the forum state was voluntary and whether the defendant's contacts with the forum state were such that the defendant could have foreseen being hauled into court in the forum state." *BlueTarp Fin., Inc. v. Melloul Blamey Const. S.C., Ltd.*, 846 F. Supp. 2d 307, 317 (D. Me. 2012). Additionally, a parent corporation's "mere ownership" of subsidiaries does not justify rejection of corporate identity or establish personal jurisdiction over the parent. *De Castro v. Sanifill, Inc*., 198 F.3d 282, 283–84 (1st Cir. 1999).

### A. Plaintiffs Have Failed to Allege Facts That Establish General Personal Jurisdiction Over First Marblehead.

First Marblehead is a Delaware corporation with its principal place of business in Massachusetts. SAC ¶ 32. It is not registered with the Maine Secretary of State and has no offices, locations, or employees in Maine. Morel Decl ¶ 4.

Plaintiffs attempt to plead around these facts by alleging that First Marblehead "knowingly employ[s] people in Maine to collect debts in violation of federal and state law," SAC ¶ 19. But this conclusory allegation, unsupported by any facts, is false. First Marblehead does not employ *anyone* in Maine to collect debts or for any other purpose. Morel Decl. ¶ 4. Neither First Marblehead nor any of its subsidiaries have acted on behalf of the Trusts or directed anyone else to act on behalf of the Trusts since 2012. *Id*. ¶ 15. First Marblehead does not have constant and pervasive contacts with Maine and is not at "home" in Maine. Thus, Plaintiffs have not come close to alleging facts that establish a court in Maine has general jurisdiction over First

Marblehead.[7]  *Daimler*, 134 S. Ct. at 760-61 (holding that even when corporations engage in a "substantial, continuous, and systematic course of business" in a state, the exercise of general personal jurisdiction is not always appropriate).  Accordingly, this Court does not have general personal jurisdiction over First Marblehead.

### B.   Plaintiffs Have Failed to Allege Facts That Establish Specific Personal Jurisdiction Over First Marblehead.

The Court lacks specific personal jurisdiction over First Marblehead because the SAC fails to allege any facts that show First Marblehead or any of its subsidiaries had any contacts with Maine that caused Plaintiffs' injuries.[8]  Moreover, the contacts of other Defendants cannot be attributed to First Marblehead.  Plaintiffs also have failed to establish that First Marblehead purposefully availed itself of the laws of Maine such that it could be expected to be sued in Maine.

### 1.   First Marblehead Has No Contacts With Maine That Related to Plaintiffs' Claims.

Plaintiffs have not alleged any conduct by First Marblehead anywhere, let alone in Maine, that has caused their alleged injuries.  Nor can the conduct of other Defendants be imputed to First Marblehead.  Accordingly, Plaintiffs have failed to allege facts sufficient to meet the "relatedness inquiry" for specific jurisdiction.

---

[7] First Marblehead's Rule 12(b)(2) challenge to this bare allegation requires Plaintiffs to produce evidence to support their contention.  *B.J. Tidwell Indus., Inc.*, 645 F.Supp. 2d at 12 (court did not credit plaintiff's assertion that defendants were Maine residents where defendants denied allegation and plaintiff "did not respond to the challenge, and produced no evidence to support its contention").

[8] It is unclear whether Plaintiffs are attempting to hold First Marblehead liable for the conduct of its subsidiaries.  As noted above, the SAC alleges FMER was the original Special Servicer, and FMDS was the Administrator of the Trusts.  SAC ¶¶ 32-33.  However, later in the SAC, Plaintiffs state that The First Marblehead Corporation resigned as the Special Servicer.  *See, e.g.*, *id.* ¶ 37.  The SAC should be dismissed because of this inartful pleading or at a minimum the Plaintiffs should be required to file a more definite statement pursuant to Rule 12(e).

