## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| JANE C. FORRESTER WINNE, et als, <br><br> Plaintiffs <br><br> v. <br><br> NATIONAL COLLEGIATE STUDENT LOAN TRUSTS, et als, <br><br> Defendants | Civil Action Docket No. <br> 1:16-cv-00229-JDL |

**PLAINTIFFS' RESPONSE TO THE FIRST MARBLEHEAD CORPORATION'S MOTION TO DISMISS WITH INCORPORATED MEMORANDUM OF LAW**

**Introductory Statement:**

Plaintiffs object to the motion to dismiss filed by the First Marblehead Corporation's ("First Marblehead") because the facts as alleged, combined with the additional evidence offered herein, constitute a case or controversy under Article III, the exercise of personal jurisdiction over First Marblehead is constitutionally permissible, and the SAC adequately states claims under state and federal Fair Debt Collection Practices statutes and the Unfair Trade Practices Act.

**I.      Allegations in Plaintiffs' Second Amended Complaint Related to First Marblehead**

The following paragraphs are numbered according to how they appear in Plaintiffs' Second Amended Complaint[1] (ECF 112) and specifically refer to First Marblehead Corporation.

19.     US Bank, Wilmington, First Marblehead and the Trusts knowingly employ people in Maine to collect debts in violation of federal and state law.

20.     US Bank and First Marblehead are agents of the Trusts and/or Wilmington.

---

[1] Referred to as "SAC" herein

32. The First Marblehead Corporation ("First Marblehead") is incorporated in the State of Delaware and has its principal place of business in Medford, Massachusetts.

33. First Marblehead is the parent company of several affiliates, including First Marblehead Education Resources, Inc., the original Special Servicer for each of the Trusts and First Marblehead Data Services, Inc., the Administrator of each of the Trusts.

34. Pursuant to various agreements with the Defendants First Marblehead acted as Administrator, with power of attorney, for the Trusts, and was authorized to direct some of the actions of US Bank that are the subject of this Complaint.

35. First Marblehead was at all relevant times the custodian of student borrower data pursuant to a Database Agreement with The Education Resources Institute, Inc. ("TERI"), the guarantor of all students loans that were bundled and transferred to the Trusts.

36. In addition to acting as the Administrator and Special Servicer for the Trusts, First Marblehead performed risk management, administrative and support functions for TERI and services in connection with loan originations and securitization of loans.

37. Upon information and belief First Marblehead resigned as Special Servicer for the Trusts on or about 2012 but maintained rights to a data base (sic) containing material information about the Plaintiffs and all other student borrowers alleged to have defaulted on loans contained in the Trusts.

38. First Marblehead is a "debt collector" as defined in 15 U.S.C. §1692a(6) and 32 M.R.S.A. §11002(6).

39. On May 11, 2016 First Marblehead received a letter from the Consumer Finance Protection Bureau ("CFPB") notifying it that in accordance with the CFPB's discretionary Notice and Opportunity to Respond and Advise ("NORA") process, the CFPB's Office of

Enforcement is considering recommending that the CFPB take legal action against First Marblehead.  The NORA letter relates to practices allegedly employed by First Marblehead and its affiliates in connection with the collection and litigation of delinquent and defaulted private student loans held by the Trusts.

103.    The Trusts, Wilmington, The First Marblehead, US Bank, Transworld, Abrahamsen and Turnstile also reported falsely to credit reporting agencies that Winne was current in her payments on the alleged Private Loans through 2010 in order to create the false impression her so-called delinquency is not time barred in a deceptive and misleading way.

163.    US Bank, VCG, Wilmington and First Marblehead, among others, knew when they hired Transworld, Abrahamsen and Turnstile, among others, to collect the post-TERI petition Trusts loans that those loans had been paid off during the pendency of the TERI Chapter 11 Plan and that the Trusts no longer held right, title or interest in them.

164.    Further, the Trusts, Wilmington, First Marblehead, US Bank, Transworld, Abrahamsen and Turnstile knew or should have known that multiple entities in possession of electronic student borrower data – also the subject of the TERI Chapter 11 Plan – are using it simultaneously to collect on the same loans causing extreme anxiety, confusion, distress and economic damages.

196.    First Marblehead and US Bank were substantially involved in the securitization of private student debt for the sole purpose of making money.

