## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| JANE C. FORRESTER WINNE, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:16-cv-00229-JDL |
| NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-1, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT AND ON PLAINTIFFS' MOTION TO SUPPLEMENT

Jane Forrester Winne, Sarah Coffey, Vickie McMullen, and Karin Hills filed a Second Amended Complaint ("the Complaint") on behalf of a putative class against 24 named defendants, alleging claims arising out of attempts to collect on student loan debts. *See* ECF No. 112. Fifteen Defendants, including 13 of the 17 National Collegiate Student Loan Trusts,[1] Wilmington Trust Company, and The First Marblehead Corporation, now known as Cognition Financial Corporation,[2] have moved to dismiss the claims against them. ECF No. 154; ECF No. 155; ECF No. 167.

---

[1] National Collegiate Student Loan Trusts 2001-CP1, 2002-CP1, 2003-1, 2004-1, 2004-2, 2005-2, 2006-1, 2006-2, 2006-4, 2007-2, 2007-3, 2007-4, and National Collegiate Master Student Loan Trust brought a joint motion to dismiss. ECF No. 154 at 1 n.1. National Collegiate Student Loan Trusts 2005-1, 2005-3, 2006-3, and 2007-1 did not join the motion to dismiss, and have filed answers to the Second Amended Complaint. *See* ECF No. 125; ECF No. 156. For the sake of clarity, this opinion will refer to the 13 National Collegiate Student Loan Trusts involved in the instant motion as "the Trusts."

[2] The Defendant identified in the Second Amended Complaint as "First Marblehead Corporation" changed its name to Cognition Financial Corporation in May 2017. ECF No. 166 at 2. Taking its lead from the briefs, however, this order will refer to this party as "First Marblehead Corporation."

Plaintiffs have moved to supplement the record before the Court related to the motions to dismiss with the deposition of Bradley Luke, an employee of Defendant Transworld Systems, Inc., that was taken in a separate collection action filed against two of the named Plaintiffs.  ECF No. 206.

## I.  BACKGROUND

The Plaintiffs allege that they, along with other Maine residents, have been the subject of unlawful and fraudulent student debt collection activities.  They allege that a large number of student loans purportedly owned by a series of National Collegiate Student Loan Trusts are not collectible because the Trusts do not have a lawful basis to collect on the loans, and that the collection efforts undertaken by the Defendants violate state and federal law.  Each of the named Plaintiffs borrowed money to finance her education or the education of a family member.  The student loan debt was then sold by the original lender, and eventually acquired by one of the National Collegiate Student Loan Trusts.  Each of the named Plaintiffs asserts that, beginning in 2014, she was contacted by an entity acting on behalf of a National Collegiate Student Loan Trust, seeking to collect on a debt.  The Plaintiffs allege that these collection efforts violate the federal Fair Debt Collection Practices Act, 15 U.S.C.A. §§ 1692–1692p (2017), ("FDCPA") the Maine Fair Debt Collection Practices Act, 32 M.R.S.A. §§ 11001–11054 (2017), ("MFDCPA") and the Maine Unfair Trade Practices Act, 5 M.R.S.A. §§ 205-A–214 (2017), ("UPTA") as well as constituting fraud and breach of contract.

The Trusts move to dismiss the claims against them for lack of standing and failure to state a claim.  Wilmington moves to dismiss the claims against it for lack

of personal jurisdiction and failure to state a claim. First Marblehead moves to dismiss the claims against it for lack of standing, lack of personal jurisdiction, and failure to state a claim. I address each motion in turn.[3]

## II.  DISCUSSION

### A.  Legal Standards

#### 1.  Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks and alterations omitted). The court should accept all well-pleaded facts as true, while ignoring conclusory legal allegations. *Id.* All reasonable inferences should be drawn in favor of the non-moving party. *Id.* at 16. The complaint must contain facts that support a reasonable inference "that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Determining the plausibility of a claim is a context-specific task that requires the court "to draw on its judicial experience and common sense." *Saldivar*, 818 F.3d at 18 (quoting *Iqbal*, 556 U.S. at 679) (quotation marks omitted). The burden of demonstrating that the complaint does not state a claim for which relief can be granted is on the Defendants. *See* 5B Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 1357 (3d ed. 2017 Update).

