## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| **JANE C. FORRESTER WINNE; SARAH N. COFFEY; VICKIE L. MCMULLEN; KARIN A. HILLS; on behalf of herself and all others similarly situated,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Civil Action Docket No: 1:16-cv-00229-JDL** |
| **NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-1; et al.,** | ) ) ) | |
| **Defendants.** | ) | |

## MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ...................................................................................................1

II. PROCEDURAL HISTORY......................................................................................2

III. FACTS…… .............................................................................................................3

IV. LAW AND ARGUMENT ........................................................................................3

    A. Plaintiffs' Loans Were NOT Sold To TERI................................................4

    B.  The FDCPA ...............................................................................................5

        1.  The Trusts Are Not "Debt Collectors" As Defined By The FDCPA................6

        2.  Turnstile Never Attempted To Collect Any Debt..............................................7

        3.  TSI Did Not Violate The FDCPA................................................................8

    C.  Plaintiffs' MFDCPA Claims Are Derivative Of Their FDCPA Claims And Should Be Dismissed...........................................................................................10

    D. Plaintiffs' Unfair Trade Practices Act Claim Should Be Dismissed ...........................10

    E. Plaintiffs' Fraud Claims Should Be Dismissed ...........................................................12

    F. Plaintiffs' Claim For Breach Of Contract Should Be Dismissed................................14

V. CONCLUSION ...................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

32 M.R.S.A. § 11002(6) ...................................................................................................9

*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) ...................................................3

*Beaulieu v. Bank of Am., N.A.*, 2014 WL 4843809, *11 (D. Me. 2014).......................10

*Carlvin v. Ditech Fin. LLC*, 237 F. Supp. 3d 753, 760 (N.D. Ill. 2017) .......................8

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) .....................................................4

*Fogg v. Ocwen Loan Servicing, LLC*, 2015 WL 1565229 (D. Me. Apr. 8, 2015) .......11

*Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1, 14 (D. Mass. 2004).........................................6

*Hamilton v. Fed. Home Loan Mortg. Corp.*, 2014 WL 7508808, *7 (D. Me. July 30, 2014) ......11

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 613 F. Supp. 2d 108, 132 n.130
   (D. Me. 2009)..............................................................................................................11

*James v. GMAC Mortg. LLC*, 772 F. Supp. 2d 307, 322 (D. Me. 2011) ......................10

*Karle v. Sw. Credit Sys.*, 2015 WL 5025449, *5 (D. Mass. 2015) ................................7

*Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990).................................................5

*Kowalski v. Seterus, Inc.*, 2017 WL 79949, *18 (D. Me. Jan. 9, 2017).......................11

*Letellier v. Small*, 400 A.2d 371, 376 (Me. 1979) ......................................................12

*McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995).......................4

*Napolitano v. Green Tree Servicing, LLC*, 2016 WL 447451, *8 (D. Me. 2016)...................6, 11

*Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir. 2000) ......................................4

*Patterson v. Alltel Info. Servs., Inc.*, 919 F. Supp. 500, 501-02 (D. Me. 1996) ............3

*Poulin v. The Thomas Agency*, 760 F. Supp. 2d 151, 158 (D. Me. 2011)................8, 10

*Shapiro v. Haenn*, 222 F. Supp. 2d 29, 44 (D. Me. 2002) ..........................................10

*St. Francis De Sales Fed. Credit Union v. Sun Ins. Co. of New York*, 818 A.2d 995, 1003 (Me. 2002)........................................................................................................................12

*State v. Weinschenk*, 868 A.2d 200, 206 (Me. 2005)..................................................10

*Tobin v. Barter*, 89 A.3d 1088, 1091-92 (Me. 2014).................................................14

*Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) .................4

*Tungate v. MacLean-Stevens Studios, Inc.*, 714 A.2d 792, 797 (Me. 1998)...............10

*Wyman v. Prime Disc. Sec.*, 819 F. Supp. 79, 85 (D. Me. 1993)................................12

*Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied,* 507 U.S. 1030 (1993) ........................................................................................................3

## **Statutes**

15 U.S.C. § 1692 ...........................................................................................................2

15 U.S.C. § 1692(e) .......................................................................................................5

15 U.S.C. § 1692a(6)......................................................................................................7

15 U.S.C. § 1692a(6)(F)(iii) ..........................................................................................6

15 U.S.C. § 1692k(d) .....................................................................................................8

15 U.S.C. § 6803............................................................................................................7

32 M.R.S.A. § 11001 .....................................................................................................3

5 M.R.S.A. § 207 .......................................................................................................3, 10

M.R.S.A. § 11003(7)(C)...............................................................................................10

NOW COMES, defendants, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-3, National Collegiate Student Loan Trust 2007-1 (collectively, the "Trusts"), Transworld Systems, Inc. ("TSI"), and Turnstile Capital Management, LLC ("Turnstile") (the Trusts, TSI, and Turnstile collectively, the "Defendants"), by and through undersigned counsel, who file the instant motion for summary judgment pursuant to Fed. R.. Civ. P. 56 and L.R. 56, to dismiss the claims asserted by the plaintiffs, Jane Forrester-Winne ("Winne")[1], Sarah Coffey f/k/a Sarah Thurlow ("Thurlow"), Vicki McMullen ("McMullen"), and Karin Hills ("Hills").  In support of the motion, Defendants contemporaneously file this incorporated memorandum, Statement of Material Facts, affidavits, documents, and deposition testimony.  As explained below, there are no genuine issues of material fact and plaintiffs' claims fail as a matter of law.

## I. INTRODUCTION

Plaintiffs' lawsuit is premised upon the allegation that the trusts are filing lawsuits on loans they do not own.  At a recent hearing, opposing counsel acknowledged "the plaintiffs' theory of the case is that TERI [The Education Resources Institute, Inc.] purchased these loans and therefore the trusts do not own them and therefore the lawsuits are fraudulent[.]"  Statement of Material Facts, ¶ 1.  Plaintiffs' allegation that the trusts are filing lawsuits on loans they do not own is false.

Contrary to plaintiffs' false allegation, TERI did *not* purchase plaintiffs' loans and does not own and never has owned plaintiffs' loans.  *Id.* at ¶¶ 5-17.  In light of this undisputed fact, plaintiffs' entire case must be dismissed with prejudice.

---

[1] During a previous telephonic hearing, plaintiff's counsel indicated plaintiff Winne has passed away and she would soon be filing a Motion to Substitute.  To date, no such motion has been filed.  Accordingly, this Court should dismiss the claims brought by plaintiff Winne.

## II. PROCEDURAL HISTORY

On May 2, 2016, Winne filed the initial class action Complaint.  *See* Docket No. 1.

On May 25, 2016, Winne filed the First Amended Complaint.  *See* Docket No. 3.

On January 11, 2017, the Court conditionally granted Winne leave to file a Second Amended Complaint to add new plaintiffs and allegations, but required the Second Amended Complaint "specify by name the defendant or defendants" to which the claims relate.  *See* Docket No. 110.

On January 20, 2017, Winne filed the Second Amended Complaint, adding Thurlow, McMullen, and Hills, but failing to fully comply with the Court's order to specifically identify which claims relate to which defendants.  *See* Docket No. 112.

Plaintiffs allege they were the subject of lawsuits and/or collection activity relating to loans purportedly owned by various National Collegiate Student Loan Trusts.[2]  Plaintiffs' central "theory of the case" is that TERI purchased their loans and "therefore the [T]rusts don't own them and therefore the lawsuits are fraudulent[.]"  Statement of Material Facts, ¶¶ 1-4.  Plaintiffs allege their loans were purchased by TERI upon default pursuant to the company's guaranty obligations, and the Trusts did not hold right, title, or interest to the subject accounts.  *See* Docket No. 112, ¶¶ 111, 163, 193, 234-237.  Plaintiffs' claims are patently false.

