UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| JANE C. FORRESTER WINNE; SARAH N. COFFEY; VICKIE L. MCMULLEN; KARIN A. HILLS; on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-1; et al.,<br><br>Defendants. | Civil Action Docket No: 1:16-cv-00229-JDL |

## STATEMENT OF MATERIAL FACTS

Defendants, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-3, and National Collegiate Student Loan Trust 2007-1 (collectively, the "Trusts"), Transworld Systems, Inc. ("TSI"), and Turnstile Capital Management, LLC ("Turnstile") (the Trusts, TSI, and Turnstile collectively the "Defendants"), pursuant to L.R. 56(b), submit the instant Statement of Material Facts in support of their Motion for Summary Judgment. The Court should dismiss the claims asserted by the plaintiffs, Jane Forrester-Winne ("Winne"), Sarah Coffey f/k/a Sarah Thurlow ("Thurlow"), Vicki McMullen ("McMullen"), and Karin Hills ("Hills"), based upon the following undisputed facts:

1.  The plaintiffs' theory of the case is that The Education Resource Institute, Inc. ("TERI") purchased their loans and therefore the Trusts don't own them and therefore the lawsuits are fraudulent. *See* Exhibit A, Transcript of 8/1/17 hearing, Attorney Cynthia Dill for plaintiffs speaking.

2.  Each of the plaintiffs allege TERI purchased their loans, and the Trusts no longer

held right, title, or interest to the loans during the time period relevant to the allegations in the Second Amended Complaint. Docket No. 112, ¶¶ 111, 163, 193, 234.

3. The plaintiffs seeks to represent a class of persons who "signed 'Loan Request/Credit Agreements' in Maine that were bundled, securitized, and purportedly transferred to the Trusts and purchased by TERI post its Chapter 11 Petition[.]" *Id.* at ¶ 251.

4. Plaintiffs have reiterated in numerous briefs that the theory of their case, and the class they seek to represent, concern persons whose loans were sold to TERI. Docket No. 164 ("The putative class is narrowly defined students sued by the Trusts in Maine on loans purchased by TERI[.]"); Docket No. 165, p. 3 ("By now the Court is hopefully aware of the general thrust of the additional 303 allegations that make up the Complaint in its entirety. The Trusts are double dipping – getting paid by TERI on defaulted student loans and collecting them, too, from the named plaintiffs and the putative class."); Docket No. 165, p. 7 ("WTC wants to have its cake and eat it, too. . . transferring title from the Trusts to TERI on one hand and authorizing suit in the name of the Trusts on the other").

5. National Collegiate Student Loan Trust 2005-1 is the owner of a loan ending in account number xxxxx4410/001-001000, owed by plaintiff Winne. *See* Exhibit B, Luke Affidavit, ¶¶ 17-24.

6. National Collegiate Student Loan Trust 2005-3 is the owner of a loan ending in account number xxxxx4410/003-001000, owed by plaintiff Winne. *Id.*

7. Neither TERI nor TERI Holding, LLC own any accounts owed by plaintiff Winne. *Id.*; s*ee also* Exhibit C, Danner Affidavit, ¶¶ 8-10.

8. Neither TERI nor TERI Holding, LLC have ever held right, title, or interest in any accounts owed by plaintiff Wine. *See* Exhibit B, Luke Affidavit, ¶¶ 17-24; s*ee also* Exhibit C,

Danner Affidavit, ¶¶ 8-10.

9. National Collegiate Student Loan Trust 2006-3 is the owner of a loan ending in account number xxxxx3685/001-001000, owed by plaintiffs Thurlow, as borrower, and McMullen, her mother, as cosigner. *See* Exhibit B, Luke Affidavit, ¶¶ 9-16.

10. National Collegiate Student Loan Trust 2007-1 is the owner of a loan ending in account number xxxxx3685/002-001000, owed by plaintiffs Thurlow, as borrower, and McMullen, her mother, as cosigner. *Id.*

11. Neither TERI nor TERI Holding, LLC own any accounts owed by plaintiffs Thurlow or McMullen. *Id.*; *see also* Exhibit C, Danner Affidavit, ¶¶ 8-10.

