# EXHIBIT D

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

|  |  |
|---|---|
| In re | ) |
|  | ) |
| THE EDUCATION RESOURCES INSTITUTE, INC., | ) |
|  | ) |
| Debtor. | ) |
|  | ) |

Chapter 11
Case No. 08-12540 (HJB)

## MOTION FOR ORDER PURSUANT TO SECTIONS 105, 362, AND 363 OF THE BANKRUPTCY CODE AUTHORIZING DEBTOR TO HONOR CERTAIN OF ITS GUARANTY OBLIGATIONS AND PURCHASE DEFAULTED LOANS USING CASH IN CERTAIN PLEDGED ACCOUNTS ESTABLISHED FOR THE BENEFIT OF THE TRUSTS

The Education Resources Institute, Inc., the debtor and debtor in possession in the above-captioned case (the "Debtor" or "TERI"), respectfully submits this motion (the "Motion") seeking an order authorizing the Debtor to honor certain of its guaranty obligations and purchase defaulted loans using cash in certain pledged accounts established for the benefit of the Trusts under the circumstances described herein.

### SUMMARY OF RELIEF REQUESTED

1.      The Debtor seeks limited relief from the stay and authority to use property of the estate that is subject to perfected security interests to satisfy its secured obligations to purchase defaulted student loans to the extent of available collateral. In exchange, it will be relieved of the cash costs incident to the performance of these obligations, subject to certain off-sets more fully described herein.

### JURISDICTION AND VENUE

2.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant

LIBC/3302103.7

to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are

sections 105(a), 362 and 363(b) of Title 11 of the United States Code (the "Bankruptcy Code").

Rules 4001 and 6004 of the Federal Rules of Bankruptcy Procedure ("FRBP") apply to this

Motion.

## BACKGROUND

3.      On the date hereof (the "Petition Date"), the Debtor commenced its bankruptcy

case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the

"Chapter 11 Case").

4.      The Official Committee of Unsecured Creditors in this Chapter 11 case (the

"Creditors' Committee") was appointed on April 30, 2008. No trustee or examiner has been

appointed in this Chapter 11 case.

5.      The Debtor is operating its business and managing its property as a debtor in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      Founded in 1985, TERI is a nonprofit organization incorporated under

Massachusetts General Laws, chapter 180, located in Boston, Massachusetts. TERI provides

education opportunities for all through its college access and loan guarantee activities. TERI is a

national leader in promoting strategies for improving college access. The Debtor manages

college access programs that target low-income individuals and those who are the first

generation in their families to attend college. These programs are designed to raise student and

adult aspirations to include college and other post-secondary education and provide guidance and

information directly to students and their families on planning and paying for college. TERI is

also the managing director of the Pathways to College Network, an alliance of over 30 nonprofit

organizations and funders committed to advancing college access and success for underserved

students.

2

LIBC/3302103.7

7.     TERI's loan guarantee programs help students close the gap between education

costs and their other resources such as financial aid, savings and family support. TERI is the

oldest and largest guarantor of private (non-government) student loans with more than $18

billion in outstanding guaranties. TERI brings together lenders, schools, students and families to

make available low-cost, high quality financing for postsecondary education.

## RELIEF REQUESTED

## A.     THE DEBTOR'S OPERATIONS

8.     The Debtor is a processor and guarantor of private student loans. Through a

series of contracts with The First Marblehead Corporation and one or more of its corporate

affiliates (collectively, "FMC"), various lenders and other financial institutions, the Debtor

processes student loan applications, administers student loans, and provides a guaranty in respect

of such student loans. When a lender funds a student loan, the lender deposits the funds into one

of the Debtor's loan origination accounts and First Marblehead Education Resources, Inc.

("FMER"), acting as TERI's agent, issues the check or initiates the appropriate transfer to the

borrower or the applicable educational institution at which the borrower is enrolled.

9.     At the time that the student loan is funded, the Debtor is paid a fee in

consideration for issuing a guaranty of the loan (the "Guaranty Fee"). Prior to the Petition Date,

most (but not all) lenders required that a significant portion of the Guaranty Fees be placed in a

segregated collateral account. When securitization for a loan is pending, the Guaranty Fees are

placed in a pool account (the "Pool Account").[1]   When the loans were ultimately securitized, the

Guaranty Fees were placed in pledged accounts (the "Pledged Accounts"). The Pledged

Accounts and their proceeds are subject to a security interest granted to the Trustee of the several

trusts identified below.

---

[1] The Pool Account is broken down and tracked by each Lender that is party to such Pool Account.

3

10.     Currently, there are 17 Pledged Accounts that have been created and are maintained for the benefit of trusts that hold student loans. Currently the Pledged Accounts are held at U.S. Bank, N.A. on behalf of the following trusts (collectively, the "Trusts"): The National Collegiate Trust-2001-CP1; The National Collegiate Student Loan Trust 2001 AR 1, 2, 3; The National Collegiate Trust 2002-CP1; The National Collegiate Student Loan Trust 2003-1; The National Collegiate Student Loan Trust 2004-1; The National Collegiate Student Loan Trust 2004-2; The National Collegiate Student Loan Trust 2005-1; The National Collegiate Student Loan Trust 2005-2; The National Collegiate Student Loan Trust 2005-3; The National Collegiate Student Loan Trust 2006-1; The National Collegiate Student Loan Trust 2006-2; The National Collegiate Student Loan Trust 2006-3; The National Collegiate Student Loan Trust 2006-4; The National Collegiate Student Loan Trust 2007-1; The National Collegiate Student Loan Trust 2007-2; The National Collegiate Student Loan Trust 2007-3; and The National Collegiate Student Loan Trust 2007-4.

11.     Pursuant to certain guaranty agreements (each a "Guaranty Agreement") and deposit and security agreements (each a "Deposit and Security Agreement"), if a loan that has been securitized goes into default, funds in the associated Pledged Account are used by the Debtor to purchase the defaulted student loan. Any recoveries on account of that defaulted loan are then deposited by TERI into that Pledged Account (less any amounts charged by the collection agency (the "Defaulted Loan Collection Charges") and an administrative fee to cover the Debtor's costs). Each collection agency nets its Defaulted Loan Collection Charges out of the recoveries it remits to TERI. Ultimately, if the loan is rehabilitated (which generally means that the borrower has become current and made four consecutive timely payments), the Debtor has a one-time right to sell the loan back to the Trust that purchased the loan at the time of

4

LIBC/3302103.7

securitization. If the loan is "sold back" the proceeds of that "sale" are deposited by TERI, or by the administrator of the applicable Trust on behalf of TERI, in the applicable Pledged Account, less any amounts charged by the collection agency (the "Rehabilitated Loan Collection Charges"). TERI then remits the Rehabilitated Loan Collection Charges to the applicable collection agency.

12.     If the Pledged Account that is associated with a specific Trust does not have sufficient funds to purchase the defaulted loan, the Debtor is required to purchase the loan with funds from its general operating account. If, at the end of the life of the Trust there are excess funds in the Pledged Accounts, the funds remaining revert back to the Debtor.