(a)     **Allegations Regarding First Marblehead's Subsidiaries Do Not Establish Contacts With Maine.**

Plaintiffs allege that FMER, a subsidiary of First Marblehead, was at one time the Special Servicer for the Trusts.  SAC ¶ 33.  They also allege that FMDS, another First Marblehead subsidiary, was Administrator of the Trusts.  *Id.*  Plaintiffs do not make any allegations regarding the relationship between First Marblehead and its subsidiaries, other than that it was their parent corporation.  *Id.*  This is not enough for this Court to exercise personal jurisdiction over First Marblehead.  *Donatelli v. NHL*, 893 F.2d 459, 466 (1st Cir. 1990) (to have jurisdiction over an out-of state parent corporation, the parent cannot merely exercise that "degree of control innately inherent in the family relationship," but must exercise a greater degree of control "than that normally associated with common ownership and directorship") (citations omitted).

Moreover, even if First Marblehead's subsidiaries' contacts could be imputed to First Marblehead, which they cannot, the contacts of FMER and FMDS would not establish specific personal jurisdiction in this case because those entities ceased acting on behalf of the Trusts, or ceased being First Marblehead subsidiaries, in 2012 while the conduct at-issue in Plaintiffs' complaint started in late 2014.  SAC ¶¶ 54, 55, 121, 177.  Indeed, Plaintiffs admit that FMER resigned from its role as the Special Servicer to the Trusts in 2012 and that U.S. Bank is now the Special Servicer, SAC ¶¶ 16, 33, 37, 205.  First Marblehead sold FMDS and exited the trust administration business in March of 2012.  Morel Decl. ¶ 10; *id.* Ex. E at 5.  Allegations that First Marblehead subsidiaries acted on behalf of the Trusts two years before the conduct Plaintiffs complain of are not sufficient to establish personal jurisdiction.  *Negron-Torres*, 478 F.3d at 25 (exercise of specific personal jurisdiction must be rejected where "the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect") (quoting *Harlow*, 432 F.3d at 62).

9

**(b)**      **U.S. Bank's Contacts Cannot Be Imputed to First Marblehead.**

Unable to establish direct contacts with Maine, Plaintiffs suggest that U.S. Bank's contacts should be factored into First Marblehead's personal jurisdiction analysis.  However, the unsupported and non-specific allegation that "[p]ursuant to various agreements with the Defendants[,] First Marblehead acted as Administrator . . . for the Trusts, and was authorized to direct some of the actions of US Bank that are the subject of this Complaint," SAC ¶ 34, is false.  First Marblehead has not entered into any agreement with any Defendant that would allow it to direct any of U.S. Bank's actions on behalf of the Trusts. Morel Decl. ¶¶ 15, 16.[9]  Accordingly, there is no basis to find that First Marblehead exercises any degree of control over U.S. Bank that would allow U.S. Bank's contacts to be imputed to First Marblehead.

**2.**      **First Marblehead Has Not Purposely Availed Itself of the Benefits and Protections of Maine's Laws.**

Plaintiffs' allegation that First Marblehead "maintained rights to a data base [sic] containing material information about the Plaintiffs," SAC ¶ 37, is insufficient to establish that First Marblehead could foresee being sued in Maine because this allegation does not establish First Marblehead has "actually and purposefully conducted commercial or other transactions with the forum state through" the database.  *See Media3 Techs., LLC v. Cable SouthMedia III, LLC*, 17 F. Supp.3d 107, 112 (D. Mass. 2014) ("Something more [than access to a website] is required to show defendant purposefully availed itself of doing business in" the forum state).  [10]

_____

[9] Because FMDS was sold March 2, 2012 and U.S. Bank did not assume the role of Special Servicer until June 21, 2012, FMDS was never the Administrator when U.S. Bank was the Special Servicer.  Morel Decl. ¶¶ 10, 13, 14.