205.    US Bank became the Special Servicer to the Trusts in 2012 when First Marblehead resigned, even though it had no experience servicing student loans.

208.    The Trusts, Wilmington, First Marblehead, US Bank, Transworld, Abrahamsen and Turnstile have known at least since 2012 that over $1 billion of loans have become uncollectible

due to the expiration of the relevant collections limitations period and therefore they are deceiving borrowers and courts by representing to credit reporting agencies among others the debts are not time barred.

216. There is presently an ongoing dispute between US Bank, First Marblehead and VCG over who is the properly appointed servicer of the loans in the Trusts.

223. First Marblehead and/or US Bank administered TERI's guaranty program with the Trusts.

230. The Trusts, US Bank and First Marblehead voted to confirm the Plan and are bound thereby.

238. The Trusts, US Bank, First Marblehead and Wilmington are, directly or indirectly, Beneficiaries of the Plan Trust.

242. First Marblehead and TERI shared data bases (sic) about Trusts loans while First Marblehead was the Special Servicer of the Trusts. In 2012 First Marblehead resigned and was replaced by US Bank.

243. After reasonable opportunity for further investigation or discovery, there will be evidence that the transfer of the Trusts loan data between First Marblehead, TERI, the Plan Trusts and US Bank and among their agents and assigns has caused multiple entities to sue and otherwise attempt to collect debts in violation of the law.

254. There are questions of law and fact common to the Class, including the following:

    a. Whether the Trusts have legal title to the debts it and those acting for and through it are attempting to collect;

    b. Whether multiple parties including but not limited to the Trusts, Wilmington, First Marblehead, US Bank, Transworld, Abrahamsen and/or Turnstile are

4

simultaneously attempting to collect debts that Plaintiffs do not owe or have settled;

267. Plaintiffs and the Class are "consumers" as that term is defined in 15 U.S.C. §1692, *et seq*.

268. Defendants Trusts, US Bank, TWS, Abrahamsen, VCG, Turnstile, Wilmington and First Marblehead are "debt collectors" ("Debt Collector Defendants").

269. The Loan Request/Credit Agreements that purportedly back securities issued by the Trusts are alleged debts that arise out of a transaction entered into for personal purposes.

270. Debt Collector Defendants, individually or through apparent or authorized agents, have unlawfully communicated with Plaintiffs and the Class at times and places known to be inconvenient, after Plaintiffs and the Class have notified them they refuse to pay, want debt collection communications to cease, and in some cases have an attorney, in violation of 15 U.S.C. §1692c.

271. Debt Collector Defendants have engaged in conduct knowingly and/or authorized conduct the natural consequences of which is to harass, oppress or abuse Plaintiffs and the Class in connection with attempts to collect debts by causing the telephone to ring repeatedly with the intent to annoy, abuse or harass in violation of 15 U.S.C. §1692d.

272. Debt Collector Defendants have used false, deceptive or misleading representations or means in connection with the collection of alleged debts.

273. False representations in violation of 15 U.S.C. §1692e include:

    a. the character, amount and legal status of the alleged debts to the Trusts;

    b. that nonpayment will result in action the Debt Collector Defendants cannot legally take;

5

    c. implications that the alleged Loan Request/Credit Agreements have been legally transferred or assigned;

    d. communications regarding credit information which is known to be false;

    e. written communication which creates the false impression the document is authorized by an official government agency or law as to its source, authorization and approval;

    f. deceptive means to collect or attempt to collect alleged debts or to obtain information about Winne and the Class;

    g. the failure to disclose in initial and subsequent communication that the Debt Collection Defendants are attempting to collect a debt and that any information obtained will be used for that purpose;

    h. that accounts have been turned over to innocent purchasers for value; and

    i. the use of business, company and organization names other than the true name of the Debt Collector Defendants.

274. The Debt Collector Defendants individually and in concert have used unfair and/or unconscionable means to collect or attempt to collect debts in violation of 15 U.S.C. §1692f by attempting to collect amounts that are not expressly authorized by the Loan Request/Credit Agreements or permitted by law, in violation of 15 U.S.C. §1692f.

275. The Debt Collector Defendants have violated 15 U.S.C. §1692g by failing to validate alleged debts in accordance with the law.

276. The Debt Collector Defendants have violated 15 U.S.C. §1692j by furnishing deceptive forms that are used to create the false belief that a person other than the alleged creditor is participating in the collection of the debt.