---

[3]  This is the second order issued on motions to dismiss in this case. The first order granted the motions to dismiss filed by Defendants Citizens Bank, N.A., and PNC Bank, N.A., and denied the motion to dismiss filed by Defendant U.S. Bank National Association. *See* ECF No. 109.

Allegations of fraud are subject to the higher pleading standard of Federal Rule of Civil Procedure Rule 9(b). *See* Fed. R. Civ. P. 9(b). The complaint must "be specific about the 'time, place, and content of an alleged false representation[.]'" *Murtagh v. St. Mary's Reg'l Health Ctr.*, No. 1:12-cv-00160, 2013 WL 5348607, at *6 (D. Me. Sep. 23, 2013) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985)). Mere conclusory allegations will not satisfy the particularity requirement. *See Hayduk*, 775 F.2d at 444. Rule 9(b) also requires that plaintiffs identify a basis for inferring scienter on the part of the defendant. *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009).

### 2. Motion to Dismiss for Lack of Personal Jurisdiction

A plaintiff has the burden of establishing the court's personal jurisdiction over a defendant. *Boit v. Gar-Tec Prods., Inc.,* 967 F.2d 671, 674-75 (1st Cir. 1992). When a defendant files a motion to dismiss for want of personal jurisdiction pursuant to Rule 12(b)(2), "a district court may choose from among several methods for determining whether the plaintiff has met its burden." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.,* 825 F.3d 28, 34 (1st Cir. 2016) (quoting *Adelson v. Hananel,* 510 F.3d 43, 48 (1st Cir. 2007)) (internal quotation marks omitted). The "most conventional" of these methods is the prima facie method, which "permits the district court to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Foster-Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 145 (1st Cir. 1995) (quoting *Boit,* 967 F.2d at 675) (internal quotation marks omitted).

To satisfy the prima facie standard, the plaintiff must show that the requirements of both the forum's long arm statute and the due process clause of the Constitution are satisfied. *Boit*, 967 F.2d at 675. The Maine long-arm statute extends "to the fullest extent permitted by the due process clause" and therefore the constitutional inquiry controls. *Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir. 2005) (quoting 14 M.R.S.A. § 704-A(1)).

Since the Supreme Court's opinion in *Int'l Shoe Co. v. State of Washington,* 326 U.S. 310 (1945), courts have divided the personal jurisdiction analysis into two parts: "general" and "specific" personal jurisdiction. *Donatelli v. Nat'l Hockey League,* 893 F.2d 459, 462-63 (1st Cir. 1990). General jurisdiction exists when the defendant has engaged in "continuous and systematic activity" in the forum. *Harlow*, 432 F.3d at 64. Specific jurisdiction exists when "the cause of action . . . arises directly out of, or is related to, the defendant's forum-based contacts." *Id.* at 60-61. For both categories of personal jurisdiction, the defendant must have sufficient "minimum contacts" with the forum; those contacts must be purposeful; and the exercise of jurisdiction must be reasonable under the circumstances. *Id.* at 57.

### 3. Motion to Dismiss for Lack of Standing

Article III of the Constitution limits the judicial power to actual cases and controversies. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Kerin v. Titeflex Corp.*, 770 F.3d 978, 981 (1st Cir. 2014) (quotation omitted). A plaintiff must plead three elements to satisfy the standing requirement: injury in fact, traceability, and redressability. *Id.* (citing *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560-61 (1992)).  "Prudential considerations . . . demand that there be 'concrete adverseness which sharpens the presentation of issues.'" *United States v. Windsor*, 133 S. Ct. 2675, 2680 (2013) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).  Therefore, courts are limited to deciding cases where the party seeking review demonstrates "a personal stake in the outcome of the controversy." *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 102 (1st Cir. 2014) (quoting *Baker*, 369 U.S. at 204).

**B.    Motion to Supplement the Record**

The Trusts, Wilmington, and First Marblehead oppose Plaintiffs' motion to supplement.  Wilmington and First Marblehead argue that consideration of the deposition testimony would violate the principles underlying Federal Rule of Civil Procedure 32 because they were not given notice of the deposition and did not have the opportunity to be represented by counsel at its taking.  Rule 32 states that a deposition may be used against a party at a hearing or trial if "the party was present or represented at the taking of the deposition or had reasonable notice of it."  Fed. R. Civ. P. 32(a)(1)(A).  By its terms, however, Rule 32 applies to the use of deposition testimony at a hearing or trial, and therefore does not bar consideration of the transcript in ruling on the instant motions.  Accordingly, the Plaintiffs' motion to supplement is granted.