Plaintiffs broadly allege 5 causes of action.  In Count I, plaintiffs allege violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*.[3]  *Id*. at ¶¶ 266-278.  In

---

[2] Winne alleges she was sued by National Collegiate Student Loan Trust 2005-1 and National Collegiate Student Loan Trust 2005-3.  Docket No. 112, ¶¶ 64, 69, 79.  Coffey and McMullen, as daughter-mother, borrower-cosigner respectively, allege they were sued by National Collegiate Student Loan Trust 2006-3 and National Collegiate Student Loan Trust 2007-1.  *Id*. at ¶¶ 121, 122, 126, 127.  Hills alleges she settled two debts owed to National Collegiate Student Loan Trust 2006-3.  *Id*. at ¶ 182.

[3] Winne's FDCPA claim against TSI has been resolved by offer of judgment.  Docket No. 198.

2

Count II, plaintiffs allege violations of the Maine Fair Debt Collection Practices Act ("MFDCPA"), 32 M.R.S.A. § 11001.[4]  *Id.* at ¶¶ 279-287.  Plaintiffs MFDCPA claims largely track their FDCPA claims.  *Id.*  In Count III, plaintiffs allege violations of the Maine Unfair Trade Practices Act ("MUTP"), 5 M.R.S.A. § 207, *et seq.*  *Id.* at ¶¶ 288-294.  In Count IV, plaintiffs allege fraud.  *Id.* at ¶¶ 295-304.  Plaintiffs' theory of fraud is rooted entirely on their theory that the Trusts did not own the subject debts.  *Id.*  In Count V, plaintiffs allege the Trusts are in breach of contract.  *Id.* at ¶¶ 305-313.  Interestingly, plaintiffs do not identify the applicable contractual provisions breached, but instead argue the Trusts do not have copies of the applicable contracts and therefore must be in breach of contract.  *Id.*

### III. FACTS

*See* Statement of Material Facts, filed separately in accordance with L.R. 56(b).

### IV. LAW AND ARGUMENT

The role of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."  *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992), *cert. denied,* 507 U.S. 1030 (1993).  The device allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money, and permitting courts to husband scarce judicial resources.  *Patterson v. Alltel Info. Servs., Inc.*, 919 F. Supp. 500, 501-02 (D. Me. 1996).

Summary judgment is appropriate only when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if, based on the record evidence, a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby*, 477 U.S. 242,

---

[4] Winne's MFDCPA claim against TSI has also been resolved by offer of judgment.  Docket No. 198.

248 (1986). "'Material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995) (citations omitted). The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir. 2000). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e).

### A. Plaintiffs' Loans Were NOT Sold To TERI

The theory of plaintiffs' case is clear. As opposing counsel stated at the August 1, 2017 hearing, "the plaintiffs' theory of the case is that TERI purchased these loans and therefore the trusts do not own them and therefore the lawsuits are fraudulent[.]" Statement of Material Facts, ¶¶ 1-4. Plaintiffs' theory fails as a matter of fact and law.

Contrary to plaintiffs' allegation, TERI never acquired any of plaintiffs' loans. *Id.* at ¶ 17. Simply put, the fundamental factual allegation underpinning plaintiffs' lawsuit—that TERI acquired plaintiffs' loans—is false! The affidavit from TERI unequivocally confirms that TERI did not acquire plaintiffs' loans, as plaintiffs falsely allege. Based upon this undisputed fact, the Court should dismiss plaintiffs' lawsuit.

Further, plaintiffs allege the TERI Bankruptcy supports their theory that their loans were sold to TERI post-bankruptcy petition. *Id*. at ¶¶ 18-39. Plaintiffs are wrong. While it is true that TERI was permitted to purchase some defaulted loans post-petition, the allowance was limited in scope, capacity, and time. *Id*. Specifically, TERI could only purchase loans with limited, designated funds, and could only do so for a limited period of time. *Id*. As it relates to plaintiffs, TERI did not have the requisite funds available to purchase Winne's loans upon default, and TERI no longer had a guaranty obligation to purchase Thurlow, McMullen, or Hills' loans when they defaulted. *Id*. The Statement of Material Facts includes a detailed review of the TERI Bankruptcy and attaches relevant filings. *Id*. Because the TERI Bankruptcy docket is a public record, this Court may take judicial notice of its contents. *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.").