12. Neither TERI nor TERI Holding, LLC have ever held right, title, or interest in any accounts owed by plaintiffs Thurlow or McMullen. *See* Exhibit B, Luke Affidavit, ¶¶ 9-16; *see also* Exhibit C, Danner Affidavit, ¶¶ 8-10.

13. National Collegiate Student Loan Trust 2006-3 was the owner of two loans ending in account numbers xxxxx8780/001-001000 and xxxxx8780/002-001000, respectively, owed by plaintiff Hills. *See* Exhibit B, Luke Affidavit, ¶¶ 25-35.

14. On or about October 1, 2015, National Collegiate Student Loan Trust 2006-3 accepted $6,000 as settlement in full of the two loans owed by plaintiff Hills. *Id.*, ¶ 30.

15. Neither TERI nor TERI Holding, LLC own any accounts owed by plaintiff Hills. *Id.*, ¶¶ 25-35; *see also* Exhibit C, Danner Affidavit, ¶¶ 8-10.

16. Neither TERI nor TERI Holding, LLC have ever held right, title, or interest in any accounts owed by plaintiff Hills. *See* Exhibit B, Luke Affidavit, ¶¶ 25-35; *see also* Exhibit C, Danner Affidavit, ¶¶ 8-10.

17. TERI Loan Holdings, LLC, a wholly-owned subsidiary of the TERI Plan Trust, was

created to take title of the TERI defaulted student loan portfolio; TERI Loan Holdings, LLC, does not have any records of, and has never held any right, title, or interest in any student loans for plaintiff Thurlow, McMullen, Winne, or Hills. S*ee* Exhibit C, Danner Affidavit, ¶¶ 2, 3, 8-10.

### *The TERI Bankruptcy*

18. In the Second Amended Complaint, plaintiffs allege TERI purchased their loans after TERI filed bankruptcy. *See* Docket No. 112, ¶¶ 122-143

19. On April 4, 2008, TERI filed a voluntary Chapter 11 Bankruptcy in the United States Bankruptcy Court, District of Massachusetts, Bankruptcy Petition Case No. 08-12540. Relevant portions of the docket are attached as Exhibit D.

20. TERI was "a processor and guarantor of private student loans." *Id.*, Exhibit D, Docket No. 239, ¶ 8.

21. Prior to bankruptcy, when a securitized loan went into default, TERI used funds in the accounts pledged and tied to a particular trust to purchase the defaulted loans. If the pledged accounts associated with a specific trust did not have sufficient funds to purchase the defaulted loans, TERI purchased the defaulted loans with funds from its general operating account. *Id.* at ¶ 12.

22. On June 5, 2008, two months after filing bankruptcy, TERI filed a motion requesting the Court grant TERI permission to purchase defaulted loans *from the pledged accounts*. *Id.* at ¶ 17.

23. TERI specified that it did "not seek authority hereunder to purchase any defaulted loans that would be paid from [TERI's] general operating accounts, since those account are not subject to perfected security interests. Therefore, if the funds of a Pledged Account have been depleted such that that amount in the account is less than the amount of defaulted loans that TERI,

but for the Chapter 11 would be required to purchase from its general operating account, [TERI] ***will not purchase such student loan*.**" *Id.* at ¶ 18 (emphasis added).

24. On June 23, 2008, the Court granted TERI's motion, ordering that TERI "is authorized and directed to purchase defaulted loans from the funds in the applicable Pledged Accounts, provided . . . there are sufficient funds in the applicable Pledged Account to purchase such student loans[.]" The Court made clear "that nothing in this Order shall permit or allow [TERI] to purchase any defaulted loans from [TERI's] general operating accounts[.]" *Id.*, Exhibit D, Docket No. 361.

25. Plaintiff Winne's account owed to National Collegiate Student Loan Trust 2005-1 defaulted on 3/1/10 with a balance of $33,297.26. *See* Exhibit B, Luke Affidavit, ¶ 20.