## B.    PAYMENT OF GUARANTY CLAIMS

13.     Generally, if (i) a borrower fails to make a monthly principal and/or interest payment on a loan when due and such failure persists for a period of 180 consecutive days, or (ii) the borrower files a bankruptcy petition, or (iii) the borrower dies, a "Guaranty Event" has occurred.[2] If a Guaranty Event occurs, the administrator of the Trust notifies TERI of the occurrence of a Guaranty Event, thereby triggering TERI's obligation under its guaranty, provided that there is compliance with the procedures set forth in the applicable Guaranty Agreement. Thereafter, the administrator must deliver the original Promissory Note relating to the loan in question and endorse it to TERI in such manner as to transfer to TERI all rights in, and title to, such Promissory Note, free and clear of all liens and encumbrances and all defenses, counterclaims, offsets and rights of recission that may be raised by the borrower.

---

[2] At the time of each securitization, the trust purchased student loans from various lenders. As a result, the definition of "Guaranty Event" may differ slightly because various guaranty agreements may govern the loans held in each trust. The summary of the Guaranty Agreements and the Deposit and Security Agreements contained in this motion is qualified in its entirety by the provisions of each such Guaranty Agreement and Deposit and Security Agreement.

5

14.     Typically, within 60 but no later than 90 days following receipt of a Guaranty

Claim under the applicable Guaranty Agreement, the Trust is permitted to withdraw from the

Pledged Account the amounts owed by TERI in respect of such Guaranty Claim.

## C.     THE SECURITY INTEREST IN THE RESTRICTED ACCOUNTS GRANTED TO THE APPLICABLE PARTY HAVE BEEN PROPERLY PERFECTED

15.     In connection with each securitization, the Debtor entered into a Deposit and

Security Agreement with each Trust (as secured party) and the administrator of the applicable

Trust . Pursuant to the Deposit and Security Agreement, each Trust was granted a security

interest in all personal property contained or required to be deposited in the applicable Pledged

Account or relating to any such property of the Debtor, including without limitation all contract

rights, claims, instruments and notes contained in such Pledged Account, all funds and

investments thereof, and all interest, dividends and/or other earnings derived therefrom, all

Recoveries[3] and all rights of TERI to receive or collect Recoveries and proceeds of the foregoing

(collectively, the "Collateral"). Each secured party also filed a Financing Statement against the

Debtor with the Secretary of State of the Commonwealth of Massachusetts evidencing its

security interest in such Collateral. Pursuant to the applicable Deposit and Security Agreement

and Guaranty Agreements, each Trust is authorized to release amounts from the Pledged

Accounts to honor the amounts owing by TERI pursuant to valid Guaranty Claims. Prior to the

Petition Date, these withdrawals occurred on a monthly basis.

---

[3] Pursuant to the Deposit and Security Agreement, "Recoveries" is defined to include: (i) any and all cash, checks, drafts, orders and all other instruments for the payment of money received by TERI from or on behalf of Borrowers in payment of principal of, interest on, late fees with respect to, and costs of collecting defaulted Loans with respect to which TERI has paid, in full, Guaranty Claims, from funds in the Pledged Accounts, and the proceeds of all of the foregoing, (ii) any amount received by TERI upon the sale or other transfer of defaulted Loans with respect to which TERI has paid, in full, Guaranty Claims (including the sale of such Loans to the Owner as provided in each of the Guaranty Agreements or the sale of the right to collect such Loans or other similar rights with respect thereto), and (iii) in connection with any pledge or assignment of defaulted Loans (or rights with respect thereto) to secure a loan to TERI, the amount of such loan.

6

16. After reviewing the relevant documents, the Debtor believes that the Indenture Trustee, on behalf of the Trusts, has a properly perfected security interests in the Collateral, including but not limited to the Pledged Accounts, proceeds of the Pledged Accounts, and any Recoveries.

## D. AUTHORITY TO HONOR GUARANTY OBLIGATIONS FROM THE PLEDGED ACCOUNTS

17. By this Motion, the Debtor seeks authority to permit and cause defaulted loans to be purchased from the funds in the Pledged Accounts, provided that (1) the Debtor, the Indenture Trustee and the administrator have complied with the applicable Guaranty Agreement, Deposit and Security Agreement and any other governing documents concerning payment and, provided further that, (2) there are sufficient funds in the applicable Pledged Account to purchase such student loans. The loans shall be purchased in accordance with the terms of the applicable guaranty agreement and deposit and security agreement.

18. The Debtor does not seek authority hereunder to purchase any defaulted loans that would be paid from the Debtor's general operating accounts, since those accounts are not subject to perfected security interests. Therefore, if the funds of a Pledged Account have been depleted such that that the amount in the account is less than the amount of defaulted loans that TERI, but for the Chapter 11 would be required to purchase from its general operating account, the Debtor will not purchase such student loan. However, should a Trust's Pledged Account be replenished with funds which constitute proceeds (from collection efforts or otherwise), the Debtor will, at such time as the funds become sufficient, purchase defaulted student loans as funds become available.

19. Implementation of the relief requested requires limited relief from the automatic stay of section 362(a) and a grant of approval under section (c)(2) of section 363 to (a) permit

7

LIBC/3302103.7

and direct the Debtor to transfer cash collateral to the parties secured by that cash collateral and (b) to permit those secured parties to retain and apply that cash collateral pursuant to the applicable security documents.

## E.   COLLECTION EFFORTS

20.   Pursuant to an agreement with FMC and subject to the reimbursement obligations described below, the Debtor and FMC have agreed that, as between FMC and TERI, FMC shall bear the costs associated with the claims review and the management of collections for all of the student loans in any of the Trusts that are subject to a Guaranty Event and the loan repurchase process from Pledged Accounts described herein (the "Claims Review and Management"). TERI will, however, continue in its ordinary course to allow the collection agencies to retain the Defaulted Loan Collection Charges as described in paragraph 11 above and will continue to remit the Rehabilitated Loan Collection Charges directly to the applicable collection agencies.

21.   Pursuant to this arrangement, in the event that a defaulted loan is recovered, the recovered amount (less any Defaulted Loan Collection Charges payable to the applicable collection agency) shall be placed in the applicable Pledged Account and the Debtor's right to charge its recovery fee (typically 2.0 -2.5% of the recovered amount) shall be assigned and paid directly to FMC or its designee.  Similarly, to the extent a loan is "rehabilitated", such that the borrower begins making payments again, pursuant to the terms of the applicable Guaranty Agreement and Deposit and Security Agreement, the Trust will purchase that loan and the amount of the repurchased loan will be placed into the Pledged Account (less the Rehabilitated Loan Collection Charges).

22.   TERI has agreed that any costs incurred by FMC for the Claims Review and Management and, subject to certain conditions, the costs of pre-default collection efforts, will be offset from the Debtor's residual interest that any of the Trusts create (the "Residual Interest").

8

the Schedule of Debtor's Top 20 Unsecured Creditors filed with this Court. In light of the nature

of the relief requested, the Debtor submits that no other or further notice need be provided.

WHEREFORE, the Debtor respectfully requests that this Court enter an order,

substantially in the form annexed hereto as Exhibit A , granting the Motion and such other relief

as may be just and proper.

Respectfully submitted,

THE EDUCATION RESOURCES INSTITUTE,
INC.