[10] Because Plaintiffs have not pled facts establishing the relatedness and purposeful availment elements, the Court need not address the "Gestalt factors" used to determine if the exercise of personal jurisdiction is reasonable.  *Glenwood Farms, Inc. v. O'Connor*, 666 F. Supp. 2d 154, 168 (D. Me. 2009); *Phillips Exeter*, 196 F.3d at 288 (to support a finding of specific jurisdiction, an affirmative finding on each element is required).

## II.      Plaintiffs Lack Standing as to First Marblehead.

The Constitution limits the judicial power of the federal courts to actual cases and controversies.  U.S. Const. art. III, § 2, cl. 1.  "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  To satisfy the standing requirement, a plaintiff must establish: injury, causation, and redressability.  *See id.* at 560-61.  The causation element requires a "plaintiff to show a sufficiently direct causal connection between the challenged action and the identified harm."  *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012).  To establish standing, named plaintiffs in a class action suit must allege that they were injured by each defendant named in the suit.  *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 570 F. Supp. 2d 851, 586 (E.D. La. 2008); *see Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 770-71 (1st Cir. 2011) (investors lacked Article III standing to assert claims involving sale of certificates in six trusts from which no named plaintiff made purchases).

Plaintiffs lack standing to bring any of their claims as to First Marblehead.  Plaintiffs make no allegations that First Marblehead was involved either directly or indirectly in the complained of debt collection activity involving the Plaintiffs.  Nor could they since the complained of actions began in late 2014, and according to the SAC, First Marblehead resigned in 2012.  SAC ¶¶ 205, 242.  The allegation that First Marblehead "maintained rights to a data base [sic] containing material information about the Plaintiffs," fails to make a "direct causal connection" between alleged database rights and the alleged harm Plaintiffs suffered from debt collection activity.  Accordingly, the specific allegations as to First Marblehead fail to establish that Plaintiffs have standing as to First Marblehead.

To the extent Plaintiffs are attempting to hold First Marblehead vicariously liable for its subsidiaries, this also does not establish standing. "It is a well-settled general principle of corporate law that a parent corporation is not liable for the acts of its subsidiaries." *Henderson v. Bank of New York Mellon Corp.*, 146 F. Supp. 3d 438, 444 (D. Mass. 2015) (citing *U.S. v. Bestfoods*, 524 U.S. 51, 61, 118 (1998)). The simple allegation that First Marblehead is the parent corporation of its subsidiaries is not enough to make First Marblehead liable for its subsidiaries. Even if the subsidiaries' conduct could be attributed to First Marblehead, which it cannot, Plaintiffs still would not have standing. As discussed above, First Marblehead's subsidiaries stopped acting on behalf of the Trusts in 2012, and the debt collection Plaintiffs complain of did not begin until 2014. Thus, the allegations do not establish a "direct causal connection" between the conduct of FMER and FMDS. As a result, all of Plaintiffs' claims should be dismissed for lack of standing such that there is no actual case or controversy between Plaintiffs and First Marblehead.

## III. Plaintiffs' Group-Pled Claims Under the FDCPA and MFDCPA Fail as a Matter of Law as to First Marblehead.

Plaintiffs' claims under the FDCPA and MFDCPA fail for two independent reasons. First, Plaintiffs' claims are time barred. Second, First Marblehead is not a "debt collector" as defined by the FDCPA and MFDCPA.

### A. Plaintiffs' FDCPA and MFDCPA Claims Are Barred by a One-Year Statute of Limitations.

The FDCPA requires that an action be commenced "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Maine's FDCPA also has a one-year statute of limitations. *See* 32 M.R.S.A. § 11054(4) ("An action to enforce liability under this section shall be brought within one year from the date on which the violation occurs."). According to

the SAC, First Marblehead resigned as Special Servicer in 2012.  SAC ¶ 205.[11]  And First Marblehead sold FMDS in 2012.  Morel Decl. Ex. E at 5.  Accordingly, the statute of limitations for FDCPA or MDCPA claims ended in 2013.  Plaintiffs did not file the original complaint until 2016 nor make any claims against First Marblehead until it was added as a party in 2017.  Thus, even if Plaintiffs could state a claim against First Marblehead based on the conduct of its subsidiaries, which they cannot, such claim would be barred by the statute of limitations.  *Harry v. Am. Brokers Conduit*, No. CV 16-10895-FDS, 2017 WL 129997, at *8 (D. Mass. Jan. 12, 2017) (because plaintiffs' action was filed in March 2016, and because defendant stopped colleting debts 2012, plaintiffs' claim was time barred).[12]