277. The Debt Collector Defendants' acts have been and are to this day intentional, committed in bad faith, and not the result of any bona fide error.

278. As a result of these and other actions described herein, Plaintiffs and the Class have suffered actual damages and will continue to suffer unless the Debt Collector Defendants are enjoined by this Court to stop engaging in unlawful, unfair, deceptive and misleading attempts to collect debts.

280. Plaintiffs and the Class are "consumers" pursuant to 32 M.R.S.A. §11002(3).

281. The Debt Collector Defendants are "debt collectors" pursuant to 32 M.R.S.A. §11002(6).

282. The Loan Request/Credit Request forms referenced herein are alleged obligations and "debts" pursuant to 32 M.R.S.A. §1102(5).

283. The Debt Collector Defendants have individually or in concert engaged in practices prohibited pursuant to 32 M.R.S.A. §11013, to wit, by:

    a. Engaging in conduct, the natural consequence of which is to harass, oppress and abuse Winne and the Class in the collection of debts, by among other things, causing a telephone to ring repeatedly with the intent to annoy, abuse or harass any person at the called number;

    b. Providing false and misleading information and documents, and otherwise engaging in false and misleading acts;

    c. Providing false representations of the character, amount, and/or legal status of the debts;

    d. Threatening to take legal action that may not legally be taken or that is not intended to be taken;

    e. The false representation that the debts have been sold, legally transferred or assigned;

    f. The false representation that Plaintiffs and the Class committed conduct in order to disgrace them;

    g. Communicating to credit reporting agencies and/or persons false and misleading credit information, including the failure to indicate the debt is disputed;

    h. Using or distributing written communication that falsely represents it is authorized by an agency of the United States, or creating the false impression as to its authorization;

    i. Using false representations and/or deceptive means to collect or attempt to collect a debt or obtain information concerning a consumer; and

    j. All other acts described above that relate to the federal Fair Debt Collection Practices Act that also pertain to the Maine statute.

284. The Debt Collector Defendants violated 32 M.R.S.A. §11013 by reporting to consumer reporting agencies Plaintiffs' and Class members' credit or alleged debt information.

285. The Debt Collector Defendants violated 32 M.R.S.A. §11013(7) by knowingly acting on time-barred debt.

286. The Debt Collector Defendants violated Maine's Fair Debt Collection Practices Act by individually or acting in concert committing acts with the express purpose of undermining the limitations period set forth in 32 M.R.S.A. §11013.

287. The Debt Collector Defendants' acts have been and are to this day intentional, committed in bad faith, and not the result of any bona fide error.

289.  The Trusts, First Marblehead, US Bank, Transworld, Abrahamsen and Turnstile are "persons" and engaged in "trade and commerce" as defined in 5 M.R.S.A. §207.

290.  The transactions between Plaintiffs and the Class and the defendants, identified in the preceding paragraph, not exempted from the MUTPA, and/or the alleged private student loans, were primarily for personal, family or household purpose. The Loan Request/Credit Agreements state, "this is a consumer transaction."

291.  The acts described herein constitute unfair methods of competition and unfair or deceptive acts or practices.

292.  As a result unfair and deceptive acts or practices, Plaintiffs and the Class have lost money and property.

293.  As a result unfair and deceptive acts or practices, Plaintiffs and the Class have suffered actual harm.

294.  Winne, on behalf of herself and the Class, made a settlement demand for damages at least 30 days prior to the filing of this First Amended Complaint pursuant to 5 M.R.S.A. §213.

**II.   Additional Evidence**

Plaintiffs proffer the following additional evidence in support of this Court exercising personal jurisdiction over First Marblehead under Rule 12(b)(2) as well as extrinsic evidence of the Court's Article III jurisdiction under Rule 12(b)(1):

**Exhibit A** -- Plan Trustee's Motion – offered to show the student loans at issue are TERI-owned and being liquidated by the Plan Trustee, and that First Marblehead and First Marblehead Education Resources are identified as unsecured creditors that have received approximately six million dollars between 10/19/2010 through 10/31/2015. In addition, the document shows First Marblehead, the NCSLT Trusts and US Bank all share the same address.

**Exhibit B** -- Hills Financial Activity Summary – offered to show Karin Hills' NCSLT loans were purchased by TERI on November 3, 2014.