**C.    The Trusts' Motion**

The Trusts argue that the claims against them should be dismissed because the Plaintiffs lack standing and because the Complaint fails to state a claim.

### 1. Standing

The Trusts assert that at least one named plaintiff in a putative class action must have standing against each individual defendant, and that Plaintiffs have admitted that they do not have standing to sue because they acknowledge that they do not have individual claims against the 13 Trusts that brought the joint motion to dismiss.

As a general rule in the First Circuit, named plaintiffs in a class action do not have standing to assert claims against defendants who are not directly implicated in the alleged harms suffered by those named plaintiffs. *See Barry v. St. Paul Fire & Marine Ins. Co.*, 555 F.2d 3, 13 (1st Cir. 1977). Plaintiffs suggest that this case fits within an exception to the general rule that was referenced in *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 770 (1st Cir. 2011). *Plumbers' Union* stated that the general rule from *Barry* may be subject to a "qualification," on which it reserved judgment. *Id.* at 770. The court suggested that

> where the claims of the named plaintiffs necessarily give them—not just their lawyers—essentially the same incentive to litigate the counterpart claims of the class members because the establishment of the named plaintiffs' claims necessarily establishes those of the other class members. . . . the substance of the Article III concern may vanish even if in form it might seem to persist.

*Id.* The court noted that "[t]he matter is one of identity of issues not in the abstract but at a ground floor level." *Id.*

*Plumbers' Union* involved claims made by a putative class against eight trusts, among other defendants. 632 F.3d at 765-66. The named plaintiffs had bought mortgage-backed securities from two of the eight trusts, and brought claims alleging

that the trusts had made misleading statements about the securities in their registration statements. *Id.* at 766. The court held that the plaintiffs did not have standing to pursue claims against the six trusts from which they had not bought securities, despite the fact that members of the putative class had presumably bought securities from those six trusts, and the securities from those trusts were covered by the same registration statements that covered the securities from the two trusts in which the named plaintiffs had invested. *Id.* at 766, 771. The court held that "the necessary identity of issues and alignment of incentives" was not present because each trust was made up of assets from a different mix of banks, and "no named plaintiff has a significant interest in establishing wrongdoing by the particular group of banks that financed a trust from which the named plaintiffs made no purchases." *Id.* at 771.

In describing the "qualification" to the general rule in *Plumbers' Union*, the court suggested that a case with the requisite ground-floor-level identity of issues "might include the kind of claims that were present in *Payton* [*v. Cty. of Kane*, 308 F.3d 673 (7th Cir. 2002)]." *Id.* at 770. In *Payton*, the named plaintiffs sued 19 counties on behalf of a putative class of arrestees released on bail, and challenged a bail fee imposed by the counties pursuant to Illinois law. 308 F.3d at 675. The named plaintiffs only had claims against two of the 19 counties, but the court suggested that they may have standing to sue the other 17 counties because the "representatives were personally injured by the operation of the very same statute that caused the injuries to all other members of the proposed class." *Id.* at 682. The court noted that as long as some member of the putative class was injured by each named defendant,

the named plaintiffs would have standing to sue, because the "the constitutionality of a bond fee . . . should not differ from one county to the next, when such a fee is imposed pursuant to the same statute." *Id.* at 680.

Plaintiffs assert that this case involves an identity of issues at a ground-floor level because if they establish that the National Collegiate Student Loan Trusts, who purportedly owned the named Plaintiffs' loans, did not in fact have title to the loans when they attempted to collect the debt, it will necessarily establish that the other 13 Trusts also did not have title to defaulted student loans that they attempted to collect from other members of the putative class.  Plaintiffs assert that none of the Trusts have title to the defaulted student loans because the loans were all purchased by The Education Resources Institute ("TERI") pursuant to its approved bankruptcy plan.