For the reasons stated above, plaintiffs' theory of the case fails, and their lawsuit should be dismissed with prejudice.

## B. The FDCPA

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). "As remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013).

A viable claim for violation of the FDCPA requires that a plaintiff establish three elements: (1) that she was the object of collection activity arising from consumer debt; (2) that

5

defendants are debt collectors as defined by the FDCPA; and (3) defendants engaged in an act or omission prohibited by the FDCPA.  *O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 30 (D. Mass. 2014).  Plaintiffs cannot meet their burden.

### 1. The Trusts Are Not "Debt Collectors" As Defined By The FDCPA

The FDCPA defines the term "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6). Importantly, "[t]he term does not include . . . (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person[.]"  15 U.S.C. § 1692a(6)(F)(iii); *Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1, 14 (D. Mass. 2004); *Napolitano v. Green Tree Servicing, LLC*, 2016 WL 447451, *8 (D. Me. 2016) (*quoting Schlosser v. Fairbanks Capital Corporation*, 323 F.3d 534, 536 (7th Cir. 2003)) ("[T]he FDCPA 'treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not.'").

Plaintiffs' student loans were not in default when acquired by the Trusts.  In fact, the first payments were not even due at the time of acquisition.  By election of the respective plaintiffs, the loans were in deferment status with no payments being due for a number of years.  By way of example, National Collegiate Student Loan Trust 2005-1 purchased Winne's first loan on February 23, 2005, just 4 months after it was approved and disbursed.  *See* Statement of Material Facts, ¶ 46.  However, the first payment on the loan was not due until May 19, 2009.  *Id.*

To be clear, none of the loans made the subject of this lawsuit were in default when acquired by the Trusts; indeed, no payment was even owed on any of the loans when acquired by the Trusts. *Id.* at ¶¶ 56, 67, 79, 99. Accordingly, as a matter of law, plaintiffs cannot state an FDCPA claim against the Trusts. *See Karle v. Sw. Credit Sys.*, 2015 WL 5025449, *5 (D. Mass. 2015), report and recommendation adopted sub nom. *Karle v. Sw. Credit Sys.*, 2015 WL 5031966 (D. Mass. 2015) (*citing In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) ("because the debt owed was not in default when the defendant received the assignment, the defendant is not a 'debt collector' within the meaning of the FDCPA and plaintiff's claim cannot survive the summary judgment stage")).

### *2. Turnstile Never Attempted To Collect Any Debt*

Turnstile did not attempt to collect any debt from plaintiffs. A "debt collector," as defined by the FDCPA, is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Turnstile has never had an account placed in the name of any of the plaintiffs by the Trusts for management or service. *See* Statement of Material Facts, ¶¶ 38-39. Turnstile never attempted to collect any debt owed by any of the plaintiffs; Turnstile does not place phone calls or mail letters to consumers demanding payment of debt. *Id.*

Winne alleges she received a letter from Turnstile. *See* Docket No. 112, ¶¶ 104.[5] It is true a form privacy notice required by the Graham Leach Bliley Act, 15 U.S.C. § 6803 was sent to Winne. *See* Statement of Material Facts, ¶¶ 38-39. The letter was sent by GSS Data Services,

---

[5] Coffey, McMullen, and Hills do not allege any contacts or communications with or from Turnstile. For this reason alone, all of Coffey, McMullen, and Hills' claims against Turnstile should be dismissed for failure to state a claim.