26. Plaintiff Winne's account owed to National Collegiate Student Loan Trust 2005-3 defaulted on 10/1/10 with a balance of $31,539.58. *Id.*

27. TERI did not have funds available in the associated pledged accounts to purchase plaintiff Winne's defaulted loans. Exhibit D, Docket No. 1011, p. 66.

28. Per the June 23, 2008 Bankruptcy Court Order, TERI was prohibited from purchasing plaintiff Winne's loans from the general operating accounts. *Id.*, Exhibit D, Docket No. 361.

29. TERI did not purchase plaintiff Winne's defaulted student loans when they defaulted on 3/1/10 or 10/1/10 respectively. *Id.*; *see also* Exhibit C, Danner Affidavit, ¶¶ 8-10.

30. On October 29, 2010, the Bankruptcy Court approved the Modified Fourth Amended Joint Plan of Reorganization. Exhibit D, Docket Nos. 1170 and 1139 (the "Plan").

31. Per the Plan, the guaranty obligation TERI owed the Trusts was "deemed rejected" and set aside. *Id.*, Exhibit D, Docket Nos. 1139, ¶¶ 3.3, Docket No. 1159.

32. When plaintiffs Thurlow and McMullen's accounts defaulted on April 2, 2012, the guaranty agreement within the underlying contract had been "deemed rejected" pursuant to the Plan. *Id.*, s*ee also* Exhibit B, Luke Affidavit, ¶ 12.

33. Plaintiffs Thurlow and McMullen's defaulted student loans were not sold to TERI. *Id.*, ¶ 13; *see also* Exhibit C, Danner Affidavit, ¶¶ 8-10.

34. Plaintiffs Thurlow and McMullen's defaulted student loans were retained by the Trusts after default. *See* Exhibit B, Luke Affidavit, ¶ 12-13; *see also* Exhibit C, Danner Affidavit, ¶¶ 8-10.

35. When plaintiff Hills' accounts defaulted on November 3, 2015, the guaranty agreement within the underlying contract had been "deemed rejected" pursuant to the Plan. *See* Exhibit D, Docket No. 1139, ¶¶ 3.3, 6.2, Docket No. 1159; *see also* Exhibit B, Luke Affidavit, ¶ 28.

36. Plaintiff Hills' defaulted student loans were not sold to TERI. Exhibit B, Luke Affidavit, ¶¶ 28-29; *see also* Exhibit C, Danner Affidavit, ¶¶ 8-10.

37. Plaintiff Hills' defaulted student loans were retained by the Trusts after default. *Id.*

### *Turnstile Capital Management*

38. Turnstile has never had an account placed in the name of plaintiff Winne by the Trusts for management or service. Turnstile never attempted to collect any debt owed by plaintiff Winne. The company has never sent letters or placed phone calls to plaintiff Winne in which it would demand any debt. Turnstile has no involvement whatsoever in the collection of any account owed by plaintiff Winne. *See* Exhibit E, Myers Affidavit, ¶ 4.

39. GSS Data Services, Inc. ("GSS Data Services") is a servicer to the Trusts that performs administration services. Such administration services are not related to collections. GSS

Data Services is an affiliate of Turnstile and operates from the same mailing address. In the fall of 2015, GSS Data Services mailed privacy notices for a number of portfolios, including for certain Trust accounts. The notice mistakenly identified Turnstile in the return address, not GSS Data Services. The privacy notice did not include a demand for the debt and was not accompanied by additional correspondence. *Id.*, ¶¶ 6-8.

### *Jane Forrester-Winne's Loans*

40. National Collegiate Student Loan Trust 2005-1 and National Collegiate Student Loan Trust 2005-3 are assignee creditors on two private student loans issued to plaintiff Winne. *See* Exhibit B, Luke Affidavit, ¶¶ 17-24.