By its attorneys,

s/Gina Lynn Martin
Daniel M. Glosband (BBO No. 195620)
Gina Lynn Martin (BBO No. 643801)
Goodwin Procter LLP
Exchange Place
Boston, Massachusetts 02109
Telephone: (617) 570-1000
Facsimile: (617) 523-1231

E-mail: dglosband@goodwinprocter.com
gmartin@goodwinprocter.com

*Attorneys for the Debtor and Debtor in Possession*

Date: June 5, 2008

LIBC/3302103.7

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) |  |
|  | ) | **Chapter 11** |
| THE EDUCATION RESOURCES INSTITUTE, INC., | ) | **Case No. 08-12540 (HJB)** |
|  | ) |  |
| Debtor. | ) |  |

### ORDER PURSUANT TO SECTIONS 105, 362, AND 363 OF THE BANKRUPTCY CODE AUTHORIZING AND DIRECTING DEBTOR TO HONOR CERTAIN OF ITS GUARANTY OBLIGATIONS AND PURCHASE DEFAULTED LOANS USING CASH IN CERTAIN PLEDGED ACCOUNTS ESTABLISHED FOR THE BENEFIT OF THE TRUSTS

Upon the motion (the "Motion")[1] of The Education Resources Institute, Inc., the debtor and debtor in possession in the above-captioned case (the "Debtor"), for an order authorizing and directing the Debtor to honor certain of its guaranty obligations and purchase defaulted loans using cash in certain Pledged Accounts (including all property credited thereto) established for the benefit of the Trusts, and sufficient notice having been given and due cause appearing therefore, the Court finds that, for the reasons set forth more specifically in the Motion, cause has been shown for granting the requested relief, it is accordingly:

ORDERED, that the Motion is granted to the extent provided herein; and it is further

ORDERED that each Trust has a valid, enforceable, perfected security interest in its respective Collateral; provided however that the Committee or any other person or entity shall have the right to object to, or contest in any manner or raise any defenses to, the validity, perfection, priority or enforceability of the Trust's security interests in the Collateral, including

---

[1] Defined terms not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

(i) to the applicable Pledged Accounts on the 61st day following the date of this Order if no proceeding has been initiated in accordance with the preceding paragraph of this Order or (ii) if another order of this Court has been entered directing the disposition, transfer or other use of such funds, pursuant to such order; and it is further

ORDERED, that the Debtor is authorized to invest and manage the investment of funds held in the Segregated Recoveries Account to the same extent and manner as it is authorized to invest funds in the respective Pledged Accounts (and U.S. Bank is authorized to act in accordance with such instructions of the Debtor) and that all customary costs for establishing and maintaining the Segregated Recoveries Account (including customary charges and fees of U.S. Bank) shall be the obligation of and paid by TERI; and it is further

ORDERED, that the Debtor is authorized and directed to purchase defaulted loans from the funds in the applicable Pledged Accounts, provided that (1) the Debtor, the Indenture Trustee and the administrator have complied with the applicable Guaranty Agreement, Deposit and Security Agreement and any other governing documents concerning payment and, provided further that, (2) there are sufficient funds in the applicable Pledged Account to purchase such student loans; and it is further

ORDERED, that the Debtor's performance of its obligations under the applicable Guaranty Agreements and Deposit and Security Agreements, to the extent authorized by this Order, shall be consistent with past practice, and in accordance with the terms of the applicable Guaranty Agreement and Deposit and Security Agreement; and it is further

ORDERED, that nothing in this Order shall permit or allow the Debtor to purchase any defaulted loans with funds from the Debtor's general operating accounts; and it is further

3

LIBC/3313239.10

ORDERED, that this Court will retain jurisdiction to construe and enforce the terms of this

Order.

Dated: June 23 , 2008

The Honorable Henry J. Boroff
United States Bankruptcy Judge

LIBC/3313239.10

Joint Plan of Reorganization

Schedule B

| Class | Securitization Trust Collateral Collateral Acct (As of 12/31/08)[1] | Securitization Trust Collateral Collateral Acct (As of 9/30/09)[2] | Securitization Trust Base Case[3] Equity | Securitization Trust Base Case[2] Claim | Securitization Trust Decoder Equity (rounded)[6] | Decoder Case[4] PMT to Accepting Securitization Trust from Collateral Acct.[6] | Securitization Trust Decoder Claim (rounded)[5] | Securitization Trust Settlement Claim Reduction[7] | Securitization Trust Settlement Claim If Any[8] |
|---|---|---|---|---|---|---|---|---|---|
| | A | B | | | C | B-C | D | E | D-E=F |
| Class 3a The National Collegiate Trust 2003-1 | $540,778 | $232 | - | $12,214,990 | - | $232 | $13,500,000 | $6,900,000 | $6,600,000 |
| Class 3b The National Collegiate Trust 2004-1 | $505,430 | $659 | - | $10,696,186 | - | $659 | $12,300,000 | $6,700,000 | $5,600,000 |
| Class 3c The National Collegiate Trust 2004-2 | $788,078 | $497 | - | $12,884,635 | - | $497 | $21,200,000 | $7,000,000 | $14,200,000 |
| Class 3d The National Collegiate Trust 2005-1 | $632,914 | $1,026 | - | $5,219,602 | - | $1,026 | $13,900,000 | $5,200,000 | $8,700,000 |
| Class 3e The National Collegiate Trust 2005-2 | $395,825 | $1,355 | - | $5,575,091 | - | $1,355 | $12,700,000 | $3,400,000 | $9,300,000 |
| Class 3f The National Collegiate Trust 2005-3 | $1,809,447 | $2,242 | - | $6,015,971 | - | $2,242 | $32,800,000 | $5,200,000 | $27,600,000 |
| Class 3g The National Collegiate Trust 2006-1 | $472,236 | $2,656 | - | $6,761,746 | - | $2,656 | $24,500,000 | $2,700,000 | $21,800,000 |
| Class 3h The National Collegiate Trust 2006-2 | $225,021 | $125 | - | $11,186,298 | - | $125 | $24,600,000 | $1,700,000 | $22,900,000 |
| Class 3i The National Collegiate Trust 2006-3 | $51,161,652 | $48,247,618 | $14,690,347 | - | - | $48,247,618 | $15,700,000 | $1,700,000 | $14,000,000 |
| Class 3j The National Collegiate Trust 2006-4 | $20,967,919 | $19,560,861 | - | $2,175,723 | - | $19,560,861 | $22,000,000 | $900,000 | $21,100,000 |
| Class 3k The National Collegiate Trust 2007-1 | $31,632,569 | $30,646,587 | $2,680,796 | - | - | $30,646,587 | $14,200,000 | $300,000 | $13,900,000 |
| Class 3l The National Collegiate Trust 2007-2 | $38,018,657 | $36,920,407 | $4,331,492 | - | - | $36,920,407 | $10,400,000 | $200,000 | $10,200,000 |
| Class 3m The National Collegiate Trust 2001-CP1 | $404 | $405 | N/A | NA | $405 | - | - | - | Subject to Stipulation |
| Class 3n The National Collegiate Trust 2002-CP1 | $740,974 | $752,347 | N/A | NA | $752,347 | - | - | - | Subject to Stipulation |
| Class 3o The National Collegiate Master Trust | $906,902 | $262 | - | $14,954,201 | - | $262 | $16,200,000 | $10,300,000 | $5,900,000 |
| Class 3p The National Collegiate Trust 2007-3 | $65,493,625 | $65,379,145 | $20,234,263 | - | $1,600,000 | $63,779,145 | - | - | - |
| Class 3q The National Collegiate Trust 2007-4 | $64,615,864 | $64,548,316 | $19,264,504 | - | $700,000 | $63,848,316 | - | - | - |

[1] The 2001-CP1 and 2002-CP1 Trusts have been repurchasing defaulted loans after 12/31/08, and as such, the current estimation uses lower collateral account balances as of 10/31/09 and higher post-petition repurchased loan amounts for these two trusts.