### B.   First Marblehead Is Not a "Debt Collector" as Defined by the FDCPA and MFDCPA.

Even if Plaintiffs' claims as to First Marblehead were not time barred, and they are, the allegations in the SAC still fail to state a claim.  The FDCPA and MFDCPA define "debt collector" to include "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6); *see*

---

[11] As noted above, the SAC alleges that FMER was the Special Servicer but then states that it was First Marblehead that resigned as Special Servicer in 2012.  SAC ¶ 205.  In any event, the Plaintiffs do not allege that either FMER or First Marblehead was the Special Servicer after U.S. Bank became the Special Servicer in 2012.  SAC ¶¶ 33, 205.

[12] Any attempt by Plaintiffs to resuscitate their claims through the doctrine of equitable tolling also should fail.  Plaintiffs previously have argued that their claims should be equitably tolled under the doctrine of fraudulent concealment.  Order on Defendants' Motion to Dismiss (ECF No. 109), at 5, citing Plaintiffs' Response to Defendant Charter One Bank, N.A.'s Motion to Dismiss (ECF No. 32), at 4, Plaintiffs' Response to Defendant PNC Bank, N.A.'s Motion to Dismiss (ECF No. 57), at 8.  "To the extent [Plaintiff] claims that the statute of limitations should be equitably tolled under the doctrine of fraudulent concealment, she must demonstrate that she has exercised 'reasonable diligence in discovery that she has been the victim of fraud.'" ECF No. 109 at 5 quoting *Philibotte v. Nisource Corp. Serv. Co.*, 793 F.3d 159, 164 (1st Cir. 2015).  Plaintiffs have purported to plead a fraud claim as to several defendants but not as to First Marblehead.  SAC ¶¶ 295-304.  Accordingly, there is no basis to equitably toll the statute of limitations as to this Defendant.

32 M.R.S.A. § 11002(6); *see also In re Martel*, 539 B.R. 192, 194 n.4 (Bankr. D. Me. 2015) ("The Maine FDCPA mirrors the federal Act.").

The SAC makes four types of allegations in an attempt to plead First Marblehead as a debt collector.  First, it alleges that First Marblehead is a "debt collector as defined in 15 U.S.C. §1692a(6) and 32 M.R.S.A. §11002(6)."  SAC ¶ 38; *see also id*. ¶ 268.  Second, it alleges that "US Bank, VCG, Wilmington and First Marblehead, among others, . . . hired Transworld, Abrahamsen and Turnstile, among others" to collect debts, *id.* ¶ 163, or employed people in Maine to collect debts, *id.* ¶ 19.  Third, it alleges that First Marblehead "maintained rights to a data base [sic] containing material information about the Plaintiffs."  *Id.* ¶ 37.  Fourth, the SAC alleges that First Marblehead "was authorized to direct some of the actions of US Bank that are subject of this Complaint."  *Id.* ¶ 34.  None of these types of allegations are sufficient.

First, Plaintiffs' mere legal conclusion that First Marblehead is a "debt collector as defined in 15 U.S.C. §1692a(6) and 32 M.R.S.A. §11002(6)," *id.* ¶ 38, does not make it one.  *See Iqbal*, 556 U.S. at 678 (noting, that while a court must accept the complaint's factual allegations as true at the motion to dismiss stage, it need not accept legal conclusions).