**Exhibit C** – Coffey (aka Thurlow) Financial Activity Summary -- offered to show Sarah Coffey and Vickie McMullen's NCSLT loans were purchased by TERI on April 2, 2012.

**Exhibit D** – Winne Financial Activity Summary – offered to show Jane Forrester Winne's NCSLT loans were purchased by TERI on March 1, 2010 and October 1, 2010.

**Exhibit E** – Subpoena served on James T. Glessner, State Court Administrator, requesting the number of student loan collection cases filed in Maine District and Superior Courts from 2011.

**Exhibit F** – Response to Subpoena by State Court Administrator – stating there have been 372 cases filed by the NCSLTs between 2011 and September 29, 2016.

**Exhibit G** – State Court Response to Research Request – offered to show each NCSLT Trust defendant except NCSLT 2001-CP1 and NCSLT 2002-CP1 has filed at least one civil action in the Portland District Court in its name since 2011, and providing the corresponding docket numbers.

**Exhibit H** – Report of Maine Secretary of State – offered to show First Marblehead Education Resources, Inc., aka Cognition Lending Corporation, is registered to do business in Maine and in good standing.

**Exhibit I** – First Marblehead Corporation Form 8-K dated May 11, 2016 – offered to show the Consumer Financial Protection Bureau is considering legal action against the company in connection with the collection and litigation of delinquent and defaulted private student loans held by the NCSLTs.

**Exhibit J** – NCSLT 2004-1 Prospectus Supplement – offered to show 160 loans in this trust originated in Maine.

**Exhibit K** -- NCSLT 2004-2 Prospectus Supplement – offered to show 281 loans in this trust originated in Maine.

**Exhibit L** -- NCSLT 2005-1 Prospectus Supplement – offered to show 208 loans in this trust originated in Maine.

**Exhibit M** -- NCSLT 2005-2 Prospectus Supplement – offered to show 92 loans in this trust originated in Maine.

**Exhibit N** -- NCSLT 2005-3 Prospectus Supplement – offered to show 478 loans in this trust originated in Maine.

**Exhibit O** -- NCSLT 2006-1 Prospectus Supplement – offered to show 174 loans in this trust originated in Maine.

**Exhibit P** -- NCSLT 2006-2 Prospectus Supplement – offered to show 114 loans in this trust originated in Maine.

**Exhibit Q --** NCSLT 2006-3 Prospectus Supplement – offered to show 648 loans in this trust originated in Maine.

**Exhibit R** -- NCSLT 2006-4 Prospectus Supplement – offered to show 223 loans in this trust originated in Maine.

**Exhibit S** -- NCSLT 2007-1 Prospectus Supplement – offered to show 244 loans in this trust originated in Maine.

**Exhibit T** -- NCSLT 2007-2 Prospectus Supplement – offered to show 238 loans in this trust originated in Maine.

**Exhibit U** -- NCSLT 2007-3 Prospectus Supplement – offered to show 459 loans in this trust originated in Maine.

**Exhibit V** -- NCSLT 2007-4 Prospectus Supplement – offered to show 494 loans in this trust originated in Maine.

**Exhibit W** – Order on First Marblehead/TERI Database Dispute – offered to show First Marblehead and TERI shared a database that contained information about plaintiffs' NCSLT loans (to support SAC ¶ 242) and that after reasonable opportunity for further investigation or discovery, there will be evidence that the transfer of the data between First Marblehead, TERI, the Plan Trusts and US Bank, among others, has caused multiple entities to simultaneously sue and otherwise attempt to collect debts they do not own, in support of SAC ¶ 243.

**Exhibit X** – AES Correspondence – offered to show American Education Services was the servicer of plaintiffs' NCSLT loans.

### III.  Law and Argument

Plaintiffs incorporate by reference their arguments set forth in previously filed responses to motion to dismiss filed by US Bank (ECF 30), the Trusts (ECF 164) and Wilmington Trust Company (ECF 165).  Additionally, plaintiffs reserve the right to supplements their arguments at the hearing on the motion scheduled for August 1, 2017.

### 1.  12(b)(2) Personal Jurisdiction

The plaintiff has the burden of establishing the court's personal jurisdiction over a defendant. *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 674-75 (1st Cir. 1992).  When a defendant files a motion to dismiss for want of personal jurisdiction pursuant to Rule 12(b)(2), "a district court may choose from among several methods for determining whether the plaintiff has met its burden." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016) (quoting *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007)) (internal quotation marks omitted).  The "most conventional" of these methods is the prima facie method, which

"permits the district court to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995) (quoting *Boit*, 967 F.2d at 675) (internal quotation marks omitted).