It is not clear from the Complaint, however, that such an identity of issues necessarily exists in this case.  As an initial matter, the question of whether the Trusts have title to the loans is only one among several issues that the Court would need to address in deciding whether the Trusts are liable.  The Complaint alleges: that the "Debt Collector Defendants" engaged in harassing and abusive collection practices; that they made false representations concerning the actions they would take in the event of non-payment; that they failed to disclose that they were attempting to collect a debt; that they made false representations about conduct committed by the Plaintiffs; that they used false documentation representing that they are an agency of the United States; that they made false reports to credit reporting agencies; and that they made false representations regarding the interest

rates on the loans, among many other allegations.  Although these allegations are fact-dependent, the Complaint contains no facts to support these conclusions as against the 13 Trusts.  To find an identity of issues between the claims against the four Trusts who have answered the Complaint and the 13 Trusts who have no direct relationship with the named Plaintiffs, the Court would have to find that the collection efforts undertaken by all of the Trusts were substantially similar.  However, there is a complete absence of information in the Complaint from which to infer that any collection efforts performed by the 13 Trusts were substantially similar to the collection efforts by the four Trusts which are described in the Complaint.

The Complaint further alleges that all 17 National Collegiate Student Loan Trusts are made up of private student loans, and that all 17 Trusts are represented by US Bank, as Special Servicer, and Wilmington, as Owner Trustee.  It also alleges that the 17 Trusts have collectively filed over 370 student loan collection cases in Maine since 2011.  It further alleges that all of the loans contained in the 17 Trusts were guaranteed by TERI, and that after TERI filed for bankruptcy in 2008, TERI purchased defaulted loans from the Trusts pursuant to its bankruptcy plan.  Plaintiffs assert that all of the loans that are the subject of this lawsuit were acquired in this way by TERI, and that the Trusts therefore do not have title to the loans.

The Complaint also asserts, however, that the 17 Trusts were all created separately, and do not share common beneficial ownership.[4]  Moreover, the

---

[4] As discussed below, Wilmington's role as "Owner Trustee" does not denote actual ownership of the Trusts.

10

Complaint's factual averments refer generally and collectively to all 17 Trusts, contrary to my order granting the Plaintiffs leave to file a Second Amended Complaint.[5]  *See* ECF No. 110 at 18-19.  There are no specific allegations that each of the 13 Trusts who seek dismissal has attempted to collect on a defaulted student loan that was purchased by TERI as part of its bankruptcy plan.  The Plaintiffs allege that each Trust has filed a collection case in Maine, and that each Trust owns at least some of the loans that were purchased by TERI, but these allegations fall short of demonstrating that each of the 13 Trusts has engaged in behavior that is identical to the behavior of the four Trusts that allegedly harmed the named Plaintiffs.

This case is dissimilar to *Payton*, where each county's bail fee was imposed pursuant to the identical state statute.  *See* 308 F.3d at 680.  Especially in light of the fact-dependent nature of the claims in the Complaint, Plaintiffs have not demonstrated that there is a single policy or methodology that was necessarily employed by each Trust in its collection efforts, such that if the named Plaintiffs are successful on their claims against the four Trusts with whom they have a relationship, they would necessarily establish liability on the part of the other 13 Trusts.  This case is more similar to *Plumbers' Union*, in which the First Circuit found no standing.  The Trusts share a common Owner Trustee and Special Servicer, similar to the common depositor for the eight *Plumbers' Union* trusts, but are distinct entities made up of different assets that did not necessarily act in a manner identical to that of the other four Trusts.  *See* 632 F.3d at 771.  Plaintiffs therefore have not

---

[5]  The order directed the Plaintiffs "not to refer generally to the defendants in the allegations made in the Second Amended Complaint, but to instead identify in each averment the name or names of the specific defendant or defendants the averment relates to."  ECF No. 110 at 19.

established that this case fits within the qualification contemplated by *Plumbers' Union*, and have not demonstrated that they have standing to sue the 13 Trusts who seek dismissal of the Complaint.

### 2. Failure to State a Claim

The Trusts further argue that the Complaint fails to state a claim against them because it does not allege any specific actions by the Trusts. The Plaintiffs respond that this argument "ignores the collective nature of the case," presumably asking the Court to infer that these 13 Trusts engaged in the same wrongdoing that is specifically alleged on the part of the other four Trusts. *See* ECF No. 164 at 5. Plaintiffs also assert for the first time in their sur-reply that each Trust named as a Defendant in this case has filed a collection action in a Maine state court since 2011.