Inc., an affiliate of Turnstile. *Id.* The letter mistakenly identified Turnstile in the return address, rather than GSS Data Services. *Id.* Regardless, the letter did *not* include a demand for payment and was *not* accompanied by any additional correspondence. Considering the letter is not a collection attempt, the letter is not subject to the FDCPA. *Carlvin v. Ditech Fin. LLC*, 237 F. Supp. 3d 753, 760 (N.D. Ill. 2017) ("communications that have no demand for payment and a purpose that is clearly unrelated to any debt collection effort do not constitute communications in connection with an attempt to collect debt under the FDCPA").

The Court should dismiss plaintiffs' FDCPA claims against Turnstile because the company is neither a debt collector nor did the company ever attempt to collect any debt from any of the plaintiffs.

### *3. TSI Did Not Violate The FDCPA*

Thurlow, McMullen, and Hills' FDCPA claims against TSI fail as a matter of law.[6]  In order to establish a violation of the FDCPA, plaintiffs must prove that "(1) they were the object of collection activity arising from consumer debt, (2) the defendant is a debt collector within the meaning of the statute, and (3) the defendant engaged in a prohibited act or omission under the FDCPA." *Poulin v. The Thomas Agency*, 760 F. Supp. 2d 151, 158 (D. Me. 2011). Additionally, an FDCPA claim must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d).

Thurlow and McMullen do not allege TSI ever placed any phone calls or mailed any letters to either of them in an attempt to collect a debt, nor could they. TSI has never attempted to collect the subject student loan debts owed by Thurlow and McMullen. *See* Statement of

---

[6] Winne resolved her claims against TSI via acceptance of an offer of judgment. TSI denies any and all wrongdoing and maintains that it did not violate the FDCPA as to any of the plaintiffs, including Winne.

Material Facts, ¶ 83.

Thurlow and McMullen complain about affidavits signed by TSI employees and filed in the state court collection lawsuits. *See* Docket No. 112, ¶147, 163. Specifically, Thurlow and McMullen allege the affidavits were false and "incomplete" because they purportedly did not reflect the current ownership of the debt, *i.e.* that TERI allegedly owned the debt. *Id.* As discussed above, plaintiffs' theory of the case is patently false. The Trusts owned the debts and never sold them to TERI. *See* Statement of Material Facts, ¶¶ 60-82. The affidavits, therefore, were accurate.

Hills alleges, after she settled her loans with the Trusts, she continued to receive calls from "Navient Private Credit" regarding her loans. *See* Docket No. 112, ¶ 183. Hills is mistaken. After Hills settled her loans, the loans were marked as settled and there were no further attempts to collect the loans. Statement of Material Facts, ¶¶ 101-103.[7] Further, "Navient Private Credit" is not even an agency that collects loans owed to the Trusts. *Id.* at ¶ 103.

Moreover, any FDCPA claim Hills would otherwise have against TSI is now time-barred under the FDCPA's 1-year statute of limitations. The lawsuit was filed on May 2, 2016. *See* Docket No. 1. Hills did not join as a plaintiff until the Second Amended Complaint was filed on January 20, 2017. *See* Docket No. 112. Using either date, more than a year had passed since TSI placed any phone calls or mailed any letters on the accounts, so any FDCPA claim would be time-barred. Statement of Material Facts, ¶ 104.

---

[7] Hills settled her loans on October 1, 2015. *See* Statement of Material Facts, ¶ 101-104. Based upon the settlement, TSI, as servicer for both loans, contemporaneously adjusted the balance on each loan to $0. *Id.*