41. The first loan bearing loan number xxxxx4410/001-001000 was originated on or about October 12, 2004, by Charter One Bank, N.A. *Id.* Plaintiff Winne signed a Loan Request/Signature Agreement ("Winne Loan No. 1") on or about October 8, 2004, requesting $20,000. *Id.* Plaintiff Winne acknowledged that she had "read, underst[ood] and agree[d] to the terms of and undert[ook] the obligations set forth on all (5) pages of this Loan Request/Credit Agreement AB.04-05.CSX1.10DC.0104[.]" *Id.*

42. Plaintiff Winne agreed that she was submitting her signature willingly and she intended "my fax or electronic signature to be an electronic signature under applicable federal and state law[.]" *Id.* Plaintiff Winne also intended "any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document[.]" *Id.* Plaintiff Winne added that she intended "to conduct business with the lender by electronic records and electronic signatures." *Id.* Winne Loan No. 1 instructed her to fax back the Signature Page, and not the entire loan packet. *Id.*

43. The Trusts maintain copies of the agreements provided to borrowers and co-

borrowers as part of the application packet, including a copy of Loan Request/Credit Agreement AB.04-05.CSX1.10DC.0104. *Id.*

44. Plaintiff Winne chose to defer all principal and interest. *Id.* Plaintiff Winne agreed to interest at a variable rate based upon the London Interbank Offered Rate ("LIBOR") beginning on the Disbursement Date. *Id.* The funds were disbursed on October 18, 2004 in connection with the student's enrollment at the University of Maine. *Id.*

45. On February 23, 2005, Charter One Bank assigned Winne Loan No. 1 to National Collegiate Funding, LLC, which in turn assigned the loan to National Collegiate Student Loan Trust 2005-1. *Id.*

46. Per plaintiff Winne's option to defer, the first payment on Winne Loan No. 1 was due May 19, 2009. *Id.* Accordingly, at the time of acquisition by National Collegiate Student Loan Trust 2005-1 on February 23, 2005, Winne Loan No. 1 was in good standing and no payments were due. *Id.* No payments were made and Winne Loan No. 1 charged-off on March 1, 2010. *Id.*

47. On or about June 4, 2009, plaintiff Winne requested forbearance on Winne Loan No. 1. *Id.* Plaintiff Winne specified that she was requesting forbearance for the loan disbursed on October 18, 2004. *Id.* Plaintiff Winne requested an additional 30 months, and handwrote the following: "Note: I am in graduate school for the next two and a half years. I need the maximum forbearance allowable." *Id.* The forbearance request was denied. *Id*

48. National Collegiate Student Loan Trust 2005-1 calculated interest pursuant to the Winne Loan No. 1 agreement. *Id.* Plaintiff Winne did not make any payments on Winne Loan No. 1. *Id.* On March 1, 2010, National Collegiate Student Loan Trust 2005-1 charged-off Winne Loan No. 1. *Id.*

49. At the time of charge-off, servicing of Winne Loan No. 1. was transferred to First

Marblehead. *Id.* In 2012, servicing of the loan was transferred to TSI. *Id.*

50. On June 25, 2015, National Collegiate Student Loan Trust 2005-1 filed suit to collect Winne Loan No. 1. *Id.*

51. The second loan bearing loan number xxxxx4410/003-001000 was originated on or about September 2, 2005, by PNC Bank. *Id.* Plaintiff Winne signed a Loan Request/Signature Agreement ("Winne Loan No. 2") on or about September 2, 2005, requesting $20,000. *Id.* Plaintiff Winne acknowledged that she had "read, underst[ood] and agree[d] to the terms of and undert[ook] the obligations set forth on all (5) pages of this Loan Request/Credit Agreement PC.05-06.CSX1.10DC.0105[.]" *Id.*

52. Plaintiff Winne agreed that she was submitting her signature willingly and she intended "my fax or electronic signature to be an electronic signature under applicable federal and state law[.]" *Id.* Plaintiff Winne also intended "any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document[.]" *Id.* Plaintiff Winne added that she intended "to conduct business with the lender by electronic records and electronic signatures." *Id.* Winne Loan No. 2 instructed her to fax back the Signature Page, and not the entire loan packet. *Id.*