[2] Represents Allowed Secured Claim for Accepting Trusts. Amounts subject to reduction by Securitization Trust Decoder Equity, as referenced in footnote 5 of this schedule. Amounts reflect market value before accrued interest and will be updated as of the date of transfer.

[3] Base Case is provided for illustrative purposes. The Base Case Claim/Equity amounts were determined in accordance with the Debtor Base Case methodology described in the Disclosure Statement. If any Securitization Trust rejects the Plan, the Plan Trustee reserves the right to seek to have the amount of the claims of such Securitization Trust determined at any amount the Plan Trustee determines is reasonable, including the Debtor's Base Case.

[4] The Decoder Case Claim/Equity amounts were determined in accordance with the Decoder methodology described in the Plan Supplement.

[5] Assumes Trust Collateral includes defaulted loans purchased by TERI pre-petition using funds in respective pledged accounts but not the defaulted loans purchased by TERI post-petition, pursuant to the Securitization Trust Settlement.

[6] Payment to accepting Securitization Trust from collateral account is net of any equity calculated with the Decoder methodology described in the Plan Supplement. Amounts in the collateral account will be adjusted on the date of transfer.

[7] Reflects reduction to Securitization Trust Decoder Claim pursuant to the Securitization Trust Settlement and as defined in the Plan.

[8] Decoder Case Claim reduced by the Securitization Trust Settlement Claim Reduction, as referenced in footnote 7. Reflects Allowed General Unsecured Claim for Trusts accepting the Plan, and, thereby, the Securitization Trust Settlement.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| THE EDUCATION RESOURCES INSTITUTE, INC., | Case No. 08-12540 (HJB) |
| Debtor. | |

## MODIFIED FOURTH AMENDED JOINT PLAN OF REORGANIZATION OF THE EDUCATION RESOURCES INSTITUTE, INC. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AS OF AUGUST 26, 2010

Dated: August 26, 2010

GOODWIN PROCTER LLP
Daniel M. Glosband
Gina Lynn Martin
Exchange Place
53 State Street
Boston, MA 02109
(617) 570-1000

DUANE MORRIS LLP
Jeffrey D. Sternklar
470 Atlantic Avenue
Boston, MA 02210
(857) 488-4216

LIBC/3875117.2

**ARTICLE VI MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN** ........................................................................................................................29

6.1     Reorganized TERI. ......................................................................... 29
6.2     Compromise and Settlement. ......................................................... 29
6.3     Plan Trust. ...................................................................................... 36
6.4     Calculation of TERI Net Recovery. ............................................... 41
6.5     Distribution to Secured Creditors. ................................................ 41
6.6     Restricted Funds. ........................................................................... 41
6.7     Operations of Reorganized TERI. .................................................. 42
6.8     Closing of the Chapter 11 Case. .................................................... 42
6.9     Section 1123(b)(3). ......................................................................... 42
6.10    Establishment and Implementation of a Most Favored Nations
        Clause. ............................................................................................ 42
6.11    Disposition of Affected Property Pending Resolution of Nellie Mae
        Adversary Proceeding. ................................................................... 43

**ARTICLE VII PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS** ...........................................................................................................43

7.1     No Distribution Pending Allowance. ............................................. 43
7.2     Resolution of Disputed Claims. ..................................................... 44
7.3     Estimation. ..................................................................................... 44
7.4     Allowance of Disputed Claims. ...................................................... 44
7.5     Disallowance of Claims Without Further Order of the Bankruptcy
        Court. .............................................................................................. 44
7.6     No Distribution in Respect of Disallowed Claims. ........................ 44

**ARTICLE VIII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ..........................................................................................................44

8.1     Assumption or Rejection of Executory Contracts and Unexpired
        Leases. ............................................................................................ 44
8.2     Approval of Assumption or Rejection of Executory Contracts and
        Unexpired Leases. .......................................................................... 45
8.3     Inclusiveness. ................................................................................. 45
8.4     Return of Guaranty Fees. .............................................................. 46
8.5     Bar Date for Filing Proofs of Claim Relating to Executory Contracts
        and Unexpired Leases Rejected Pursuant to this Plan. ................. 46
8.6     Insurance Policies. ......................................................................... 46
8.7     Compensation and Benefit Programs. ........................................... 46
8.8     Retiree Benefits. ............................................................................ 46

**ARTICLE IX CONDITIONS PRECEDENT TO ENTRY OF THE CONFIRMATION ORDER** .............................................................................................................47

9.1     Conditions Precedent to entry of the Confirmation Order. ............ 47

LIBC/3875117.2

*(p)* **Class 2p –U.S. Bank, N.A.** Class 2p consists of all U.S. Bank, N.A.'s Secured Claims (other than claims of U.S. Bank, N.A., if any, in its capacity as indenture trustee, trustee or other representative capacity with respect to the Securitization Trusts and Other Trusts or in its capacity as custodial or agent for a Make and Wait Lender). Class 2p is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

   **3.3**   **Classes 3a – 3q – Secured Claims of Securitization Trusts.** Class 3 consists of the Secured Claims of the Securitization Trusts. Each Allowed Secured Claim in Class 3 shall be considered to be a separate subclass within Class 3, and each such subclass shall be deemed to be a separate class for purposes of this Plan and of Bankruptcy Code Sections 1122, 1123, 1126, and 1129. Each subclass in Class 3 is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

   *(a)* **Class 3a – The National Collegiate Trust 2003-1**. Class 3a consists of all claims of The National Collegiate Student Loan Trust 2003-1 that are Secured Claims. Class 3a is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

   *(b)* **Class 3b – The National Collegiate Trust 2004-1**. Class 3b consists of all claims of The National Collegiate Student Loan Trust 2004-1 that are Secured Claims. Class 3b is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

   *(c)* **Class 3c – The National Collegiate Trust 2004-2**. Class 3c consists of all claims of The National Collegiate Student Loan Trust 2004-2 that are Secured Claims. Class 3c is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

   *(d)* **Class 3d – The National Collegiate Trust 2005-1**. Class 3d consists of all claims of The National Collegiate Student Loan Trust 2005-1 that are Secured Claims. Class 3d is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

   *(e)* **Class 3e – The National Collegiate Trust 2005-2**. Class 3e consists of all claims of The National Collegiate Student Loan Trust 2005-2 that are Secured Claims. Class 3e is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