Second, the allegations that four defendants, *among others*, hired other defendants, *among others* to collect debts or employed people in Maine to collect debts[13] also is insufficient as it suffers from the same group-pleading issues that the Court previously warned against when reviewing the proposed SAC.  Plaintiffs have not complied with the Court's order "to identify which defendants are alleged to have committed alleged acts or omissions."  ECF No. 110 at 14

---

[13] In its personal jurisdiction argument, First Marblehead submitted a declaration showing that this allegation is false.  Here, First Marblehead does not rely on the factual statement contained solely in the declaration because its argument here is brought under Rule 12(b)(6).  As stated in footnote 2, the Court may rely on the public records that are cited below without converting a Rule 12(b)(6) motion to a motion for summary judgment.

(failure to identify Defendants with specificity "will make it unreasonably difficult for each defendant to formulate an answer"). Instead, they have simply substituted "US Bank, VCG, Wilmington and First Marblehead, among others" for "Defendants," which is a distinction without a difference. Even more egregiously, Plaintiffs have substituted "Debt Collector Defendants" for "Defendants" but then defined "Debt Collector Defendants" to include every defendant in the case. *See, e.g.,* SAC ¶ 268. First Marblehead does not know how to answer the SAC as it does not know what specific acts it is alleged to have done or who it is alleged to have done them with. Plaintiffs' failure to comply with this Court's specific guidance on how to cure the deficiencies of their proposed SAC warrants dismissal of the SAC with prejudice. *Kuehl v. FDIC*, 8 F.3d 905, 907-09 (1st Cir. 1993) (affirming dismissal of amended complaint with prejudice, for failure to comply with magistrate's prior order specifying how the complaint should be amended to cure defects).

Further, these general allegations are not plausible and are contradicted by their own allegations because Plaintiffs pled that U.S. Bank is the Special Servicer responsible for hiring the named subservicers and debt collectors and that First Marblehead resigned as Special Servicer in 2012. *Lister v. Bank of America, N.A.*, 790 F.3d 20, 23 (1st Cir. 2015) (on a motion to dismiss facts that are contradicted by the plaintiff's concessions or otherwise will be disregarded); SAC ¶205; Order on Defendants' Motion to Dismiss (ECF No. 109), at 18 ("Winne alleges that US Bank is Special Servicer to the [Trust]s and that it hired Turnstile and Transworld to collect debts").[14]

---

[14] Even if under Rule 12(b)(6), the Court takes the allegation that First Marblehead employs people to collect debts in Maine as true, Plaintiffs' claim still fails because they do not allege facts that connect First Marblehead to the debt collection activities they claim harmed them.

Third, the only specific allegation that plausibly connects First Marblehead to Plaintiffs is that First Marblehead "maintained rights to a data base [sic] containing material information about the Plaintiffs." SAC ¶ 37. But the maintenance of rights to a database does not make First Marblehead a debt collector. Thus, Plaintiffs have not alleged any facts showing that First Marblehead regularly collects or attempts to collect debt.

Unable to show a single direct action that First Marblehead took to pursue Plaintiffs' debts, Plaintiffs proceed by hoping to establish an indirect relationship through U.S. Bank and others. The conclusory allegation that "[p]ursuant to various agreements with the Defendants[,] First Marblehead acted as Administrator . . . for the Trusts, and was authorized to direct some of the actions of US Bank that are subject of this Complaint," *Id.* ¶ 34, does not make First Marblehead a debt collector. As this Court observed with respect to U.S. Bank, Plaintiffs must properly allege that First Marblehead is a debt collector under the Act and allege that the relationship between First Marblehead and U.S. Bank is sufficient to support vicarious liability. *See* ECF No. 110 at 17. Plaintiffs allege that U.S. Bank qualified as a debt collector because of (1) its position as Special Servicer to the Trusts; and (2) U.S. Bank's contractual responsibility to oversee Turnstile and Transworld's debt collection efforts. *Id.* at 19. Plaintiffs also allege that U.S. Bank hired Turnstile and Transworld to act as subservicers and collect debt. *Id.* These allegations were found sufficient to state a claim against U.S. Bank. *Id.*

In contrast, Plaintiffs' complaint is devoid of such specific allegations with respect to First Marblehead. Plaintiffs, in violation of the Court's prior ruling, do not specify what "various agreements" First Marblehead entered with which "Defendants" that allowed it to direct "some of the actions of US Bank." (emphasis added). Indeed, Plaintiffs remain intentionally vague because: (1) FMDS, not First Marblehead was the Trust Administrator, SAC ¶ 33; Morel Decl.