To satisfy the prima facie standard, the plaintiff must show that the requirements of both the forum's long arm statute and the due process clause of the Constitution are satisfied. *Boit*, 967 F.2d at 675. The Maine long-arm statute extends "to the fullest extent permitted by the due process clause" and therefore the constitutional inquiry controls. *Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir. 2005) (quoting 14 M.R.S.A. § 704-A(1)).

Since the Supreme Court's opinion in *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945), courts have divided the personal jurisdiction analysis into two parts: "general" and "specific" personal jurisdiction. *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 462-63 (1st Cir. 1990). General jurisdiction exists when the defendant has engaged in "continuous and systematic activity" in the forum. *Harlow*, 432 F.3d at 64. Specific jurisdiction exists when "the cause of action . . . arises directly out of, or is related to, the defendant's forum-based contacts." *Id.* at 60-61. For both categories of personal jurisdiction, the defendant must have sufficient "minimum contacts" with the forum; those contacts must be purposeful; and the exercise of jurisdiction must be reasonable under the circumstances. *Id.* at 57. *Winne v. Nat'l Collegiate Student Loan Trust 2005-1*, 2017 U.S. Dist. LEXIS 3883, *9-10 (D. Me. Jan. 11, 2017).

    a.    **General Personal Jurisdiction**

Plaintiffs concede for purposes of responding to this Motion only that the exercise of general jurisdiction over First Marblehead in this case may not be appropriate.

### b. Specific Personal Jurisdiction

Specific jurisdiction allows a court to hear a particular case as long as "that case relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)).

To determine whether specific jurisdiction exists in a given case, the court first must determine whether the claim at issue in the litigation "directly relates to or arises out of the defendant's contacts with the forum" and "whether those contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws." *United States v. Swiss Am. Bank*, 274 F.3d 610, 620-21 (1st Cir. 2001) (quoting *Phillips Exeter*, 196 F.3d at 288). If these two requirements are met, the court must then determine whether the exercise of specific jurisdiction would be reasonable "in light of a variety of pertinent factors that touch upon the fundamental fairness of an exercise of jurisdiction." *Id.* at 621. *Winne v. Nat'l Collegiate Student Loan Trust 2005-1*, 2017 U.S. Dist. LEXIS 3883, *12 (D. Me. Jan. 11, 2017).

First Marblehead has substantial contacts with the State of Maine. Its name appears prominently on each of the NCSLT Prospectus Supplement indicating 13 of the Trusts contain almost 4000 loans that originated in Maine (See **Exhibits J – V**).

Moreover, First Marblehead as an unsecured creditor of TERI, and has been paid over six million dollars as a result of student loan debt collection by the Plan Trustee (**Exhibit A**) presumably including payments made by plaintiffs in this case. Also, First Marblehead's subsidiary, First Marblehead Education Resources, Inc., is registered to do business in Maine (**Exhibit H).**

The issue of specific personal jurisdiction turns on the debt collection activities First Marblehead through its agents undertook in Maine through US Bank, Abrahamsen, Turnstile and Transworld.  It's reasonable to infer First Marblehead engages in debt collection activities because the Consumer Financial protection Bureau is considering legal action in connection with that activity. (**Exhibit I**)

The relationship First Marblehead has with the other defendants lies at the heart of the matter.  Plaintiffs allege First Marblehead is an agent of the Trusts and/or Wilmington Trust (**SAC ¶ 20**) and that it (among others) knowingly employ people in Maine to collect debts in violation of federal and state law.  **SAC ¶19.**

In addition to its own purposeful availment of the laws and benefits of the State of Maine by virtue of First Marblehead packaging close to 4000 Maine student loans into its NCSLT trusts, another question for the Court is whether the collections efforts by the Trusts, US Bank, Abrahamsen, Transworld and Turnstile may be imputed to First Marblehead for jurisdictional purposes.  A defendant's contacts with a particular forum may be imputed to another defendant for purposes of establishing specific personal jurisdiction where a sufficient relationship exists between the two defendants.  *Winne v. Nat'l Collegiate Student Loan Trust 2005-1*, 2017 U.S. Dist. LEXIS 3883, *14 (D. Me. Jan. 11, 2017).