Factual allegations made for the first time in a responsive memorandum are not properly considered in evaluating the sufficiency of a complaint under Rule 12(b)(6). *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *see also Ortiz v. Jimenez-Sanchez*, 98 F. Supp. 3d 357, 365 n.5 (D.P.R. 2015) ("But the plaintiffs cannot, of course, add allegations or claims by furnishing them for the first time in an opposition to a motion to dismiss."). Even if I were to consider the allegation that each of the Trusts has filed a collection action in state court, however, this additional allegation would not be sufficient to state a plausible claim for relief under the causes of action alleged in the Complaint. The Complaint does not contain any allegations specific to the 13 Trusts of unlawful or abusive collection activities under the FDCPA or MFDCPA, of unfair or deceptive

practices under the UTPA, of false representations constituting fraud, or of the breach of any contract.  It therefore fails to state a plausible claim for relief against the 13 Trusts.

## D.   Wilmington's Motion

Wilmington moves to dismiss the Complaint against it for lack of personal jurisdiction and for failure to state a claim.

### 1.  Personal Jurisdiction

Plaintiffs concede that the exercise of general personal jurisdiction over Wilmington is not appropriate.  Plaintiffs argue that the Court may exercise specific personal jurisdiction over Wilmington based on Wilmington's relationship with other Defendants in the case who are alleged to have conducted debt collection activities in Maine.

A defendant's contacts with a particular forum may be imputed to another defendant for purposes of establishing specific personal jurisdiction where a sufficient relationship exists between the two defendants.  In *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 55 (1st Cir. 2002), the First Circuit recognized that "[w]hether or not an agent is initially authorized to act on behalf of a principal, the agent's actions may be attributed to the principal, for purposes of jurisdiction, if the principal later ratifies the agent's conduct."  *See also Jet Wine & Spirits, Inc. v. Bacardi & Co.*, 298 F.3d 1, 10 (1st Cir. 2002) (attributing contacts of subsidiary to parent corporation where plaintiff supported allegation of agency relationship with disputed record evidence); *Ameral v. Intrepid Travel Party, Ltd.*, 128 F. Supp. 3d 382, 388 (D. Mass. 2015) (attributing contacts in light of apparent

agency relationship); *New England College v. Drew University*, No. 08-cv-00424, 2009 WL 3525596, at *4 (D.N.H. Oct. 23, 2009) (attributing contacts in light of evidence that one defendant "authorized or at least ratified" second defendant's actions). The relationship at issue need not fit precisely within the confines of a specific agency doctrine; the inquiry instead focuses on whether there is a sufficient relationship to permit the exercise of jurisdiction under the due process clause, "not whether a partnership, joint venture, or other particular agency relationship between the two defendants exists." *Daynard*, 290 F.3d at 56-57.

Plaintiffs assert that Wilmington contracted with Defendants U.S. Bank National Association, Abrahamsen Ratchford, P.C., Turnstile Capital Management, and Transworld Systems, Inc. to collect student debts in Maine. They assert that Wilmington acts on behalf of the National Collegiate Student Loan Trusts in its capacity as "Owner Trustee" of the Trusts. They allege that US Bank is Wilmington's agent, and argue that it is reasonable to infer that the Trusts' collection efforts against the named Plaintiffs were "directed and executed" by Wilmington. ECF No. 165 at 6. Plaintiffs seek to impute the other Defendants' contacts with the state of Maine to Wilmington in order to justify the exercise of personal jurisdiction in this case.

In response, Wilmington asserts that its role as "Owner Trustee" of the National Collegiate Student Loan Trusts is a limited and ministerial one, and that it does not exercise the degree of control over US Bank or any other Defendant necessary to justify the imputation of jurisdictional contacts. Wilmington submitted copies of the Trust Agreement, Administration Agreement, and Special Servicing

Agreement, which govern its relationship with the National Collegiate Student Loan Trusts and the other Defendants, with its motion to dismiss.  Wilmington contends that these documents establish the limited role it plays as Owner Trustee of the Trusts.