**C. Plaintiffs' MFDCPA Claims Are Derivative Of Their FDCPA Claims And Should Be Dismissed**

Plaintiffs' claims under the MFDCPA fail for the same reasons as the FDCPA claims. Like the FDCPA, the MFDCPA applies to "debt collectors."  32 M.R.S.A. § 11002(6) & 11054(1); *see Cota v. U.S. Bank Nat'l Ass'n*, 2016 WL 922784, *4 (D. Me. 2016).  Like the FDCPA, the MFDCPA excludes from the definition of "debt collector" any person collecting or attempting to collect any debt "that was not in default at the time it was obtained by that person." M.R.S.A. § 11003(7)(C); *see Beaulieu v. Bank of Am., N.A.*, 2014 WL 4843809, *11 (D. Me. 2014) (the MFDCPA excludes from the definition of "debt collector" any person collecting a debt that was not in default at the time it was obtained by that person).  The statutory structure of the FDCPA and the MFDCPA are nearly identical.  *Poulin v. The Thomas Agency*, 760 F.Supp.2d 151, 157, n.8 (D. Me. 2011); *see Shapiro v. Haenn*, 222 F. Supp. 2d 29, 44 (D. Me. 2002) (the language of the state statute tracks that of the federal statute almost exactly).  As this Court has ruled, since the MFDCPA and FDCPA are nearly identical, the analysis is the same under both statutes.  *Poulin.* 760 F.Supp.2d at 157.  Accordingly, plaintiffs' MFDCPA claims fail for the same reasons as their FDCPA claims.

**D. Plaintiffs' Unfair Trade Practices Act Claim Should Be Dismissed**

The MUTPA declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]"  5 M.R.S.A. § 207.  "To justify a finding of unfairness, the act or practice: (1) must cause, or be likely to cause, substantial injury to consumers; (2) that is not reasonably avoidable by consumers; and (3) that is not outweighed by any countervailing benefits to consumers or competition."  *State v. Weinschenk*, 868 A.2d 200, 206 (Me. 2005); *James v. GMAC Mortg. LLC*, 772 F. Supp. 2d 307, 322 (D. Me. 2011).  "The substantial injury requirement is designed to weed out trivial or merely speculative harms."

10

*Tungate v. MacLean-Stevens Studios, Inc.*, 714 A.2d 792, 797 (Me. 1998).  An act or practice is deceptive if it is a material representation, omission, act or practice that is likely to mislead consumers acting reasonably under the circumstances.  A material representation, omission, act or practice involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.  *Weinschenk*, 868 A.2d at 206 (citations and internal quotation marks omitted).

MUTPA expressly states that a plaintiff must suffer "loss of money or property," 5 M.R.S. § 213, and courts have interpreted MUTPA to exclude emotional distress.  *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 613 F. Supp. 2d 108, 132 n.130 (D. Me. 2009); *Kowalski v. Seterus, Inc.*, 2017 WL 79949, *18 (D. Me. Jan. 9, 2017); *Hamilton v. Fed. Home Loan Mortg. Corp.*, 2014 WL 7508808, *7 (D. Me. July 30, 2014).  "Loss of money or property" does not include attorney's fees or costs of bringing a MUTPA lawsuit.  *Napolitano v. Green Tree Servicing, LLC*, 2016 WL 447451, *9 (D. Me. Feb. 4, 2016); *Fogg v. Ocwen Loan Servicing, LLC*, 2015 WL 1565229 (D. Me. Apr. 8, 2015) (plaintiffs could not bootstrap themselves into the MUTPA statute by expending attorney's fees to bring a MUTPA claim).  Additionally, "[l]iability under the Maine UTPA attaches only to the party that performed the unfair or deceptive act."  *James*, 772 F.Supp.2d at 321.

Plaintiffs do not specify what actions taken by the Defendants are unfair pursuant to MUTPA.  Docket No. 112, ¶¶ 288-294.  Nor have plaintiffs stated what money or property they have lost as a result.  *Id*.  However, throughout the Second Amended Complaint, related hearings and briefings, plaintiffs have repeatedly asserted that they are the victims of an alleged scheme by Defendants and others to collect debts that were allegedly sold to TERI and not owned by any of the Trusts.  Plaintiffs' allegations are false.  Again, contrary to plaintiffs' allegations, TERI

11

did not purchase plaintiffs' loans. *See* Statement of Material Facts, ¶ 17. All right, title, and interests in plaintiffs' loans has remained with the Trusts. *Id.* Plaintiffs' claim under MUTPA should be dismissed.