53. The Trusts maintain copies of the agreements provided to borrowers and co-borrowers as part of the application packet, including a copy of Loan Request/Credit Agreement PC.05-06.CSX1.10DC.0105. *Id.*

54. Plaintiff Winne chose to defer all principal and interest. *Id.* Plaintiff Winne agreed to interest at a variable rate based upon LIBOR beginning on the Disbursement Date. *Id.* The funds were disbursed on September 9, 2005 also in connection with plaintiff Winne's enrollment at the University of Maine. *Id.*

55. On October 12, 2005, PNC Bank assigned Winne Loan No. 2 to National Collegiate Funding, LLC, which in turn assigned the loan to National Collegiate Student Loan Trust 2005-3. *Id*.

56. Per plaintiff Winne's option to defer, the first payment on Winne Loan No. 2 was due December 19, 2009. Accordingly, at the time of acquisition by National Collegiate Student Loan Trust 2005-3 on October 12, 2005, Winne Loan No. 2 was in good standing and no payments were due. No payments were made and Winne Loan No. 2 charged off on October 1, 2010. *Id.*

57. National Collegiate Student Loan Trust 2005-3 calculated interest pursuant to the Winne Loan No. 2 agreement. *Id.* Plaintiff Winne did not make any payments on Winne Loan No. 2. *Id.* On October 1, 2010, National Collegiate Student Loan Trust 2005-3 charged-off Winne Loan No. 2. *Id*.

58. At the time of charge-off, servicing of Winne Loan No. 2 was transferred to First Marblehead. *Id.* In 2012, servicing of the loan was transferred to TSI. *Id*.

59. On June 25, 2015, National Collegiate Student Loan Trust 2005-3 filed suit to collect Winne Loan No. 2. *Id.*

### *Sarah Thurlow (n/k/a Coffey) and Vickie McMullen NCT Loans*

60. National Collegiate Student Loan Trust 2006-3 and National Collegiate Student Loan Trust 2007-1 are assignee creditors on two private student loans issued to plaintiffs Thurlow and McMullen. *See* Exhibit B, Luke Affidavit, ¶¶ 9-16.

61. On July 19, 2006, the first NCT loan bearing loan number xxxxx3685/001-001000 was originated by Charter One Bank, N.A. *Id*. Plaintiffs Thurlow and McMullen signed a Loan Request/Signature Agreement ("Thurlow NCT Loan No. 1") on or about July 19, 2006, requesting $10,000. *Id.*; *see also* Exhibit F, Thurlow Depo. Transcript, pp. 28-29, ll. 10-5; Exhibit G,

McMullen Depo. Transcript, pp. 16-17, ll. 17-14.

62. Plaintiffs Thurlow and McMullen acknowledged they had "read, underst[ood] and agree[d] to the terms of and undert[ook] the obligations set forth on all (5) pages of this Loan Request/Credit Agreement AB.06-07.CSX1.10DC.0206[.]" *See* Exhibit B, Luke Affidavit, ¶¶ 9-16. Plaintiffs Thurlow and McMullen agreed they were submitting their signatures willingly and she intended "my fax or electronic signature to be an electronic signature under applicable federal and state law[.]" *Id.* Plaintiffs Thurlow and McMullen also intended "any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document[.]" *Id.* Plaintiffs Thurlow and McMullen added that they intended "to conduct business with the lender by electronic records and electronic signatures." *Id.* Thurlow NCT Agreement No. 1 instructed plaintiffs to fax back the Signature Page, and not the entire loan packet. *Id.* McMullen admits the Signature Page was faxed back. Exhibit G, p. 18, ll. 7-8.

63. The Trusts maintain copies of the agreements provided to borrowers and co-borrowers as part of the application packet, including a copy of Loan Request/Credit Agreement AB.06-07.CSX1.10DC.0206. *See* Exhibit B, Luke Affidavit, ¶¶ 9-16.