   *(f)* **Class 3f – The National Collegiate Trust 2005-3**. Class 3f consists of all claims of The National Collegiate Student Loan Trust 2005-3 that are Secured Claims. Class 3f is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

   *(g)* **Class 3g – The National Collegiate Trust 2006-1**. Class 3g consists of all claims of The National Collegiate Student Loan Trust 2006-1 that are Secured Claims. Class 3g is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

   *(h)* **Class 3h – The National Collegiate Trust 2006-2**. Class 3h consists of all claims of The National Collegiate Student Loan Trust 2006-2 that are Secured Claims. Class 3h is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

LIBC/3875117.2

(i) **Class 3i – The National Collegiate Trust 2006-3**. Class 3i consists of all claims of The National Collegiate Student Loan Trust 2006-3 that are Secured Claims. Class 3i is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(j) **Class 3j – The National Collegiate Trust 2006-4**. Class 3j consists of all claims of The National Collegiate Student Loan Trust 2006-4 that are Secured Claims. Class 3j is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(k) **Class 3k – The National Collegiate Trust 2007-1**. Class 3k consists of all claims of The National Collegiate Student Loan Trust 2007-1 that are Secured Claims. Class 3k is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(l) **Class 3l – The National Collegiate Trust 2007-2**. Class 3l consists of all claims of The National Collegiate Student Loan Trust 2007-2 that are Secured Claims. Class 3l is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(m) **Class 3m – The National Collegiate Trust 2001-CP1**. Class 3m consists of all claims of The National Collegiate Trust 2001-CP1 that are Secured Claims. Class 3m is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(n) **Class 3n – The National Collegiate Trust 2002-CP1**. Class 3n consists of all claims of The National Collegiate Trust 2002-CP1 that are Secured Claims. Class 3n is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(o) **Class 3o – The National Collegiate Master Student Loan Trust I**. Class 3o consists of all claims of The National Collegiate Master Student Loan Trust I. Class 3o is Impaired by this Plan and is entitled to vote to accept or reject the Plan.

(p) **Class 3p – The National Collegiate Student Loan Trust 2007-3**. Class 3p consists of all claims of The National Collegiate Student Loan Trust 2007-3. Class 3p is Impaired by this Plan and is entitled to vote to accept or reject the Plan.

(q) **Class 3q – The National Collegiate Student Loan Trust 2007-4**. Class 3q consists of all claims of The National Collegiate Student Loan Trust 2007-4. Class 3q is Impaired by this Plan and is entitled to vote to accept or reject the Plan.

**3.4    Classes 4a – 4k – Secured Claims of the Keycorp Trusts and KeyBank National Association (other than in its capacity as a Make and Wait Lender)**. Class 4 consists of the Secured Claims of the Keycorp Trusts and KeyBank National Association (other than in its capacity as a Make and Wait Lender). Each Allowed Secured Claim in Class 4 shall be considered to be a separate subclass within Class 4, and each such subclass shall be deemed to be a separate class for purposes of this Plan and of Bankruptcy Code Sections 1122, 1123, 1126, and 1129. Each subclass in Class 4 is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

20

LIBC/3875117.2

### ARTICLE VI

### MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

**6.1    Reorganized TERI.**

*(a)* **Reorganized Articles of Incorporation and Reorganized By-laws**.
Reorganized TERI will adopt Reorganized Articles of Incorporation and Reorganized By-laws
prior to, but effective as of, the Effective Date, which will be included in this Plan Supplement.
Prior to the closing of TERI's Chapter 11 Case, any amendments to Reorganized TERI's Articles
of Incorporation and Reorganized By-laws will be filed with the Bankruptcy Court.

*(b)* **Boards of Directors and Officers**. The identities of the members of the
initial Board of Directors and the initial officers of Reorganized TERI will be disclosed in the
Plan Supplement and will be in effect as of the Effective Date.

*(c)* **Reorganized TERI (Not-For-Profit)**.  Reorganized TERI will, as of the
Effective Date, remain a not-for-profit corporation.

*(d)* **Retention of Reorganized TERI Assets**.  On and after the Effective Date,
Reorganized TERI will retain all rights, title, and interests in the Reorganized TERI Assets.

**6.2    Compromise and Settlement.**

*(a)* **Make and Wait Lender Settlement**.  Pursuant to section 1123(b)(3)(A) of
the Bankruptcy Code and Bankruptcy Rule 9019, the acceptance of this Plan by an Accepting
Make and Wait Lender will constitute a good faith compromise and settlement of all Claims and
controversies between the Debtor and such Accepting Make and Wait Lender, including the
amounts, allowance, relative priority and treatment of the Secured Claim and the Deficiency
Claim (if any) of such Accepting Make and Wait Lender.

(i)    **Claims of An Accepting Make and Wait Lender**.  Each Make
and Wait Lender in Classes 2a – 2p that accepts this Plan or is deemed to accept
the Plan, and, thereby, the Make and Wait Lender Settlement  (1) will have an
Allowed Secured Claim in the applicable subclass of Class 2 in the amount set
forth in the column labeled "Payment to Accepting Make and Wait Lender from
Collateral Account" on attached Schedule A, and will have an Allowed
Unsecured Claim that will be treated as a Class 5 Claim in the amount, if any, set
forth in the "Make and Wait Lender Decoder Deficiency Claim (If Any)" column
of the attached Schedule A.

(ii)    **Release of Make and Wait Lender Equity and Make and Wait
Lien Dispute Amount to Plan Trustee by Accepting Make and Wait Lender**.
Each Make and Wait Lender in Classes 2a – 2p that accepts this Plan or is deemed
to accept the Plan, and, thereby, the Make and Wait Lender Settlement, will
release its interest in the amount, if any and as applicable, in the column labeled
"Make and Wait Lender Payment Amount (If Any)" in the attached Schedule A

29

and shall be deemed to have authorized and instructed the Debtor to transfer such amount to the Plan Trustee on the Effective Date free and clear of any and all claims, interests, liens and encumbrances.

(iii) **Disbursement of Remainder of Collateral Account to Accepting Make and Wait Lender.** On the Effective Date, and subject to section 5.5 above, the Debtor shall be deemed to release from the applicable Collateral Account, and such amount shall be remitted, to each Accepting Make and Wait Lender, in full satisfaction of such Accepting Make and Wait Lender's Allowed Secured Class 2 Claim, the applicable amount for such Accepting Make and Wait Lender in the column labeled "Payment to Accepting Make and Wait Lender from Collateral Account" on attached Schedule A, as adjusted pursuant to section 5.5 above..

(iv) **Retention by Accepting Make and Wait Lender of Loans Not Purchased by the Debtor**. Each Accepting Make and Wait Lender will retain all loans that were not purchased by the Debtor as of the Effective Date.

(vi) **Bankruptcy Court Approval of Make and Wait Lender Settlement**. For each Accepting Make and Wait Lender, entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the Make and Wait Lender Settlement and the Bankruptcy Court's finding that such settlement is fair, equitable and reasonable and in the best interests of the Debtor, this Plan, Reorganized TERI and all Creditors.