16

Ex. A at 5; Ex. B at 6; Ex. C at 5; Ex. D at 5; and (2) First Marblehead sold FMDS, which was the Trust Administrator two years before Plaintiffs' alleged injuries. Morel Decl. Ex. E at 5. Thus, Plaintiffs' SAC does not adequately allege that First Marblehead is a debt collector within the meaning of the FDCPA and MFDCPA. Accordingly, Plaintiffs' FDCPA and MFDCPA claims should be dismissed.

## IV. Plaintiffs' Claim Under the Maine Unfair Trade Practices Act Fails as a Matter of Law.

The MUTPA declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 5 M.R.S.A. § 207. To justify a finding of unfairness, the act or practice: (1) must cause, or be likely to cause, substantial injury to consumers; (2) that is not reasonably avoidable by consumers; and (3) that is not outweighed by any countervailing benefits to consumers or competition. *Tungate v. MacLean-Stevens Studios, Inc.*, 714 A.2d 792, 797 (ME 1998) (quotation marks omitted).

Plaintiffs have not identified a single unfair or deceptive practice with respect to First Marblehead. The SAC does not contain allegations that plausibly suggest First Marblehead's alleged database rights caused the debt collection activity they claim injured them. Additionally, as described above, neither FMER's nor FMDS's conduct is attributable to First Marblehead; but, even if it were, Plaintiffs have not alleged facts that show FMER's or FMDS's conduct, which ended in 2012, caused Plaintiffs injuries that allegedly occurred starting in 2014. Accordingly, Plaintiffs have failed to allege any unfair act attributable to First Marblehead.[15]

---

[15] Plaintiffs' allege that "[t]he acts described herein constitute unfair methods of competition and unfair or deceptive acts or practices." SAC ¶ 291. Plaintiffs' group-pled legal conclusions are insufficient. *Iqbal*, 556 U.S. at 678 (explaining, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (internal quotations omitted).

Any claim that First Marblehead controlled U.S. Bank, and that U.S. Bank's conduct can be attributed to First Marblehead also fails for the reasons described above.

## CONCLUSION

WHEREFORE, for the reasons stated The First Marblehead Corporation respectfully requests this court to dismiss Counts I, II, and III with prejudice as to First Marblehead.

Dated:  May 17, 2017

/s/ John W. Van Lonkhuyzen
John W. Van Lonkhuyzen
Maine Bar No. 3487
VERRILL DANA LLP
One Portland Square, P.O. Box 586
Portland, Maine 04112-0586
Tel: (207) 774-4000

Robyn C. Quattrone (*Pro Hac Vice*)
Amanda Raines Lawrence (*Pro Hac Vice*)
BUCKLEY SANDLER LLP
1250 24th Street NW, Suite 700
Washington, DC 20037
Tel: (202) 349-8000

Scott Sakiyama (*Pro Hac Vice*)
BUCKLEY SANDLER LLP
353 N. Clark Street, Suite 3600
Chicago, Illinois 60654
Tel: (312) 924-9800

*Attorneys for Defendant The First Marblehead*
*Corporation*

## <u>CERTIFICATE OF SERVICE</u>

This document was filed electronically on the above date and is available for viewing and downloading from the Court's ECF system.  Service was made on that date on counsel of record for Plaintiffs and other Defendants through the Court's ECF system.

*/s/ John W. Van Lonkhuyzen*
John W. Van Lonkhuyzen