Reasonable inferences from the allegations in the Complaint taken in the light most favorable to plaintiffs, together with the additional evidence proffered herein are that (1) First Marblehead procured loans from Maine students guaranteed by TERI to form asset backed securities, and (2) First Marblehead and its subsidiaries administered the loans and managed a database that has been used simultaneously by defendants in this case to unlawfully collect loans

they do not own, and (3) First Marblehead received a portion of the money collected from plaintiffs through the TERI as an unsecured creditor at the same time it knew or should have known its agents were also collecting loans using the same database.

It is constitutionally permissible for the Court to exercise jurisdiction or at a minimum defer the issue until the time of trial when the facts are determined. *Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 363-364 (1st Cir. 2001).

The exercise of jurisdiction is reasonable under the "gestalt" factors because First Marblehead's burden of appearing is not significant and Maine has an interest in adjudicating this dispute, as it concerns collection efforts undertaken against Maine citizens on student loans made in Maine. Plaintiffs also have an interest in obtaining convenient and effective relief that would be served by hearing this case in Maine. Winne is a resident of Maine and is disabled, and litigating in a distant forum would likely pose a significant hardship; Coffey is a young working mother; and Hills is 83 years old and lives in Hancock County.

Efficiency considerations also militate in favor of hearing the case in Maine: First Marblehead is one of multiple defendants in this suit, and judicial economy would be served by adjudicating all of plaintiffs' claims, which arise out of the same debt collection efforts, in a single action. Furthermore, Maine's interest as a sovereign also counsel in favor of the constitutionality of the exercise of jurisdiction in this case. *Winne v. Nat'l Collegiate Student Loan Trust 2005-1*, 2017 U.S. Dist. LEXIS 3883, *19-20 (D. Me. Jan. 11, 2017).

2. **Article III Standing**

Under Rule 12(b)(1), the Court has flexibility as to when and how it determines whether it has jurisdiction, and the circumstances of this case warrant flexibility. It is premature to

dismiss First Marblehead. At a minimum the Court should obtain the written statement First Marblehead presented to the CFPB in response to the NORA (**Exhibit I).**

**3.      Failure to State a Claim**

First Marblehead also seeks dismissal based on its argument that plaintiffs failed to sufficiently allege that it is a "debt collector" under the federal Fair Debt Collection Practices Act the Maine Fair Debt Collection Practices Act, and the Maine Unfair Trade Practices Act, however the NORA it received from the Consumer Financial Protection Bureau (**Exhibit I)** taken together with plaintiffs' allegations of collusion and concerted action by defendants in this case suggest otherwise and the inference must be construed in the light most favorable to plaintiffs under Rule 12(b)(6). Plaintiffs allege First Marblehead qualifies as a "debt collector" by virtue of its agency relationship with the Trusts and other defendants.  *Oberther v. Midland Credit Mgmt.*, 45 F. Supp. 3d 125, 130-131, 2014 U.S. Dist. LEXIS 128626 (D. Mass. 2014).

WHEREFORE, plaintiffs respectfully request the First Marblehead's motion to dismiss be denied, and for such further relief as the Court deems necessary and just.

DATED at Portland, Maine this 14th day of June, 2017.

　　　　　　　　　　　　　　　　　　　　　　　　　　　  /s/ Cynthia A. Dill　　　　　　　
　　　　　　　　　　　　　　　　　　　　　　　Cynthia A. Dill
　　　　　　　　　　　　　　　　　　　　　　　Attorney for Plaintiffs
　　　　　　　　　　　　　　　　　　　　　　　Maine Bar No. 007055
　　　　　　　　　　　　　　　　　　　　　　　TROUBH HEISLER, PA
　　　　　　　　　　　　　　　　　　　　　　　511 Congress Street, 7th floor
　　　　　　　　　　　　　　　　　　　　　　　P.O. Box 9711
　　　　　　　　　　　　　　　　　　　　　　　Portland, ME 04104-5011
　　　　　　　　　　　　　　　　　　　　　　　Tel:  207-780-6789
　　　　　　　　　　　　　　　　　　　　　　　Email:  cdill@troubhheisler.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2017, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record. Parties may access this filing through the Court's system.

By:     /s/ Cynthia A. Dill
Cynthia A. Dill, Esq.
Attorney for Plaintiffs