The Trust Agreement governs the relationship between Wilmington, as Owner Trustee, and the National Collegiate Student Loan Trusts.  Article VIII of that agreement defines the "Authority and Duties of the Owner Trustee."  These duties include executing and delivering documents on behalf of the Trusts and signing tax returns and other filings.  The Trust Agreement provides that "[t]he Owner Trustee shall not have any duty or obligation to manage, make any payment in respect of, register, record, sell, dispose of or otherwise deal with the Trust Property."  ECF No. 157-1 at 21, § 8.07.  It further provides that any duties and responsibilities of the Owner Trustee shall be deemed discharged to the extent that the Trusts' Administrator has agreed to perform those duties in an Administration Agreement.

The relationship among the National Collegiate Student Loan Trusts, Wilmington, and the Trusts' Administrator, First Marblehead Data Services is governed by an Administrative Agreement.  The Administration Agreement defines the duties of First Marblehead Data Services in its role as Administrator for the Trusts, which include retaining and employing agents to collect on defaulted student loans.  But while the Administration Agreement provides that the Administrator shall perform certain duties—including filing tax returns and reports—at the request of, and in accordance with the directions of, the Owner Trustee, among other parties, it does not provide any oversight authority to the Owner Trustee with respect to the

15

collection of defaulted loans.  *See* ECF No. 157-2 at §§ 1(c)(i), 1(c)(iv).  Furthermore, the Administration Agreement specifically provides that the Administrator "shall not be subject to the supervision of the Issuer or the Owner Trustee with respect to the manner in which it accomplishes the performance of its obligations hereunder."  *Id.* at § 5.

The Special Servicing Agreement was signed by Wilmington in its capacity as Owner Trustee on behalf of the National Collegiate Student Loan Trusts, but Wilmington is not a party to the Special Servicing Agreement, and that Agreement does not define any rights, duties, or responsibilities of Wilmington.

The various agreements governing Wilmington's relationship with the National Collegiate Student Loan Trusts and the other Defendants demonstrate that Wilmington does not exercise the type of control over the actions of the other Defendants that would justify the imputation of their contacts with Maine to Wilmington for jurisdictional purposes.  The documents support Wilmington's assertion that its role as Owner Trustee is a limited and ministerial one.  There is not enough information in the Complaint and the relevant documents to plausibly infer that Wilmington has an agency-like relationship with any of the Defendants that allegedly participated in the debt collection efforts against the named Plaintiffs in this case.  The most substantial relationship Wilmington has with another entity acting on behalf of the Trusts is with First Marblehead Data Services, the Administrator.  This relationship, as defined by the Administration Agreement, does not involve a sufficient level of control by Wilmington of First Marblehead Data Services' actions to justify the imputation of jurisdictional contacts.  But even if it did,

First Marblehead Data Services is not a Defendant in this case and is not alleged to have participated in the collection efforts against the named Plaintiffs.

Plaintiffs have therefore failed to show that a sufficient, agency-like relationship exists between Wilmington and the other Defendants to justify the imputation of jurisdictional contacts. The exercise of specific personal jurisdiction over Wilmington is therefore not appropriate.

### 2. Failure to State a Claim

Wilmington also argues that the Complaint fails to state a plausible claim against it because it cannot be personally liable for its actions as Owner Trustee, and the Complaint does not contain factual allegations sufficient to support the conclusory allegation that it qualifies as a debt collector under the FDCPA and MFDCPA. Plaintiffs respond that Wilmington is vicariously liable for the actions of the other Defendants by virtue of its asserted agency relationship with the National Collegiate Student Loan Trusts and US Bank.

Although a defendant may sometimes be held vicariously liable for the actions of its agents, *see Oberther v. Midland Credit Mgmt.*, 45 F. Supp. 3d 125, 130-31 (D. Mass 2014), the Plaintiffs have failed to demonstrate that an agency-like relationship exists between Wilmington and the other Defendants in this case, as discussed above. The Complaint therefore fails to state a plausible claim against Wilmington.

### E. First Marblehead's Motion

First Marblehead argues that the Court lacks personal jurisdiction over it, that the Plaintiffs do not have standing to bring claims against it, and that the Complaint fails to state a claim against it.