### E. Plaintiffs' Fraud Claims Should Be Dismissed

In order to establish fraud in Maine, a plaintiff must prove by clear and convincing evidence that the defendant 1) made a false representation, 2) of a material fact, 3) with knowledge of its falsity or in reckless disregard of whether it was true or false, 4) for the purposes of inducing another to act or to refrain from acting in reliance upon it and, 5) the plaintiff justifiably relies upon the representation as true and acts upon it to his damage. *Letellier v. Small*, 400 A.2d 371, 376 (Me. 1979); *St. Francis De Sales Fed. Credit Union v. Sun Ins. Co. of New York*, 818 A.2d 995, 1003 (Me. 2002); *Wyman v. Prime Disc. Sec.*, 819 F. Supp. 79, 85 (D. Me. 1993).

Plaintiffs identify 6 purported fraudulent representations made by the Trusts, of which they allege 5 apply equally to TSI, and 3 to Turnstile. *See* Docket No. 112, ¶¶ 296-301. Each of the alleged false representation relates to plaintiffs' core allegation in this lawsuit, *i.e.* that the subject loans were sold to TERI and were not owned by the Trusts. *Id.* In particular, plaintiffs allege false representations were made regarding the ownership of the loans, settlement authority of the Trusts, that the loans were owed to the Trusts, the assignment history of the loans, and the possession or access to loan documents. *Id.* Put another way, every assertion of fraud is a biproduct of plaintiffs' false assertion that the Trusts do not own their loans. Plaintiffs' fraud allegations fail for multiple reasons.

First, and most important, the Trusts hold all right, title, and interests to the subject loans. *See* Statement of Material Facts, ¶¶ 5-17. Once again, plaintiffs' allegation that the loans were

sold to TERI is false.  *Id.*  For this reason alone, plaintiffs' fraud claim should be dismissed.

Additionally, there is no evidence that Winne, Thurlow, or McMullen ever relied or acted upon the representations of Defendants to their detriment, as required to establish a claim for fraud.  To the contrary, all 3 plaintiffs were sued by the Trusts and challenged the allegations.

In the case of Thurlow and McMullen, both admit they applied for the loans and received the loan proceeds.  *Id.* at ¶¶ 60-82.  They allege, however, that they settled and paid the loans before being sued.  *See* Docket No. 112, ¶ 123.  Specifically, Thurlow alleges she settled and paid the loans she "believed were [her] only two private loans with Charter One/Citizens" on or about October 30, 2014.  *Id.*  But Thurlow is wrong – she settled a completely different set of loans owed to Navient, formerly known as Sallie Mae.  *See* Statement of Material Facts, ¶¶ 84-86.

To be clear, Thurlow and McMullen's Sallie Mae/Navient loans are wholly separate and distinct from the loans Thurlow and McMullen owe to National Collegiate Student Loan Trust 2006-3 and National Collegiate Student Loan Trust 2007-1.  *Id.*  And the evidence shows Thurlow and McMullen are well aware of this fact, despite the false allegations they make in their lawsuit.  When Thurlow was settling her Sallie Mae/Navient loans with EOS USA, she was also communicating with collection attorneys Daggett & Parker about the loans owed to National Collegiate Student Loan Trust 2006-3 and National Collegiate Student Loan Trust 2007-1.  *Id.*  On October 28, 2014, the same day Thurlow settled the Sallie Mae/Navient loans with EOS, Thurlow emailed Daggett & Parker and stated, "I am paying Sallie Mae/Navient this week and need to figure out what to do with the National Collegiate."  *Id.*  Thurlow attached to her email a copy of her signed loan agreements with Navient.  *Id.*  Thurlow and McMullen's contention that they settled the loans owed to National Collegiate Student Loan Trust 2006-3 and National

Collegiate Student Loan Trust 2007-1 is baseless.

Plaintiffs' fraud claims should be dismissed.