64. Plaintiffs Thurlow and McMullen chose full deferment. *Id.* Plaintiffs Thurlow and McMullen agreed to interest at a variable rate based upon LIBOR beginning on the Disbursement Date. *Id.*

65. The funds were disbursed on July 24, 2006 in connection with plaintiff Thurlow's enrollment at Kennebec Valley Technical College. *Id.*

66. On September 28, 2006, Charter One Bank assigned the Thurlow NCT Loan No. 1 to National Collegiate Funding, LLC, which in turn assigned the loan to National Collegiate Student Loan Trust 2006-3. *Id.*

67. Pursuant to the deferral requested by plaintiff Thurlow, the first payment on the Thurlow NCT Loan No. 1 was due March 27, 2010. *Id.* Accordingly, at the time of acquisition by National Collegiate Student Loan Trust 2006-3 on September 28, 2006, the Thurlow NCT Loan No. 1 was in good standing and no payments were due. *Id.* The last payment was made on August 22, 2011, and the account charged-off on April 4, 2012. *Id.*; Exhibit H, bank statement.

68. National Collegiate Student Loan Trust 2006-3 calculated interest pursuant to the Thurlow NCT Loan No. 1 agreement. *See* Exhibit B, Luke Affidavit, ¶¶ 9-16.

69. At the time of charge-off, servicing of Thurlow NCT Loan No. 1 was transferred to First Marblehead. *Id.* Later in 2012, servicing of the loan was transferred to TSI. *Id.*

70. On May 27, 2015, National Collegiate Student Loan Trust 2006-3 filed suit to collect Thurlow NCT Loan No. 1. *Id.*

71. The second loan bearing loan number xxxxx3685/002-001000 was originated on or about December 7, 2006, by Charter One Bank, N.A, in the amount of $6,520. *Id.*

72. Plaintiffs Thurlow and McMullen signed a Loan Request/Signature Agreement ("Thurlow NCT Loan No. 2") on or about December 7, 2006. *Id.*; *see also* Exhibit E, Thurlow Depo. Transcript, pp. 30-32, ll. 16-11; Exhibit F, McMullen Depo. Transcript, p. 40, ll. 15-25.

73. Plaintiffs Thurlow and McMullen acknowledged that they had "read, underst[ood] and agree[d] to the terms of and undert[ook] the obligations set forth on all (5) pages of this Loan Request/Credit Agreement AB.06-07.CSX1.10DC.0206[.]" *See* Exhibit B, Luke Affidavit, ¶¶ 9-16.

74. Plaintiffs Thurlow and McMullen agreed they were submitting their signatures willingly and she intended "my fax or electronic signature to be an electronic signature under applicable federal and state law[.]" *Id.* Plaintiffs Thurlow and McMullen also intended "any fax

printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document[.]" *Id.* Plaintiffs Thurlow and McMullen added that they intended "to conduct business with the lender by electronic records and electronic signatures." *Id.* Thurlow NCT Loan No. 2 instructed plaintiffs to fax back the Signature Page, and not the entire loan packet. *Id.*

75. The Trusts maintain copies of the agreements provided to borrowers and co-borrowers as part of the application packet, including a copy of Loan Request/Credit Agreement AB.06-07.CSX1.10DC.0206. *Id.*

76. Plaintiffs Thurlow and McMullen chose full deferment. *Id.* Plaintiffs Thurlow and McMullen agreed to interest at a variable rate based upon LIBOR beginning on the Disbursement Date. *Id.*

77. The funds were disbursed on December 15, 2006, also in connection with plaintiff Thurlow's enrollment at Kennebec Valley Technical College. *Id.*

78. On March 8, 2007, Charter One Bank, N.A. assigned Thurlow NCT Loan No. 2 to National Collegiate Funding, LLC, which in turn assigned the loan to National Collegiate Student Loan Trust 2007-1. *Id.*

79. Pursuant to the deferral requested by plaintiff Thurlow, the first payment on the second loan was due March 27, 2008. *Id.* Accordingly, at the time of acquisition by National Collegiate Student Loan Trust 2007-1 on March 8, 2007, the second loan was in good standing and no payments were due. *Id.* The last payment was made on August 22, 2011, and the loan was charged-off on April 4, 2012. *Id.*, Exhibit H, Thurlow Bank Statement.