(vii) **Release of Claims against the Debtor and The Estate**. On the Effective Date, the Claims against the Debtor and the Estate of each Accepting Make and Wait Lender receiving the treatment provided by the Make and Wait Lender Settlement, subject to and upon implementation of the Make and Wait Lender Settlement, will be deemed satisfied and no further recovery shall be permitted in respect of such Claims.

(viii) **Rejection of Executory Contracts**. On the Effective Date, all Guaranty Agreements executed in favor of the Make and Wait Lenders and the related Deposit and Security Agreements and other related documents entered into by the Debtor prior to the Commencement Date will be deemed rejected, and with respect to Claims asserted by Accepting Make and Wait Lenders, all Debtor's claims or rights to set off any Guaranty Fees, basis point fees and other interests in loans held by such Make and Wait Lenders will be deemed waived.

*(b)* **Make and Hold Settlement**. Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, the acceptance of this Plan by an Accepting Make and Hold Lender will constitute a good faith compromise and settlement of all Claims and controversies between the Debtor and such Accepting Make and Hold Lender, including the amounts, allowance, relative priority and treatment of the Make and Hold Claims of such Accepting Make and Hold Lender.

30

LIBC/38751172

(i)     **Claims of An Accepting Make and Hold Lender.**  An Accepting
Make and Hold Lender shall have an Allowed Claim calculated as the larger of
the Claim calculated by the Decoder and the Claim calculated by the Debtor's
Base Case, as set forth in the column labeled "Make and Hold Lender Settlement
Claim" on attached Schedule D.  All such claims will be treated as Allowed Class
5 Claims.

(ii)    **Distributions to Accepting Make and Hold Lenders and
Effectiveness of Make and Hold Settlement.**  All distributions to Accepting
Make and Hold Lenders pursuant to this Plan will be made on account of and in
consideration of the Make and Hold Lender Settlement, which, upon the Effective
Date, will be binding on all Accepting Make and Hold Lenders, the Plan
Proponents, and Reorganized TERI.  Entry of the Confirmation Order will
constitute the Bankruptcy Court's approval, as of the Effective Date, of the Make
and Hold Lender Settlement and the Bankruptcy Court's finding that such Make
and Hold Lender Settlement is fair, reasonable, equitable and in the best interests
of the Accepting Make and Hold Lenders, the Plan Proponents and Reorganized
TERI.

(iii)   **Rejection of Make and Hold Guaranty Agreements.**  On the
Effective Date, all Guaranty Agreements executed in favor of the Make and Hold
Lenders and other related documents entered into by the Debtor prior to the
Commencement Date will be deemed rejected, and with respect to Claims
asserted by Accepting Make and Hold Lenders, all Debtor's claims or rights to set
off any Guaranty Fees, basis point fees and other interests in loans held by such
Make and Hold Lenders will be deemed waived.

*(c)*  **Securitization Trust Settlement.**  Pursuant to section 1123(b)(3)(A) of the
Bankruptcy Code and Bankruptcy Rule 9019 the acceptance of this Plan by a Securitization
Trust will constitute a good faith compromise and settlement of all Claims, Causes of Action and
controversies between the Debtor and each Securitization Trust receiving the treatment provided
by the Securitization Trust Settlement, including, without limitation, the amounts, allowance,
relative priority and treatment of the Secured Claim and Deficiency Claim of each Securitization
Trust and any other claim, whether a general unsecured claim, priority claim or administrative
expenses claim that each such Securitization Trust, the Indenture Trustee under the Indenture for
such Securitization Trust, or the administrator for such Securitization Trust (in such capacity) has
asserted or might assert against the Debtor or its estate.  The Securitization Trust Settlement
includes the Ambac Compromise and the Securitization Trust Modifications as defined and
described in the Second Modification Motion.  Notwithstanding the foregoing, nothing in this
Plan shall bar any entity from seeking Allowance of an Administrative Expense Claim arising
under 11 U.S.C. §503(b)(3)(D) and (4) ("Substantial Contribution Claim"), and as to any such
Substantial Contribution Claim, the parties reserve all their respective rights, claims and
defenses.

31

(i)    **Claims of An Accepting Securitization Trust**. Each Accepting Securitization Trust in Classes 3a – 3q that accepts this Plan or is deemed to accept the Plan, and, thereby, the Securitization Trust Settlement (A) will have an Allowed Secured Claim in (a) the amount set forth in the column captioned "Total Cash," as specified for each applicable subclass of Class 3, on attached Schedule B, all as adjusted pursuant section 5.5 above, and (b) the value of all defaulted loans that were purchased prior to the Commencement Date, by or on behalf of the Debtor or its agent (acting in such capacity) from the applicable Securitization Trust and paid for by the Debtor with funds in the applicable Pledged Account, (B) will have an Allowed Unsecured Claim that will be treated as a Class 5 Claim in the amount set forth in the column captioned "Adjusted Securitization Trust Settlement Claim," as specified for each applicable subclass of Class 3, on the attached Schedule B.[2]

(ii)    **Release of Securitization Trust Equity by Accepting Securitization Trust**. Each Securitization Trust in Classes 3a – 3q that accepts this Plan or is deemed to accept the Plan, and, thereby, the Securitization Trust Settlement, will release its interest in the amount, if any and as applicable, in the column labeled "Securitization Trust Decoder Equity (Rounded)" in the attached Schedule B and shall be deemed to have authorized and instructed the Debtor to transfer such amount to the Plan Trustee on the Effective Date free and clear of any and all claims, interests, liens and encumbrances.

(iii)    **Disbursement of Cash and Transfer of Defaulted Loans to Accepting Securitization Trust.** On the Effective Date, or as soon thereafter as is practicable, and except with respect to Classes 3m and 3n, the Debtor shall (a) distribute the Total Cash in the amount described in section 6.2(c)(i) above and (b) shall transfer all of the Debtor's right, title and interest in the defaulted loans that were purchased prior to the Commencement Date, by or on behalf of the Debtor or its agent (acting in such capacity) from the applicable

---

[2] Total Cash is the sum of the amounts listed in Columns C through G of Schedule B, which include the amounts in each Pledged Account (less any equity), each Securitization Trust's share of the Segregated Recoveries Account and Prepetition Recoveries/Rehabs amounts and the amounts to be paid in settlement of the Prepetition Recoveries Dispute and the Unencumbered Loans Dispute discussed in the Second Modification Motion. The Adjusted Securitization Trust Settlement Claim is the sum of the amounts listed in Columns I through K of Schedule B and includes the Securitization Trust Settlement Claim and additional claim amounts to be Allowed in settlement of the Prepetition Recoveries Dispute and the Unencumbered Loans Dispute. For the avoidance of doubt, the settlement of the Unencumbered Loans Dispute and Prepetition Recoveries Dispute with the Master Trust and NCSLT 2003-1 and NCSLT 2004-1 is reflected on Schedule B as follows:  the cash portion is in Column G, captioned "Unencumbered Loan Settlement (Cash)," and the claim portion is Column J, captioned "Prepetition Recoveries Dispute Settlement" and in Column K, captioned "Unencumbered Loan Settlement (Claims)."  The settlement of the Prepetition Recoveries Dispute with the other Securitization Trusts is reflected on Schedule B in Column F, captioned "Prepetition Recoveries Dispute Settlement."