17

### 1.  Personal Jurisdiction

Plaintiffs concede that the exercise of general personal jurisdiction is not appropriate.  They argue that the Court can exercise specific personal jurisdiction over First Marblehead on the basis of contacts of other Defendants in this case, imputed to First Marblehead based on the relationship among the Defendants.  Plaintiffs allege that First Marblehead is an agent of the Trusts, and that it employs people in Maine to collect debts.

The Complaint also alleges, however, that First Marblehead resigned as Special Servicer to the Trusts in 2012.  Documents submitted by First Marblehead make clear that it was in fact its subsidiary—First Marblehead Education Resources—that acted as Special Servicer to the Trusts before 2012.  *See* ECF No. 167-1 at 5.  A different subsidiary of First Marblehead—First Marblehead Data Services—acted as the administrator of the Trusts before being sold by First Marblehead in 2012.  *Id.* at 3-4.  Any relationship that would support the imputation of jurisdictional contacts therefore existed between First Marblehead's subsidiaries and the other Defendants, not between First Marblehead and the other Defendants.  Jurisdiction over a subsidiary is not a valid basis to exercise jurisdiction over the parent corporation absent a showing of "control by the parent greater than that normally associated with common ownership and directorship."  *Donatelli*, 893 F.2d at 466 (quotation omitted).  Plaintiffs have not made any allegations or offered any evidence to demonstrate such control.

In any event, First Marblehead's subsidiaries ceased having any relationship with the other Defendants in this case in 2012, which is approximately two years

before the collection efforts alleged in the Complaint are said to have begun. *See* ECF No. 112 at ¶¶ 55, 121, 177. At the time that the jurisdictional contacts that Plaintiffs wish to impute to First Marblehead occurred, there was no relationship between First Marblehead's subsidiaries and the other Defendants.

Plaintiffs argue that First Marblehead's maintenance of rights to a database that has allegedly been used by other Defendants to conduct debt collection activities supports the exercise of jurisdiction. The deposition transcript submitted by Plaintiffs with their motion to supplement, discussed above, mentions electronic records affiliated with First Marblehead that are used by Transworld Systems, Inc., in connection with its debt collection efforts. But the Complaint, which asserts that First Marblehead "maintained rights to a data base containing material information about the Plaintiffs and all other student borrowers," ECF No. 112 at ¶ 37, does not allege that First Marblehead was responsible for creating or compiling the information allegedly used by other Defendants to collect debts. And even if it did, that would not be enough to establish jurisdiction. In *Shirokov v. Dunlap, Grubb, and Weaver, PLLC*, No. 10-12043, 2012 WL 1065578, at *12 (D. Mass. Mar. 27, 2012), the plaintiff alleged that as part of a copyright scheme, one defendant tracked and compiled information about purported copyright infringers that it then provided to other defendants for use in filing fraudulent lawsuits. The court held that, even if true, these allegations were not sufficient to justify the exercise of personal jurisdiction over the defendant, because they did not satisfy the relatedness or purposeful availment requirements of the specific jurisdiction test. *Id.* at *15. The

allegation that First Marblehead maintained rights to a database that was used by other entities to collect debts in Maine likewise fails to establish personal jurisdiction.

Plaintiffs also allege that First Marblehead procured loans made to Maine students and securitized them, and that it receives payments as an unsecured creditor of The Education Resource Institute's bankruptcy proceedings.  Neither of those alleged actions gives rise to the Plaintiffs' claims in this case, which are focused on allegedly unlawful attempts to collect debt, and therefore neither is a basis for exercising personal jurisdiction over First Marblehead.  *See Harlow*, 432 F.3d at 60-61 ("The evidence produced to support specific jurisdiction must show that the cause of action either arises directly out of, or is related to, the defendant's forum-based contacts.").

Plaintiffs have failed to establish that the exercise of personal jurisdiction over First Marblehead would be reasonable.