### *F. Plaintiffs' Claim For Breach Of Contract Should Be Dismissed*

"In order to obtain relief for a breach of that contract, the plaintiff must also demonstrate that the defendant breached a material term of the contract, and that the breach caused the plaintiff to suffer damages." *Tobin v. Barter*, 89 A.3d 1088, 1091-92 (Me. 2014). Plaintiffs allege the Trusts are in breach of contract because the Trusts allegedly do not have copies of the loan documents. *See* Docket No. 112, ¶¶ 305-313. Interestingly, despite alleging breach of contract, plaintiffs do not state what the applicable contract terms were and how they were breached. Put another way, plaintiffs are asserting a breach of contract claim without identifying the contract or term that was breached. For this reason alone, plaintiffs' claim for breach of contract should be dismissed.

Furthermore, plaintiffs' allegation that the Trusts do not have the underlying loan contracts is false. When plaintiffs applied for their loans, each was presented with a Loan Request/Credit Agreement ("Credit Agreement"). *See* Statement of Material Facts, ¶¶ 41, 51, 62, 73, 88, 93. The Credit Agreement included a set of terms and conditions specifically identified by a long alphanumeric code. *Id.* The alphanumeric code is specifically identified in the signature page, and stamped in the bottom corner of every page. *Id.* In the case of Winne, she made the following declaration by signing the Credit Agreement:

> By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all five (5) pages of this Loan Request/Credit Agreement **AB.04-05.CSX1.10DC.0104**[.] . . . I understand that I am not required to fax my signature on or sign electronically this Credit Agreement and my related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require my signature, I intend: (1) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout

or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the lender by electronic records and electronic signatures[.]

*Id.* (emphasis added).

Winne signed and returned the signature page. *Id.* The Trusts maintain copies of the terms and conditions plaintiffs agreed to, including AB.04-05.CSX1.10DC.0104, the terms and conditions of the subject agreement with Winne. *Id.* Winne agreed to pay interest at a variable rate and the related trust charged interest pursuant to the terms. *Id.* The same holds true as to Winne's other loan, as well as the loans for Thurlow, McMullen, and Hicks. *Id.*

Plaintiffs' claims for breach of contract should be dismissed.

## V. CONCLUSION

The Court should grant Defendants' Motion for Summary Judgment, dismiss plaintiffs' claims with prejudice, and award Defendants attorneys' fees.

15

Dated: October 26, 2017.

Respectfully submitted,

*/s/ Michael D. Alltmont*
Bryan C. Shartle, Esq.
Brian D. Roth, Esq.
Michael D. Alltmont, Esq.
Sessions Fishman Nathan & Israel
3850 N. Causeway Blvd., Suite 200
Metairie, Louisiana 70002
Telephone: (504) 828-3700
Facsimile:  (504) 828-3737
malltmont@sessions.legal
bshartle@sessions.legal
broth@sessions.legal

*/s/ Adam J. Shub*
Adam J. Shub, Esq.
Preti Flaherty Beliveau & Pachios LLP
One City Center
P.O. Box 9546
Portland, Me 04112-9546
Telephone No.: (207) 791-3000
Facsimile No.: (207) 791-3111
AShub@preti.com

*Attorneys for National Collegiate Student
Loan Trust 2005-1, National Collegiate
Student Loan Trust 2005-3, National
Collegiate Student Loan Trust 2006-3,
National Collegiate Student Loan Trust
2007-1, Transworld Systems, Inc., and
Turnstile Capital Management, LLC*

## CERTIFICATE OF SERVICE

I certify that on October 26, 2017, a copy of the foregoing was filed electronically in the ECF system.  Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system, including plaintiff's counsel as described below.  Parties may access this filing through the Court's system.

> CYNTHIA A. DILL
> LAW OFFICE OF CYNTHIA DILL
> 511 CONGRESS ST.
> PORTLAND, ME 04101
> 207-749-7749
> Email: dillesquire@gmail.com

> By:    */s/ Michael D. Alltmont*
>             Attorney

17