80. National Collegiate Student Loan Trust 2007-1 calculated interest pursuant to the Thurlow NCT Loan No. 2 agreement. *See* Exhibit A, Luke Affidavit, ¶¶ 9-16.

81. At the time of charge-off, servicing of Thurlow NCT Loan No. 2 was transferred to First Marblehead. *Id*. Later in 2012, servicing of the loan was transferred to TSI. *Id*.

82. On May 27, 2015, National Collegiate Student Loan Trust 2007-1 filed suit to collect Thurlow NCT Loan No. 2. *Id*.

83. TSI never placed any phone calls or sent any letters on either Thurlow NCT Loan No. 1 or Thurlow NCT Loan No. 2 owed by plaintiffs Thurlow and McMullen. *Id*.

### *Sarah Thurlow (n/k/a Coffey) and Vickie McMullen Navient f/k/a Sallie Mae Loans*

84. Completely unrelated to the loans discussed above and at issue in this lawsuit, plaintiffs Thurlow and McMullen also sought and obtained two student loans from Navient f/k/a Sallie Mae. *See* Exhibit I, Navient Documents.

85. The two student loans from Navient f/k/a Sallie Mae are separate and apart from and in addition to the two loans plaintiffs Thurlow and McMullen owe to National Collegiate Student Loan Trust 2006-3 and National Collegiate Student Loan Trust 2007-1. *Id*.; *see also* Exhibit J, Horton Affidavit.

86. Upon information and belief, plaintiff Thurlow settled her loans with Navient f/k/a Sallie Mae. *See* Exhibit I; Exhibit J; Exhibit K, EOS settlement letter. Plaintiff Thurlow has *not* settled Thurlow NCT Loan No. 1 or Thurlow NCT Loan No. 2. *Id.*

### *Karin Hills Loans*

87. National Collegiate Student Loan Trust 2006-3 is the assignee creditor on two private student loans issued to Ginger R. Kief as borrower, and plaintiff Hills as co-borrower. *See* Exhibit B, Luke Affidavit, ¶¶ 25-35.

88. The first loan bearing loan number xxxxx8780/001-001000 was originated on or about August 2, 2005, by Bank of America, N.A, in the amount of $5,000. *Id*. Plaintiff Hills

signed a Bank of America Private Loan Credit Agreement ("Hills Loan No. 1") as a cosignor on or about August 2, 2005. *Id*. Plaintiff Hills acknowledged that she "read, underst[ood] and agree[d] to the terms of and undert[ook] the obligations set forth on all seven (7) pages of this Credit Agreement BK.05-06.CSX1.10SC.0105[.]" *Id*.

89. Plaintiff Hills agreed that she was submitting her signature willingly and she intended "my fax or electronic signature to be an electronic signature under applicable federal and state law[.]" *Id*. Plaintiff Hills also intended "any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document[.]" *Id*. Plaintiff Hills added that she intended "to conduct business with the lender by electronic records and electronic signatures." *Id*.

90. The Trusts maintain copies of the agreements provided to borrowers and co-borrowers as part of the application packet, including a copy of Loan Request/Credit Agreement BK.05-06.CSX1.10SC.0105. *Id*.

91. Plaintiff Hills agreed to interest at a variable rate based upon LIBOR beginning on the Disbursement Date. *Id*.

92. The funds were disbursed in two equal installments on August 11, 2005 and December 30, 2005 in connection with the borrower's enrollment at the University of Maine at Machias. *Id*.

93. The second loan bearing loan number xxxxx8780/002-001000 was originated on or about April 19, 2006, by Bank of America, N.A, in the amount of $2,500. *Id*. Plaintiff Hills signed a Bank of America Private Loan Credit Agreement ("Hills Loan No. 2") as a cosignor on or about April 19, 2006. *Id*. Plaintiff Hills acknowledged that she "read, underst[ood] and agree[d] to the terms of and undert[ook] the obligations set forth on all seven (7) pages of this Credit Agreement

BK.05-06.CSX1.10SC.0105[.]" *Id*.