32

Securitization Trust and paid for by the Debtor with funds in the applicable
Pledged Account to each Securitization Trust in Classes 3a – 3q that accepts this
Plan or is deemed to accept the Plan, and, thereby, the Securitization Trust
Settlement, in full satisfaction of the Allowed Secured Claim of such Accepting
Securitization Trust.

(ii)    **Securitization Trusts Release With Respect to Postpetition
Defaulted Loans and Unencumbered Trust Loans**.  In full and final settlement
of the Trust Adversary Proceeding with respect to each Securitization Trust that
accepts this Plan or is deemed to accept this Plan, and, thereby, the Securitization
Trust Settlement, (A) each such Accepting Securitization Trust will have no claim
to Postpetition Purchased Loans or Unencumbered Trust Loans or to any
recoveries on such loans, including recoveries received prior to the date hereof,
(B), all such Unencumbered Trust Loans and Postpetition Purchased Loans and
postpetition recoveries on such loans shall be transferred by the Debtor free and
clear of all liens, claims, interests and encumbrances to the Plan Trust as soon as
practicable after the Effective Date, and (C) neither the applicable Securitization
Trusts nor their indenture trustees shall have any security interest in, or Claim to,
such defaulted loans or recoveries obtained in respect thereof (but otherwise
reserving rights under this Plan as the holder of a Claim in Class 5). Any such
postpetition defaulted loan on account of which (i) the Debtor made payment , (ii)
payment was made from funds in a Pledged Account, or (iii) a Securitization
Trust received payment, shall be considered a defaulted loan purchased by the
Debtor, regardless of the source of funds for such purchase.

(iii)   **Retention by Accepting Securitization Trust of Loans Not
Purchased by the Debtor**.  Each Accepting Securitization Trust will retain all
loans that were not purchased by the Debtor as of the Effective Date.

(iv)    **Bankruptcy Court Approval of Securitization Trust
Settlement**.  For each Securitization Trust that accepts the Plan, and thereby the
Securitization Trust Settlement, entry of the Confirmation Order will constitute
the Bankruptcy Court's approval, as of the Effective Date, of the Securitization
Trust Settlement and the Bankruptcy Court's finding that such settlement is fair,
equitable and reasonable and in the best interests of the Debtor, this Plan,
Reorganized TERI and each Accepting Securitization Trust (including the
Indenture Trustee and other secured parties under the related Indenture pursuant
to which such Trust issued its notes), receiving the treatment provided by the
Securitization Trust Settlement.

(v)     **Dismissal of Trust Adversary Proceeding**.  On the Effective
Date, the Trust Adversary Proceeding will be deemed dismissed with prejudice,
and judgment of dismissal may enter pursuant to Fed.R.Civ.P. 54, made
applicable to the Trust Adversary Proceeding pursuant to Fed.R.Bankr.P. 7054, as
to (a) each Securitization Trust that accepts or is deemed to accept the Plan,
thereby receiving the treatment provided by the Securitization Trust Settlement,

33

(b) the administrator, in any capacity in which it was named as a defendant in the Trust Adversary Proceeding with respect to each such Securitization Trust accepting this Plan and the Securitization Trust Settlement, (c) the owner trustee of each such Securitization Trust accepting this Plan and the Securitization Trust Settlement, (d) U.S. Bank, National Association, in any capacity in which it was named as a defendant in the Trust Adversary Proceeding with respect to each such Securitization Trust accepting this Plan and the Securitization Trust Settlement, and (e) the indenture trustee under any indenture pursuant to which such Securitization Trust issued notes and accepted this Plan and Securitization Trust Settlement with respect to each such Securitization Trust accepting this Plan and the Securitization Trust Settlement, each of the foregoing administrators, owner trustees and indenture trustees, in their respective capacities, and not individually.

(vi)   **Release of Claims against the Debtor and The Estate**. On the Effective Date, the Claims against the Debtor and the Estate of the Securitization Trusts, the Indenture Trustees under the Indenture for such Securitization Trusts and the administrators for such Securitization Trust (in such capacity) receiving the treatment provided by the Securitization Trust Settlement, subject to and upon implementation of the Securitization Trusts Settlement, will be deemed satisfied and no further recovery shall be permitted in respect of such Claims.

(vii)   **Rejection of Executory Contracts**. On the Effective Date, all Guaranty Agreements executed in favor of the Securitization Trusts and the related Deposit and Security Agreements and other related documents entered into by the Debtor prior to the Commencement Date will be deemed rejected, and with respect to Claims asserted by Securitization Trusts accepting the Plan or that are deemed to accept the Plan, thereby receiving the treatment provided by the Securitization Trust Settlement, all Debtor's claims or rights to set off any Guaranty fees, basis point fees and other interests in loans held by such Securitization Trusts will be deemed waived.

(viii)   **Estate's Retention of Rights With Respect to Residuals**. Nothing herein shall be deemed a waiver or release of the rights, if any, that the Debtor or any other party may have to receive a portion (if any) of the Residual with respect to any and all of the Securitization Trusts.

(ix)   **Special Provisions Regarding Classes 3m and 3n**. Notwithstanding anything to the contrary herein, the terms of the "Stipulation Regarding the Modification of the Fourth Amended Plan of Reorganization With Respect to Claims of Class 3m and 3n" shall control and supersede any and all inconsistent provisions of this Plan.

*(d)* **KeyBank National Association and KeyCorp Trusts Settlement**

(i)   Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, the acceptance of this Plan by KeyBank National Association (excluding in its capacity as a Make and Wait Lender) and acceptance

34

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

|  |  |
|---|---|
| In re | ) |
|  | ) |
| THE EDUCATION RESOURCES INSTITUTE, INC., | ) |
|  | ) |
| Debtor. | ) |
|  | ) |

Chapter 11
Case No. 08-12540(HJB)

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (A) ALLOWING SECOND JOINT MOTION OF THE EDUCATION RESOURCES INSTITUTE INC. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MODIFY FOURTH AMENDED JOINT PLAN OF REORGANIZATION PURSUANT TO 11 U.S.C. §1127 AND PLAN SECTION 14.4 AND FOR RELIEF FROM THE JULY 12, 2010 RULINGS, AND (B) CONFIRMING THE MODIFIED FOURTH AMENDED JOINT PLAN OF REORGANIZATION OF THE EDUCATION RESOURCES INSTITUTE, INC. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

WHEREAS, The Education Resources Institute, Inc. ("TERI" or the "Debtor"), and the

Official Committee of Unsecured Creditors of the Debtor appointed in this chapter 11 case (the

"Committee"), as "proponents of the plan" within the meaning of section 1129 of Title 11 of the

United States Code (the "Bankruptcy Code") filed the Joint Plan of Reorganization of The

Education Resources Institute, Inc. and the Official Committee of Unsecured Creditors on

September 22, 2009 [Docket No. 891], and thereafter filed the First Amended Joint Plan of

Reorganization of The Education Resources Institute, Inc. and the Official Committee of

Unsecured Creditors on October 22, 2009 [Docket No. 924], the Second Amended Joint Plan of

Reorganization of The Education Resources Institute, Inc. and the Official Committee of

Unsecured Creditors on February 7, 2010 [Docket No. 979], the Third Amended Joint Plan of

Reorganization of The Education Resources Institute, Inc. on February 12, 2010 [Docket No.