### 2.  Standing

First Marblehead also argues that the Plaintiffs lack standing to bring claims against it because they have not alleged that they were harmed in any way by First Marblehead.  In order to establish standing, a plaintiff must "show a sufficiently direct causal connection between the challenged action and the identified harm." *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012).  To the extent that the Complaint mentions First Marblehead, it appears to refer to actions taken by First Marblehead's subsidiaries, in their former roles as Special Servicer and Administrator for the Trusts.  In any event, as mentioned above, First Marblehead's subsidiaries terminated their relationship with the Trusts in 2012, approximately

two years before the harms alleged in the Complaint.  Further, as discussed above, First Marblehead's involvement in the securitization of the Plaintiffs' loans and its maintenance of rights to a database are not directly related to the harms alleged. Plaintiffs have therefore not shown a direct causal connection between First Marblehead's actions and the alleged harms identified in the Complaint, as required to demonstrate standing.

Plaintiffs do not respond to First Marblehead's standing argument in their responsive briefing.  They instead suggest that the Court defer ruling on the standing issue, claiming that Rule 12(b)(1) provides for "flexibility as to when and how [the Court] determines whether it has jurisdiction."  ECF No. 202 at 16.  While the First Circuit has recognized that courts have broad authority to order discovery and conduct evidentiary hearings in order to determine their own jurisdiction when dealing with factual challenges to subject-matter jurisdiction, *see Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363-64 (1st Cir. 2001), it has also admonished that "[a] federal court must satisfy itself as to its jurisdiction, including a plaintiff's Article III standing to sue, before addressing his particular claims," *Pagán v. Calderón*, 448 F.3d 16, 26 (1st Cir. 2006).  First Marblehead does not bring a factual challenge to Plaintiffs' standing; it instead argues that even accepting all of the allegations in the Complaint as true, Plaintiffs have not demonstrated that they have standing to bring claims against it.  There is therefore no need to defer ruling on the standing question pending additional fact-finding, as allowed under *Valentin*.

Plaintiffs have not shown that they have standing to bring claims against First Marblehead.

21

### 3.  Failure to State a Claim

First Marblehead also asserts that the Complaint fails to state a claim against it, under the standard of Rule 12(b)(6).  It argues that the proposed claims under the FDCPA and MFDCPA are barred by the one-year statute of limitations, that Plaintiffs do not sufficiently allege that First Marblehead qualifies as a "debt collector" under those statutes, and that Plaintiffs have failed to allege any unfair or deceptive practice that would give rise to a claim under the Unfair Trade Practices Act.

The Plaintiffs do not directly respond to the arguments about the statute of limitations and the Unfair Trade Practices Act.  They argue instead that First Marblehead's alleged relationship with the other Defendants in this case provides a basis for concluding that First Marblehead is a "debt collector" under the FDCPA and MFDCPA.  As discussed above with respect to the jurisdictional question, however, Plaintiffs have failed to establish that a sufficient relationship existed between the parties at the time of the alleged harm in order to hold First Marblehead liable for the actions of any other Defendants.   The Complaint's allegation that First Marblehead is an agent of the Trusts, ECF No. 112 at ¶ 20, is the sort of conclusory legal allegation that the Court should not accept as true.  *See Saldivar*, 818 F.3d at 18.  The allegation that "First Marblehead is a 'debt collector' as defined in 15 U.S.C. § 1692a(6) and 32 M.R.S.A. § 11002(6)," ECF No. 112 at ¶ 38, likewise states a bare legal conclusion, and need not be credited by the Court.  *See Saldivar*, 818 F.3d at 18. The Complaint does allege that First Marblehead's subsidiaries acted as Special Servicer and Administrator for the Trusts prior to 2012, but that allegation does not

support a reasonable inference that a relationship existed between First Marblehead and the other Defendants sufficient to hold First Marblehead liable for the wrongdoing alleged in the Complaint, which took place in 2014 and later. Plaintiffs have therefore failed to state a claim against First Marblehead.

## III.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Supplement (ECF No. 206) is **GRANTED**. The Motion to Dismiss filed by the 13 National Collegiate Student Loan Trusts (ECF No. 154) is **GRANTED**. The Motion to Dismiss filed by Wilmington Trust Company (ECF No. 155) is **GRANTED**. The Motion to Dismiss filed by The First Marblehead Corporation, now known as Cognition Financial Corporation, (ECF No. 167) is **GRANTED**.

**SO ORDERED.**

**Dated this 17th day of August 2017**

      **/s/ JON D. LEVY**
      **U.S. DISTRICT JUDGE**