94. Plaintiff Hills agreed that she was submitting her signature willingly and she intended "my fax or electronic signature to be an electronic signature under applicable federal and state law[.]" *Id*. Plaintiff Hills also intended "any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document[.]" *Id*. Plaintiff Hills added that she intended "to conduct business with the lender by electronic records and electronic signatures." *Id*.

95. The Trusts maintain copies of the agreements provided to borrowers and co-borrowers as part of the application packet, including a copy of Loan Request/Credit Agreement BK.05-06.CSX1.10SC.0105. *Id*.

96. Plaintiff Hills agreed to interest at a variable rate based upon LIBOR beginning on the Disbursement Date. *Id*.

97. The funds were disbursed on May 3, 2006, also in connection with the borrower's enrollment at the University of Maine at Machias. *Id*.

98. On September 28, 2006, Bank of America assigned Hills Loan No. 1 and Hills Loan No. 2 to National Collegiate Funding, LLC, which in turn assigned the loans to National Collegiate Student Loan Trust 2006-3. *Id*.

99. Based upon deferment, the first payment on the first loan was due March 11, 2011, and the first payment on the second loan was due November 4, 2011. *Id*. Accordingly, at the time of acquisition by National Collegiate Student Loan Trust 2006-3 on September 28, 2006, both loans were in good standing and no payments were due. *Id*. Prior to charge-off, the last payment was made on April 8, 2014, and the accounts charged-off on November 3, 2014. *Id*.

100. At the time of charge-off, servicing of Hills Loan No. 1 and Hills Loan No. 2 was

16

transferred to TSI. *Id.*

101. On or about October 1, 2015, National Collegiate Student Loan Trust 2006-3 accepted $6,000 as settlement in full of Hills Loan No. 1 and Hills Loan No. 2 owed by plaintiff Hills. *Id.* TSI, as servicer for both loans, contemporaneously adjusted the balance on each account to $0. *Id.*

102. TSI has not referred Hills Loan No. 1 or Hills Loan No. 2 to any debt collectors since the settlement. *Id.*

103. TSI does not refer accounts/loans owed to any of the Trusts to "Navient Private Credit." *Id.*

104. TSI did not place any phone calls or send any letters within one-year of the filing of this lawsuit on either Hills Loan No. 1 and Hills Loan No. 2. *Id.*

Dated: October 26, 2017.

Respectfully submitted,

*/s/ Michael D. Alltmont*
Bryan C. Shartle, Esq.
Brian D. Roth, Esq.
Michael D. Alltmont, Esq.
Sessions Fishman Nathan & Israel
3850 N. Causeway Blvd., Suite 200
Metairie, Louisiana 70002
Telephone: (504) 828-3700
Facsimile:  (504) 828-3737
malltmont@sessions.legal
bshartle@sessions.legal
broth@sessions.legal

*/s/ Adam J. Shub*
Adam J. Shub, Esq.
Preti Flaherty Beliveau & Pachios LLP
One City Center
P.O. Box 9546
Portland, Me 04112-9546
Telephone No.: (207) 791-3000
Facsimile No.: (207) 791-3111
AShub@preti.com

*Attorneys for National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-3, National Collegiate Student Loan Trust 2007-1, Transworld Systems, Inc., and Turnstile Capital Management, LLC*

## **CERTIFICATE OF SERVICE**

      I certify that on October 26, 2017, a copy of the foregoing was filed electronically in the ECF system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system, including plaintiff's counsel as described below. Parties may access this filing through the Court's system.

                        CYNTHIA A. DILL
                        LAW OFFICE OF CYNTHIA DILL
                        511 CONGRESS ST.
                        PORTLAND, ME 04101
                        207-749-7749
                        Email: dillesquire@gmail.com

                By:    */s/ Michael D. Alltmont*
                          Attorney