36.    Each term and provision of the August 2010 Plan is valid and enforceable

pursuant to its terms.  To the extent of any inconsistency between the provisions of the August

2010 Plan and this Order, the terms and conditions contained in this Order shall govern.  The

provisions of this Order are integrated with each other and are nonseverable and mutually

dependent unless expressly stated otherwise by further order of this Court.

Dated:  *October 29*, 2010

—————————————————————————
HONORABLE HENRY J. BOROFF
UNITED STATES BANKRUPTCY JUDGE

DM3\1524622.4

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

| | |
|---|---|
| In re: | )    Chapter 11 |
| | ) |
| THE EDUCATION RESOURCES INSTITUTE, INC., | )    Case No. 08-12540 (HJB) |
| | ) |
| Debtor. | ) |
| | ) |

### DECLARATION OF JANE SULLIVAN ON BEHALF OF EPIQ BANKRUPTCY SOLUTIONS, LLC REGARDING VOTING ON, AND TABULATION OF, BALLOTS ACCEPTING AND REJECTING MODIFIED FOURTH AMENDED JOINT PLAN OF REORGANIZATION OF THE EDUCATION RESOURCES INSTITUTE, INC., AND THE OFFICIAL <u>COMMITTEE OF UNSECURED CREDITORS AS OF AUGUST 26, 2010</u>

Jane Sullivan, being duly sworn, declares, under penalty of perjury:

1.       I am an Executive Vice President of Epiq Bankruptcy Solutions, LLC,

("Epiq"), located at 757 Third Avenue, New York, New York 10017. I am authorized to submit

this Declaration on behalf of Epiq. I am over the age of 18 years and not a party to the within

action.

2.       I submit this Declaration with respect to the Modified Fourth Amended

Joint Plan of Reorganization of the Education Resources Institute, Inc., and the Official

Committee of Unsecured Creditors as of August 26, 2010, dated August 26, 2010 (as may be

modified and/or amended, the "August 2010 Plan").[1]  Except as otherwise indicated, all facts set

---

[1]  Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Plan or the Solicitation Procedures Order (as defined below).

## THE EDUCATION RESOURCES INSTITUTE, INC.

| VOTING CLASS | TOTAL BALLOTS COUNTED | | | |
| --- | --- | --- | --- | --- |
| | ACCEPT | | REJECT | |
| | AMOUNT | NUMBER | AMOUNT | NUMBER |
| Class 2l<br>RBS Citizens, N.A.[1] | $47,778,723.93<br>100% | 1<br>100% | $0.00<br>0.00% | 0<br>0.00% |
| Class 2m<br>Sovereign Bank | $549,149.96<br>100% | 1<br>100% | $0.00<br>0.00% | 0<br>0.00% |
| Class 2n<br>SunTrust Bank | $519,103.52<br>100% | 1<br>100% | $0.00<br>0.00% | 0<br>0.00% |
| Class 2o<br>TCF National Bank | No ballots received for this class | | | |
| Class 2p<br>U.S. Bank, N.A. | $2,908,700.60<br>100% | 1<br>100% | $0.00<br>0.00% | 0<br>0.00% |
| **CLASS 3 (SECURED CLAIMS OF SECURITIZATION TRUSTS)** | | | | |
| Class 3a<br>National Collegiate Student Loan Trust 2003-1 | $231.96<br>100% | 1<br>100% | $0.00<br>0.00% | 0<br>0.00% |
| Class 3b<br>National Collegiate Student Loan Trust 2004-1 | $658.28<br>100% | 1<br>100% | $0.00<br>0.00% | 0<br>0.00% |
| Class 3c<br>National Collegiate Student Loan Trust 2004-2 | $496.69<br>100% | 1<br>100% | $0.00<br>0.00% | 0<br>0.00% |
| Class 3d<br>National Collegiate Student Loan Trust 2005-1 | $1,025.18<br>100% | 1<br>100% | $0.00<br>0.00% | 0<br>0.00% |
| Class 3e<br>National Collegiate Student Loan Trust 2005-2 | $1,354.32<br>100% | 1<br>100% | $0.00<br>0.00% | 0<br>0.00% |

---

[1] The Education Resources Institute, Inc. and the Official Committee of Unsecured Creditors filed a Stipulation with RBS Citizens, N.A. on July 2, 2010 [Docket No. 1120] pursuant to which RBS Citizens, N.A. agreed to accept the August 2010 Plan. The Stipulation was approved on August 4, 2010 [Docket No. 1133]. However, RBS Citizens, N.A. never submitted a ballot to change its original vote to reject the February 2010 Plan. This Exhibit A reflects only the Stipulation.

# THE EDUCATION RESOURCES INSTITUTE, INC.

| VOTING CLASS | TOTAL BALLOTS COUNTED | | | |
| | ACCEPT | | REJECT | |
| | AMOUNT | NUMBER | AMOUNT | NUMBER |
| Class 3f<br>National Collegiate Student Loan Trust 2005-3 | $2,240.87<br>100% | 1<br>100% | $0.00<br>0.00% | 0<br>0.00% |
| Class 3g<br>National Collegiate Student Loan Trust 2006-1 | $2,654.55<br>100% | 1<br>100% | $0.00<br>0.00% | 0<br>0.00% |
| Class 3h<br>National Collegiate Student Loan Trust 2006-2 | $129.81<br>100% | 1<br>100% | $0.00<br>0.00% | 0<br>0.00% |
| Class 3i<br>National Collegiate Student Loan Trust 2006-3 | $48,175,748.84<br>100% | 1<br>100% | $0.00<br>0.00% | 0<br>0.00% |
| Class 3j<br>National Collegiate Student Loan Trust 2006-4 | $19,511,866.10<br>100% | 1<br>100% | $0.00<br>0.00% | 0<br>0.00% |
| Class 3k<br>National Collegiate Student Loan Trust 2007-1 | $30,574,349.18<br>100% | 1<br>100% | $0.00<br>0.00% | 0<br>0.00% |
| Class 3l<br>National Collegiate Student Loan Trust 2007-2 | $36,798,357.91<br>100% | 1<br>100% | $0.00<br>0.00% | 0<br>0.00% |
| Class 3m<br>National Collegiate Student Loan Trust 2001-CP1 | $404.48<br>100% | 1<br>100% | $0.00<br>0.00% | 0<br>0.00% |
| Class 3n<br>National Collegiate Student Loan Trust 2002-CP1 | $834,381.77<br>100% | 1<br>100% | $0.00<br>0.00% | 0<br>0.00% |
| Class 3o<br>National Collegiate Master Student Loan Trust I | $261.93<br>100% | 1<br>100% | $0.00<br>0.00% | 0<br>0.00% |
| Class 3p<br>National Collegiate Student Loan Trust 2007-3 | $65,215,301.47<br>100% | 1<br>100% | $0.00<br>0.00% | 0<br>0.00% |
| Class 3q<br>National Collegiate Student Loan Trust 2007-4 | $64,376,015.26<br>100% | 1<br>100% | $0.00<br>0.00% | 0<br>0.00% |

3